## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA MOBILE DIVISION

| | | |
|---|---|---|
| **JOHN DOE[1],** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 1:23-CV-340** |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **SPRING HILL COLLEGE,** | ) | |
| **CRAIG MCVEY,** | ) | |
| **WILLIAM ROBERT TATE,** | ) | |
| **TERRENCE JOSEPH GENNARI.** | ) | |

**Defendants**

## FIRST AMENDED COMPLAINT

**COMES NOW**, Plaintiff John Doe (hereinafter "Plaintiff") files his First Amended Complaint and Jury Demand (hereinafter referred to as the "Complaint") complaining of Defendants Spring Hill College, Craig McVey, William Robert Tate and Terrence Joseph Gennari. In support thereof, Plaintiff offers the following:

### I.    Parties

1.     Plaintiff John Doe ("Plaintiff") is a male individual who at all material times was a student athlete at Spring Hill College.

---

[1] "John Doe" has been substituted for Plaintiff's name for all causes of action brought through this Complaint which would otherwise publish important privacy interest of all parties. Plaintiff fears for his personal safety, as well as that of his family and friends as a result of this Complaint.

2.     Defendant Craig McVey ("McVey") is a male individual resident of the state of Alabama and who at all times herein was an employee of Spring Hill College serving as an Athletic Coach.

3.     Defendant William Robert Tate ("Tate") is a former student athlete at Spring Hill College. He is an adult resident of the state of Kentucky.

4.     Defendant Terrence Joseph Gennari ("Gennari") is a former student athlete at Spring Hill College. He is an adult resident of the state of Alabama.

5.     Defendant Spring Hill College ("Spring Hill") is a domestic non-profit corporation that functions as a private educational institution located in Mobile, Alabama. Spring Hill is a recipient of federal funds under Title IX, 20 U.S.C. 1681-1688 ("Title IX") and Title VI, 42 U.S.C. 2000d et seq. ("Title VI").

## II.    Jurisdiction and Venue

6.     This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. 1331 because Plaintiff brings this action under 20 U.S.C. 1681, among other federal statutes. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. 1367(a) over Plaintiff's claims brought under Alabama law because Plaintiff's state law claims are so related to his federal law claims that they form part of the same case or controversy.

7.     This Court has personal jurisdiction over Defendants because they are citizens of the state of Alabama and/or committed the tortious acts giving rise to this action in the state of Alabama.

8.     Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(1)-(2) because this is the judicial district where the events or omissions giving rise to Plaintiff's claims occurred and at least one Defendant resides in this judicial district.

III.    **Factual Background**

9.     Plaintiff is an African American student athlete at Spring Hill College. Two teammates, William Tate and Terrence Gennari (sometimes hereinafter referred to as "assailants"), repeatedly bullied and harassed Plaintiff about his perceived sexual orientation. They frequently called him "faggot" or "gay boy" or "fag". They also threatened to harm him on multiple occasions – telling him they would "beat [Plaintiff's] ass". The harassment, bullying and threatening took place for over a year. It took place on a repeated basis during nearly every encounter between Plaintiff and the assailants from November 6, 2021, to March 20, 2023.

10.    The harassing and bullying communications were done verbally in front of other teammates and Coach McVey and in text and group messages where other members of the athletic teams, faculty and staff were recipients. In addition, on October 24, 2022, Tate inappropriately touched Plaintiff and made comments including "be a man", "you're not a real man" and other homophobic and offensive

comments which Plaintiff found to be harassing and unwelcome. On another occasion on or about approximately October 14, 2022, Tate also pleasured himself in Plaintiff's presence while mocking Plaintiff's perceived sexual orientation. On November 6, 2021, Tate also followed Plaintiff into the shower and made sexual innuendos despite Plaintiff's repeated requests to be left alone.

11.     The Plaintiff went to Coach McVey about the harassment and bullying. Coach McVey lightheartedly agreed to monitor it. However, in reality, Coach McVey refused to enforce any restrictions keeping Tate and Gennari from Plaintiff, refused to investigate, and engaged in actions which forced the Plaintiff to be in the presence of and even alone with the assailants. In fact, Coach McVey witnessed some of the harassment and bullying himself and did not intervene or address it. He further acknowledged he had witnessed it to Plaintiff's friend and classmate.

12.     Coach McVey rather than protecting Plaintiff allowed the harassment and bullying to continue.

13.     William Tate has sexually harassed Plaintiff, inappropriately touched Plaintiff, threatened Plaintiff, attempted to control Plaintiff (by threatening rumors about his sexuality if Plaintiff said anything), physically assaulted Plaintiff, and spread false rumors about Plaintiff. Whenever the assailants thought Plaintiff would expose the way they were treating him, they threatened to spread rumors about Plaintiff to suppress Plaintiff from seeking help.

14.     Plaintiff endured constant harassment and bullying centered in large part about his perceived sexual orientation. Some of the bullying and harassment included but was not limited to the following:

(a) In February 2022 William Tate stated "I should beat your ass right now" while attempting to shove Plaintiff to the ground as hard as possible in front of classmate.

(b) In or around October 14, 2022, William Tate pleasured himself in front of Plaintiff in the hotel during a Cross Country Meet while making sexually uncomfortable and mocking comments to Plaintiff.

(c) In February 2023, Terrence Gennari made gender-based discriminatory remarks about Plaintiff and pressured Plaintiff on his sexuality in front of Coach McVey in the Outlaw Recreation Center on campus in the Indoor Tennis Facility, which Coach McVey heard but did not report to the Title IX Coordinator and did not advise Plaintiff of his rights to make a Title IX Complaint.

(d) In February 2023, Terrence Gennari made comments to try to get Plaintiff to say if he was gay and after Plaintiff made it clear he wanted the conversation to end he continued to pressure Plaintiff. Again, Coach McVey heard these comments and this conversation and these gender-

based discriminatory remarks yet Coach McVey disregarded the comments, harassment and bullying and turned the other way.

(e) On March 4, 2023, while at the Mississippi College Opener Track Meet in front of teammate Claire Morgan, Coach McVey ridiculed Plaintiff calling him "entitled" among other negative comments.

(f) On March 6, 2023, as Plaintiff was eating dinner with his friend Claire Morgan and Thomas Prados in the Cafeteria in the Student Center at Spring Hill College, William Tate came up to their table. Being uncomfortable, Plaintiff respectfully asked Tate to leave. In response however Tate shouted, "gay boy" and "faggot."

(g) At the second Track & Field meet at the Montevallo Falcon Classic on March 18, 2023, William Tate continued to harass, mock and ridicule Plaintiff and threw side jabs at Plaintiff in front of others any given opportunity.

(h) On March 20, 2023, Plaintiff was going to Moes (which is close to campus). Plaintiff parked in the parking lot and got out of his car when William Tate began yelling offensive slurs and remarks to Plaintiff including but not limited to "faggot" "gay" and "gay boy." Tate spit at Plaintiff. Plaintiff informed Tate that he was going to report Tate. Tate again threatened Plaintiff and when Plaintiff left Tate mocked him more.

(i) On August 17, 2022, Tate made slanderous and offensive slurs and remarks to Claire Morgan in front of the Plaintiff while at Spring Hill College's beach volleyball court.

(j) On October 15, 2022, William Tate shouted "gay boy" "fagot" and other derogatory and homophobic comments and remarks in relation to the Plaintiff's sexuality while at a Cross Country meet at Berry College.

(k) Gennari pressured Plaintiff and made comments about his sexuality in front of others and made libelous and slanderous comments in GroupMe messaging threads and other group messaging forums on a repeated basis from 2021-2023.

(l) Some of the statements made by Gennari and/or Tate included: "pussy version of rocky", "a real man doesn't run away", "he's not a man so I didn't expect anything different", "why did u run away and then get to your car and drive away as quickly as possible. Scared of me buddy?", "this isn't court man" "why u acting like a chick".

15.    In addition, after Plaintiff complained of the harassment and bullying based on Plaintiff's perceived sexual orientation, Coach McVey suspended Plaintiff from all team activities. To defend his action, Coach McVey alleged the suspension was because Tate (falsely) claimed Plaintiff physically hit him. However, at no point has Plaintiff hit Tate. In fact, despite the fact Tate spit on Plaintiff, Plaintiff did not

strike Tate and avoided a potential altercation by leaving the situation. Tate later actually mocked and taunted Plaintiff for leaving asking Plaintiff if he feared him. Moreover, Tate only made false allegations in response to Plaintiff telling Tate he was reporting him. Coach McVey and the Athletic Department, including Compliance Officer Chad LeBlanc and Athletic Director Joe Niland never investigated the alleged incident and had Spring Hill and the Athletic Department staff done so they would have confirmed through independent witnesses and the Plaintiff that Plaintiff never touched Tate and that the remarks made by Tate were falsely done to protect himself. Rather than investigate, Spring Hill and the Athletic Department led by Coach McVey suspended Plaintiff. The suspension was retaliatory for Plaintiff reporting Tate and Gennari's harassment and bullying.

16.    In addition to suspending Plaintiff, Coach McVey instructed all members of the team to leave Plaintiff in complete isolation, to not communicate with him, to not comfort him, all while suggesting Plaintiff was being investigated for assault, implying guilt and placing him in a false light. Coach McVey ordered Plaintiff to be removed from all activities and communications, including missing track meets, practices and other activities.  Coach McVey also immediately stated to Plaintiff to not communicate with any individuals on the team or William Tate and to not talk to Plaintiff's close friend Claire Morgan about the issue as well. This violated Spring Hill College's Freedom of Speech and Expression Policy. Coach

McVey also messaged Plaintiff's friend Claire Morgan and stated for her to not reach out to Plaintiff and that Plaintiff would be looking for "moral support" "but not on this one" and that she was not to discuss the matter with Plaintiff at all. In a text message to female athlete Claire Morgan, Coach McVey specifically stated, "I know it might be hard but do not discuss with -----, he is going to be looking for moral support but not on this one."

17.    Coach McVey's treatment of Plaintiff is in stark contrast with how he treated Gennari, a white straight male. On or around March 9, 2022, Terrence Gennari was caught on camera vandalizing classrooms at St. Paul's Episcopal School (a nearby private school less than a mile away who's track Spring Hill College Track Athletes practiced on). He was charged with multiple felonies and had to pay damages to St. Paul's and the court ordered community service and good behavior. There was a meeting with the entire team around March 9, 2022, in which Coach McVey supported Terrence Gennari and explained to the team why they should morally support him, and that they should "lift him up" and "most of us wouldn't be able to handle being in jail". Terrence Gennari was still allowed to attend team events, remain in team communications and practice and Coach McVey provided and encouraged teammates to provide Gennari moral support while suspended. Likewise, on April 9, 2023, Defendant Gennari was charged with felony DUI. Despite this arrest, Defendant Gennari was permitted to compete in the SIAC

Outdoor Track & Field Championship. Defendant Gennari was facing felony charges on multiple occasions yet both times he continued to enjoy full status and benefits of being a student-athlete which the Student-Athlete Handbook prohibits.

18.     In contrast, following the alleged encounter with William Tate on March 20, 2023, where there was no evidence of any wrongdoing, Coach McVey forced Plaintiff into isolation, told his teammates to leave him completely alone, to have no contact with him, to not comfort him, and to not support him. Plaintiff denied any wrongdoing and denied ever hitting William Tate and there was no evidence against Plaintiff of wrongdoing. While facing felony charges Terrence Gennari was able to run and was only suspended for approximately 20 days when the athletic student handbook states, "A student-athlete who is charged with a felony will not be allowed to represent the College in game competition until the matter has been resolved in court and all conditions for reinstatement have been met. A student-athlete who is charged with a misdemeanor will have his/her case reviewed by the Director of Athletics pending the outcome by legal authorities. Disciplinary action may be invoked by the department of athletics." Spring Hill College improperly suspended Plaintiff in violation of the Student-Athlete Handbook while allowing Terrence Gennari to compete and represent the college while facing felony charges which the Student-Athlete Handbook prohibits. Defendant Gennari was facing

felony charges while able to compete, remain in team communications, receive support from Coach McVey, the Athletic Department and teammates.

19.   Defendant Spring Hill further punished Plaintiff for vocalizing the harassment and bullying by refusing to provide Plaintiff the promised increase in his scholarship.

20.   Coach McVey did not isolate or restrict conversation with or about Terrence Gennari's suspension unlike what he did to the Plaintiff. And furthermore, shortly after Terrence Gennari was suspended Gennari was allowed to come to a track meet at the University of South Alabama in which he apologized to the team and was offered moral support and words of encouragement from Coach McVey and teammates. Moreover, on April 9, 2023, Defendant Gennari was charged with felony DUI. Despite this arrest, Defendant Gennari was permitted to compete in the SIAC Outdoor Track & Field Championship. Defendant Gennari was facing felony charges yet he was able to compete, remain in team communications, receive support from Coach McVey and the Athletic Department and teammates.

21.   However, in contrast, Coach McVey did not allow the Plaintiff to receive the same treatment as Terrence Gennari as he was not permitted to attend a track meet, the teammates were specifically instructed not to support Plaintiff. More harsh treatment was placed on Plaintiff as an African American male with a perceived homosexuality.

22.    Defendant failed to investigate and share to the Athletic Department Plaintiff's report of Title IX Violations against William Tate and Terrence Gennari when the student-athlete Handbook requires it.

23.    The Student-Athlete Handbook specifically provided for disciplinary action and the information previously reported by the Plaintiff was sufficient to warrant disciplinary action against Defendants Tate and Gennari. However, no disciplinary action or investigation by the Athletic Department took place. It provides: "Code of Conduct violations of the College's rules are reported to the Associate Athletic Director for Internal Affairs and Compliance or Director of Athletics. Code of Conduct violations of the Athletic Department's rules are reported to members of Student Affairs staff. Violations of departmental, conference, and NCAA conduct rules are reported to the student-athlete's head coach, Associate Athletic Director for Internal Affairs and Compliance, the Director of Athletics and the NCAA, as appropriate. If a student-athlete is found to be in violation of a department, College, conference, or NCAA policy, the penalty imposed depends upon the severity of the offense and may include the following: Ineligibility, Suspension, Dismissal from the squad, Cancellation or change in the student-athletes grant-in-aid, Dismissal from the College."

24.    These individuals did not face any disciplinary action and were allowed to continue running and did not suffer any consequences or "interim decisions"

12

following Plaintiff's complaints made March 21, 2023, and March 29, 2022, to Coach McVey, Chad LeBlanc, and Joe Niland and then Title IX Coordinator Kevin Abel. Abel made promises and assurances to Plaintiff including but not limited to the imposition of a no contact order but never did. Gennari was allowed to practice during his suspension whereas Plaintiff was kept in isolation and not permitted any participation. Gennari and Tate violated the student-athlete handbook but were not punished. Spring Hill violated FERPA by not providing Plaintiff access to information requested to which he was entitled.

25.     The student-athlete Handbook requires the Office of Student Affairs to make known to the Athletic Department the submission of the complaint. Neither Tate nor Gennari was suspended on an "interim decision" after the reporting, like the treatment the Plaintiff received when William Tate falsely accused him of striking him across the face, and he was suspended without so much as a phone call. Plaintiff was not afforded his due process rights in accordance with the Policy. He should not have been suspended on an "interim decision" without even being questioned or being able to discuss what occurred or being afforded the rights provided to him. Defendant automatically believed William Tate, a white male. Plaintiff would have never been suspended especially considering the Office of Student Affairs Conduct Officer Nathan McQuinn nor any other individual at Spring Hill College or elsewhere ever found the Plaintiff responsible for any wrongdoing.

13

26.     Moreover, as emails show Dr. Vannee Cao-Nguyen states the Plaintiff was removed from the GroupMe messaging thread due to the unwarranted suspension (which took place out of policy) by other athletes, however, Terrence Gennari, a white male, was not removed when he was suspended. The intentional removal of Plaintiff and his isolation was done at the instruction and demand of Coach McVey because of his race and perceived sexuality and in retaliation for Plaintiff complaining about Tate and Gennari bullying and harassing him because of his perceived sexual orientation.

27.     Defendant later made assertions that they could not dictate who was in the communications, however, that was not the case when Plaintiff was improperly suspended. Defendant also falsely stated the Plaintiff was removed by other athletes; however, it was done at the instruction and demand of Coach McVey via text message. Defendant's actions punished Plaintiff and imposed worse treatment against him because he had a perceived different sexual orientation than himself, Tate and Gennari and race different than himself and Gennari.

28.     Defendant allowed Terrence Gennari to return to competition sooner than allowed by the Handbook. In contrast, Defendant refused to allow Plaintiff to return in the shortened time frame causing Plaintiff to miss the remainder of his season.  Plaintiff missed the entire season and an entire season of Track & Field NCAA eligibility that cannot be restored. Defendant's actions punished Plaintiff and

imposed worse treatment against him because he had a perceived different sexual orientation than Gennari, a white straight male and because Plaintiff complained about the harassment and bullying. Spring Hill College Code of Conduct states in part in relation to Conduct Violations on Page 69 that, "Proceedings conducted pursuant to this Code shall be fair and expeditious. Except where expressly adopted by this Code, the procedures of criminal and civil courts shall not govern disciplinary proceedings. In these proceedings, formal rules of evidence shall not be applicable, nor shall deviations from prescribed procedures invalidate a proceeding or decision unless significant prejudice to an accused student or to the College may result. In any hearing or disciplinary conference, the party bringing the complaint shall bear the burden of establishing by a consideration of the totality of evidence that, more likely than not based on the preponderance of evidence, a violation of the code has occurred. The student does not have a right to representation by legal counsel at any non-Title IX hearing. Students who have concurrent criminal charges pending against them are permitted to consult with counsel during their disciplinary hearing, although the role of counsel is limited to consultation only. The complainant in such a case may also be permitted to have legal counsel present at the hearing. Other advisors, such as parents, faculty mentors or other associates of the student, are allowed at the sole discretion of the College. This may be allowed if the College believes it will increase the educational value of the meeting. If allowed, the guest's

role will be one of consultation, not of advocacy. The procedures described below are intended to clarify the normal chain of events that follow an alleged violation of the College's Code of Conduct." However, the Plaintiff was improperly suspended based on an "interim decision" by the Athletic Department and the Code of Conduct process was not "fair nor expeditious" as required causing Plaintiff to miss the remainder of the season and wait nearly one hundred days to know whether he would be reinstated, which only occurred after he retained counsel.

29.    On July 10, 2023, Title IX Coordinator Dr. Vannee Cao-Nguyen acknowledged that an Infliction of Physical Harm should not have been included within the Title IX Investigation commenced by the Plaintiff, yet it was not removed. Also, Defendant failed to prepare a Notice of Investigation for the complaint Plaintiff filed against Gennari despite acknowledging a complaint was filed. Defendant's conduct was blatant, discriminatory, and deliberately indifferent.

IV.    **Applicable Background**

30.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §168(a) states that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." Title IX is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 106. 34 C.F.R. 106.8(b) which provides: "…A recipient shall adopt

and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."

31.     In *Gebser v. Lago Vista Independent School District,* 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of discrimination.

32.     In *Davis v. Monroe County Board of Education,* 526 U.S. 629 (1999) the United States Supreme Court extended the private damages action recognized in *Gebser* to cases where the harasser is a student, rather than a teacher. *Davis* held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is: a) "deliberately indifferent to sexual harassment of which the recipient has actual knowledge," and b) "the harassment is so severe, pervasive and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Davis* 526 U.S. at 1669-76.

33.     In the circumstances giving rise to the claims of the Plaintiff, a history of student harassment, resulting from deliberate indifference, has been allowed to continue at the Defendant Spring Hill for many years.

34.     Alabama law provides protections for students and requires the exercise of reasonable care on the part of Spring Hill. Alabama law further provides for a cause of action of breach of contract. Plaintiff has an educational contract with Defendant Spring Hill that included agreements and duties to provide adequately for safety, to adequately and in compliance with law, reports instannces of assault and/or harassment the breach of which caused the damages claimed herein. At all relevant times, Spring Hill received federal funding for its academic programs and activities and was subject to the requirements of Title IX of the Education Amendments of 1972, 20 U.S.C. 1681(a) (hereinafter "Title IX").

35.     Defendant Spring Hill is responsible for ensuring that its employees are properly trained and supervised to perform their jobs. Defendant Spring Hill is responsible for the acts and omissions of its employees, agents, part-time student workers, officers, and tenants. Defendant Spring Hill employees failed to adequately investigate the complaints of Plaintiff and retaliated against him for making reports of violation of Title IX and sexual misconduct policies.

36.     At all times relevant to this Complaint, Defendant failed to protect Plaintiff and others as it negligently, willfully, wantonly, maliciously, and with complete deliberate indifference discharged its duty to provide safety to the students at the school.

37.     The inactions of Defendant Spring Hill were deliberately indifferent and the delay from investigating, resolving and protecting the Plaintiff was clearly unjustified and the retaliation of suspending Plaintiff from all activities, reducing his promised scholarship, and joining in the harassment was also deliberately indifferent and so severe that it effectively barred the Plaintiff access to educational opportunities and benefits.

38.     Title IX requires an educational institution to act when it has control over the harasser and the place of harassment. Here, the acts involved bullying and harassment by a student-athlete that took place on and off campus and during school sponsored events. The Defendant clearly had control over the assailants by virtue of their status as student-athletes, and it had control over the campus and school sponsored activities.

39.     Under Spring Hill's governing policies, Title IX complainants such as Plaintiff have rights including to be informed of available options in making a report and to have "equal access to educational programs and activities and interim protective measures as appropriate, to receive information regarding support resources, to request from the Title IX Coordinator that the school enforce a no contact directive, and to do a thorough and impartial investigation." In violation of its own policy and federal guidelines, when Plaintiff reported initially of the harassment and bullying, Defendant and its employees were deliberately indifferent

and did nothing. They never informed Plaintiff of his rights, never offered him interim protective measures, never offered him a no contact directive against the assailants, never investigated or assessed his complaint after first being informed.

40.    Plaintiff was entitled to an assessment by the school of whether the assailants were responsible for violating Spring Hill's Sexual Misconduct Policy. He was at the least entitled to an "assessment" by the Title IX Office to determine if additional action should be taken to protect the health and safety of the Plaintiff and the campus community. He wasn't even directed to a Title IX office. The Plaintiff was not offered any relief or protection. The assailants continued to harass and bully the Plaintiff and Coach McVey continued to allow it to happen and retaliate against Plaintiff. Also, the deliberate indifference caused Plaintiff's worry, anxiety, fear, depression, physical injuries and emotional distress.  Spring Hill maintains control over its Athletic Department, employees and students. It determines who remains a student, who remains on an athletic team, where students reside, and the safety and well-being of its student body.

41.    Spring Hill's refusal to address and assist Plaintiff when he first reported (and thereafter reported) the bullying and harassment was a clear deliberate indifference and allowed the assailants to continue to contact and harass Plaintiff.

42.    Plaintiff was diagnosed with anxiety and depression from the bullying and harassment and remains under the care of mental health providers. For months,

following his reporting of the harassment and bullying Spring Hill failed to inform Plaintiff of his rights to receive counseling in a timely manner despite his anxiety and depression; no one assisted him to get counseling and treatment he needed; no one informed him of his rights under Title IX; no one conducted an investigation into his complaints; no one assessed whether the assailants were a threat to him; no one restricted the assailants from communicating or contacting the Plaintiff; no one offered him any of the interim or permanent protective measures required under Title IX; no one informed him that he had a right not to be retaliated against by anyone at Spring Hill; no one followed up with him at any time to ensure he received any mental health or medical care; no one encouraged him to remain at Spring Hill; and no one assisted him in leaving Spring Hill when it became clear he was not safe and free from harassment and bullying. To the contrary, Spring Hill punished Plaintiff by suspending him from all athletic activities and by instructing his teammates, friends and members of the staff to leave him alone. Spring Hill instructed all team members to isolate Plaintiff, placed him in a false light, and furthered the bullying and harassment engaged in by the assailants.

43.    As a direct and proximate result of the assault and the deliberate indifference, intentional discrimination and retaliation by Spring Hill, Plaintiff's fears, anxiety, depression and physical ailments grew increasingly worse. He endured suicidal ideations and remains under psychiatric care. He has undergone

medical, psychological and psychiatric help. He has ever-increasing fears, anxiety, sleeplessness, panic attacks, feelings of worthlessness and hopelessness, loss of motivation, and a severe decline in overall functioning.

44.    As an educational institute seeking to educate students and profit from that relationship, Spring Hill owed Plaintiff a duty of reasonable care. Reasonable care is the degree of caution and concern for the safety of students that an ordinarily prudent and rational college may apply in the same circumstances. Sadly, universities seek to evade this standard rather than adhere to any degree of reasonableness when it comes to the safety of students.

45.    More specifically, Spring Hill had a duty to act as a reasonable collegiate educational institute and apply a reasonable degree of care in hiring, training, and supervising employees and faculty that interact with students from the initial reporting of the harassment and bullying throughout the entire Title IX process; and/or that apply and enact the school's own policies and procedures; and/or to train the Spring Hill employees about what to do if a student reports harassment and bullying; and/or to train the Spring Hill employees on how to conduct an investigation of reports of sexual based harassment and bullying; and/or to train the Spring Hill employees on how to observe distress in students and to obtain health care for students suffering physically and mentally. Finally, Spring Hill possessed superior knowledge of the risks to Plaintiff and had the ability to control its

employees (who tolerated the bullying and harassment by student athletes) and its student-athletes (who could have been disciplined under Spring Hill's misconduct policies).

46.    Spring Hill had and continues to owe a duty to Plaintiff, as well as other students, outside of the existence of a "special relationship." Plaintiff can establish duties owed, as well as violations of said duties, which are not dependent on the existence of a special relationship.

47.    Spring Hill breached its duties to Plaintiff in multiple ways, including by: a. Failing to properly and/or adequately hire, train, and supervise employees and faculty as to proper methods of dealing with reports of sexual abuse, bullying and harassment, and investigate same and accommodate victims in a manner that would permit them without undue hindrance, to complete their higher education; b. Failing to properly and timely report incidents or claims of sexual assault, harassment and bullying; c. Failing to provide adequate counseling and assistance to victims of sexual assault, harassment and bullying; d. Failing to adequately monitor and supervise departments, including athletic departments, to ensure compliance with protections and standards for sexual assault, harassment and bullying prevention, reporting, and investigation; e. Failing to discover, develop, and/or implement basic safeguards designed to prevent and/or minimize incidents of sexual assault, bullying and harassment; f. Failing to investigate and/or monitor persons accused of sexual

assault, bullying and harassment to ensure additional events and/or harassment of victims did not occur; g. Failing to adopt and implement adequate safeguards to prevent known sexual harassment and bullying occurring on campus; h. Failing to provide adequate staff, with proper training, to counsel and assist victims of sexual assault, bullying and harassment; i. Tolerating sexual assailants on campus despite reports to the highest levels of their identities; and despite reports that they continue to bully and/or harass their victims online and/or in person; j. Failing to adopt education programs to promote awareness of bullying, harassment and other illegal activities; k. Failing to adopt and enforce institutional sanctions for sex offenses, harassment and bullying, both forcible and non-forcible; l. Failing to adopt and enforce procedures students should follow if they become sexual assault, bullying and harassment victims, including who should be contacted, the importance of retaining evidence, and to whom the offense should be reported; m. Failing to inform victims that they have the option of reporting the sexual assault, harassment and bullying to law enforcement authorities and that they will receive assistance from the institution in the process; n. Failing to notify sexual assault, harassment and bullying victims about counseling services and options for changing academic schedules and living arrangements in the wake of a sexual assault, harassment and bullying; o. Failing to put in place an accurate routine procedure to notify the campus community about serious criminal activity that is likely to be a threat to students and

employees; p. Failing to adopt and periodically review procedures to make sure they are adequate to address complaints of serious sexual misconduct; q. Failing to develop a clear policy about which kinds of sexual offenses will be handled internally and which will be turned over to the criminal authorities; r. Failing to make the goal of protecting the campus community from sexual assaults and harassment an integral part of the institution's day-to-day mission; s. Failed to implement anti-retaliation policies for reporting, and/or failed to act on those policies when evidence of retaliatory conduct was uncovered; and t. failed to notify the Plaintiff about Title IX and make Plaintiff and other students aware of the Title IX process or that they could initiate a Title IX Investigation or file a formal complaint.

48.     Despite the reporting of the incidents, Spring Hill deliberately, willfully, recklessly, and consciously decided not to investigate the matter. Spring Hill also willfully, maliciously, and acted in bad faith by failing to discharge duties and failing to follow Spring Hill's Title IX Sex Discrimination, Sexual Harassment, and Sexual Violence Policy and other policies. Spring Hill never issued nor enforced a "No-Contact Order"; never provided Plaintiff any relief allowed under Spring Hill's policy including but not limited to: Rescheduling of exams and assignments; Providing alternative course completion options; Modification or change in class schedule, including the ability to drop a course without penalty or to transfer; Change in work schedule or job assignment; Change in student's campus housing; Leaves

of absence; Assistance from support staff in completing housing relocation; Providing academic support services, such as tutoring; providing Escort services; providing Increased security and monitoring of certain areas of the campus or similar measures; providing referral to counseling services both on and off campus; failed to provide Plaintiff resources on and off campus for trained advocates who can provide crisis response; failed to provide assistance in identifying advocacy support to obtain orders of protection within the criminal justice system, among other things.

49.    Despite having a policy that encourages reporting of all crimes, harassment and bullying, Spring Hill did not provide Plaintiff any support and did not attempt to investigate his allegations when the sexually charged bullying and harassment was reported. Spring Hill's policy suggests appropriate support will be offered in every case; however, Spring Hill offered no support in this one. Plaintiff's claims were not investigated, he was not provided needed mental health treatment, he was not protected, and he was not provided with any relief. In fact, after Plaintiff notified Spring Hill of the harassment and bullying the assailants continued to harass the Plaintiff– all of which would have been prevented. Moreover, Plaintiff's mental health deteriorated further given the lack of response and investigation by Spring Hill.

50.    The above breaches of Defendant Spring Hill's duties of reasonable care, which flow to all students including Plaintiff, were the proximate cause of substantial injury and damage to Plaintiff, as more specifically described herein.

51.    These damages include, without limitation, great pain of body and mind, physical injury, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life, which Plaintiff has suffered and continues to suffer.

## V.    Causes of Action

## COUNT I: VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C.1681(a) et seq. (against Spring Hill College)

52.    Plaintiff hereby adopts and realleges every allegation in the foregoing paragraphs of this Complaint as if fully set forth herein.

53.    At all times relevant hereto, Spring Hill received federal funding for its educational programs, and was subject to the provisions of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), et. seq., which guaranteed Plaintiff equal access without discrimination to all educational programs at Spring Hill.

54.    Spring Hill's actions and failures to act perpetrated against Plaintiff amounted to unlawful harassment and discrimination based on his gender, perceived sexual orientation, and race. The harassment and discrimination were sufficiently severe and pervasive to create an abusive and sexually hostile educational

environment for Plaintiff, sufficient that he was forced to leave the campus, and was ultimately a cause of his mental anguish, physical harm, emotional distress, loss of sleep, worry, anxiety, mental illness, and other damages.

55.    Spring Hill was deliberately indifferent to a culture of sexual hostility and violence, bullying and harassment instituting and/or mis-administering the policies cited herein, including without limitation:  Violating its own policies set forth under Title IX; anti-harassment policies; anti-discrimination policies.

56.    Spring Hill's sexually hostile policies and practices were a proximate cause of Plaintiff being subjected to multiple semesters of sexual harassment and bullying, gender and racial discrimination in the form of (1) a hostile educational environment, (2) ongoing pain, mental anguish, and enduring of constant bullying, threats and harassment; (3) then unfairly and in retaliation for complaining about the harassment and bullying being forced off the athletic team and to isolate, and ultimately forcing Plaintiff to leave campus.

57.    The mental pain and anguish that Plaintiff suffered was so severe, pervasive, and objectively offensive that it effectively barred his access to educational opportunities and benefits. Further, Spring Hill unfairly and in retaliation to Plaintiff exercising his rights (reporting the bullying and harassment) evicted Plaintiff from the athletic team, and he endured treatment by Coach McVey where Plaintiff was intentionally forced into isolation.

58.     As a direct and proximate result of Spring Hill's creation of and deliberate indifference to its sexually hostile educational environment, Plaintiff suffered damages and injuries for which Spring Hill is liable.

59.     By its actions as described above, Spring Hill engaged in intentional discrimination in violation of Title IX.

60.     Plaintiff further alleges that Spring Hill intentionally discriminated against Plaintiff when Coach McVey refused to provide the required assistance to allow Plaintiff to obtain the available assistance to get not only mental health treatment but also to be certain he would be free from exposure, bullying and harassment by the assailants. The delay resulted in Plaintiff having to endure extensive bullying, harassment, displays of aggressive physical assault, mental manipulation, depression, anxiety, and suicidal ideations. Ultimately these events and omissions caused Plaintiff to suffer grave mental illness requiring continued care.

61.     Spring Hill breached its duties to Plaintiff in multiple ways, including but not limited to by: a. Failing to properly and/or adequately hire, train, and supervise employees and faculty as to proper methods of dealing with reports of sexual abuse, harassment and bullying and investigate same and accommodate victims in a manner that would permit them without undue hindrance, to complete their higher education and to participate in athletic activities; b. Failing to properly

and timely report incidents or claims of sexual assault, harassment and bullying; c. Failing to provide adequate counseling and assistance to victims of sexual assault, harassment and bullying; d. Failing to adequately monitor and supervise departments, including athletic departments, to ensure compliance with protections and standards for sexual assault, harassment and bullying prevention, reporting, and investigation; e. Failing to discover, develop, and/or implement basic safeguards designed to prevent and/or minimize incidents of sexual assault, harassment and bullying; f. Failing to investigate and/or monitor persons accused of sexual assault, harassment and bullying to ensure additional events and/or harassment of victims did not occur; g. Failing to adopt and implement adequate safeguards to prevent known sexual harassment occurring on campus; h. Failing to provide adequate staff, with proper training, to counsel and assist victims of sexual assault, bullying and harassment; i. Tolerating sexual assailants on campus despite reports to the highest levels of their identities; and despite reports that they continue to bully and/or harass their victims online and/or in person; j. Failing to adopt education programs to promote awareness of assault, harassment and bullying; k. Failing to adopt and enforce institutional sanctions for sex offenses, both forcible and non-forcible; l. Failing to adopt and enforce procedures students should follow if they become sexual assault victims, victims of bullying and victims of harassment, including who should be contacted, the importance of retaining evidence, and to whom the offense

should be reported; m. Failing to inform victims that they have the option of reporting the sexual assault, harassment and bullying to law enforcement authorities and that they will receive assistance from the institution in the process; n. Failing to notify sexual assault, harassment and bullying victims about counseling services and options for changing academic schedules and living arrangements in the wake of a sexual assault, bullying and/or harassment; o. Failing to put in place an accurate routine procedure to notify the campus community about serious criminal activity that is likely to be a threat to students and employees; p. Failing to adopt and periodically review procedures to make sure they are adequate to address complaints of serious sexual misconduct, bullying and harassment; q. Failing to develop a clear policy about which kinds of sexual offenses will be handled internally and which will be turned over to the criminal authorities; r. Failing to make the goal of protecting the campus community from sexual assaults and harassment an integral part of the institution's day-to-day mission; and s. Failed to implement anti-retaliation policies for reporting, and/or failed to act on those policies when evidence of retaliatory conduct was uncovered.

62.    Despite the reporting of the harassment and bullying, Spring Hill deliberately, willfully, recklessly, and consciously decided not to investigate the matter. Spring Hill also willfully, maliciously, and acted in bad faith by failing to discharge duties and failing to follow Spring Hill's Title IX Sex Discrimination,

31

Sexual Harassment, and Sexual Violence Policy among other policies. Spring Hill never issued a legitimate "No-Contact Order" and never enforced any alleged restriction; never provided Plaintiff any relief allowed under Spring Hill's policy including but not limited to: Rescheduling of exams and assignments; Providing alternative course completion options; Modification or change in class schedule, including the ability to drop a course without penalty or to transfer; Change in work schedule or job assignment; Change in student's campus housing; Leaves of absence; Assistance from Spring Hill support staff in completing housing relocation; Limiting the assailants access to certain Spring Hill facilities or activities pending resolution of the matter, voluntary leave of absence; Providing academic support services, such as tutoring; providing Escort services; providing Increased security and monitoring of certain areas of the campus or similar measures; providing referral to counseling services both on and off campus; failed to provide Plaintiff resources on and off campus for trained advocates who can provide crisis response; failed to provide assistance in identifying advocacy support to obtain orders of protection within the criminal justice system, among other things.

63.   Despite having a policy that Spring Hill encourages reporting of all crimes, bullying, discrimination and harassment, Spring Hill did not provide Plaintiff any support and did not attempt to investigate his allegations when the bullying and harassment was reported. Spring Hill's policy states that appropriate

32

support will be offered in every case; however, Spring Hill offered no support in this one. Plaintiff's claims were not investigated, he was not provided needed mental health treatment, he was not protected, and he was not provided with any relief. In fact, after Plaintiff notified Spring Hill of the bullying and harassment, the assailants continued to harass the Plaintiff, assaulted Plaintiff, and continued to bully Plaintiff. Moreover, Spring Hill evicted Plaintiff from the team and reduced his promised increase in athletic scholarship. Moreover, Plaintiff's mental health deteriorated further given the lack of response and investigation by Spring Hill and Spring Hill's retaliation.

64.     Each of the foregoing actions support Plaintiff's contention that Spring Hill engaged in their own acts of intentional discrimination and retaliation against Plaintiff, which are sufficient to support an allegation of a Title IX violation.

65.     At all times relevant to this complaint, Spring Hill had actual notice of Plaintiff's Title IX complaint and failed to adequately and reasonably respond, in violation of Title IX and the Spring Hill policies, subjecting Plaintiff to further abuse, bullying, harassment and retaliation.

66.     Under Spring Hill's sexual assault, discrimination and harassment policies and procedures, Spring Hill was required to assess both the complaint and the danger posed to Plaintiff and the Spring Hill community. Not doing so was a gross dereliction of Spring Hill's duties and was in deliberate indifference to

Plaintiff's rights to receive an education at Spring Hill. This indifference and choice by Spring Hill not to investigate or assist Plaintiff resulted in Plaintiff's escalating fear that he would not be safe on campus and led to Plaintiff's suicidal ideation, depression, anxiety, mental anguish, continued harassment and bullying. Moreover, and incredibly despite being made aware of the harassment and bullying Spring Hill took it further and suspended Plaintiff from the athletic teams in retaliation for reporting the bullying and harassment.

67.     Spring Hill was deliberately indifferent to Plaintiff's complaints of discrimination, assault, bullying and harassment by the assailants. Its inaction in response to Plaintiff's reporting, its failure to support and protect his rights under Title IX were clearly unreasonable considering the known circumstances. Spring Hill refused to ask questions, complete a report, investigate Plaintiff's complaint, failed to protect Plaintiff, failed to provide him any Title IX assistance in connection with the harassment and bullying. Spring Hill's officers deliberately refused even to enter Plaintiff's complaint onto Spring Hill's internal database which records complaints, until much later and after Plaintiff secured counsel.

68.     Spring Hill acted with deliberate indifference in deviating significantly from the statutory standard of care requirements of Title IX outlined in the U.S. Department of Education's guidance letters and from the requirements of its own policies and procedures. Spring Hill failed to enact and/or disseminate and/or

implement proper or adequate procedures to discover, prohibit, or remedy the kind of discrimination, bullying and harassment that Plaintiff suffered. This failure included, without limitation, non-existent or inadequate customs, policies, or procedures for training staff and faculty in Title IX requirements and their own Title IX policy, including the recognition, reporting, investigation, and correction of unlawful Title IX discrimination and retaliation such as Plaintiff experienced.

69.     Spring Hill knew or should have known that dangerous consequences could be suffered by individuals, including Plaintiff, by failing to properly train and supervise its employees regarding the requirements of its sexual misconduct, bullying, discrimination and harassment policies. These failures amounted to deliberate indifference toward the unlawful sexual conduct and retaliatory conduct that had occurred, was occurring, and was likely to continue occurring to Plaintiff. As a result, Plaintiff was subject to continuing harassment and a loss of educational opportunities at Spring Hill, suffered continuous fear, worry, anxiety, and mental illness.

70.     Spring Hill's policies, customs, or practices in failing to train and supervise its employees in proper procedure for responding to Title IX complaints fairly, equitably, and without retaliation, were the proximate cause of, and moving force behind, the violation of Plaintiff's rights under Title IX, which led to his suicidal ideations, depression, anxiety and physical ailment. Spring Hill deliberately

did not investigate the matter, did not take down any information from the Plaintiff, did not provide him any direction or guidance on Title IX protections, did not provide him any protections, did not provide him medical and mental health care, to the contrary, Spring Hill allowed it to continue and went further by retaliating against Plaintiff when it removed him from the athletic team, forced him into isolation, and failed to give him promised scholarship money.  The retaliatory actions were taken because of Plaintiff's vocalizing the discrimination, bullying, and harassment protected Title IX complaint. Knowing that any of these actions could befall them would cause other students to question whether they should risk making a Title IX complaint to Spring Hill.

71.     Spring Hill further violated Title IX and its own policies by immediately believing false allegations of a white male and not providing Plaintiff a proper investigation prior to facing disciplinary action and a suspension from the Track & Field team. Suspending Plaintiff as acknowledged on record by Mr. Nathan McQuinn on an "interim" decision was not permitted by the Student-Athlete Handbook. A suspension may only come after a finding of a violation of an offense and depending on the severity, however, Plaintiff was suspended without being afforded his due process rights in accordance with the Policy. The suspension was done improperly, intentionally in retaliation for Plaintiff's reporting of the harassment and bullying, discrimination and sexual misconduct by the assailants.

Spring Hill's immediate suspension was improper, retaliatory and further evidence of its own discrimination against the Plaintiff based on his perceived sexual orientation and race. Before the suspension Spring Hill did not undertake any investigation or a hearing. Plaintiff lost the benefit of his due process rights.

72.    Spring Hill intended to hurt Plaintiff, to discriminate against him, and to retaliate against him as is evident when comparing their treatment of Plaintiff with that of one of the assailants here, Terrence Gennari. Gennari is a white straight male whereas Plaintiff is an African American who had a perceived homosexual sexual orientation.  Gennari, after being arrested for vandalizing a local school, was given full support by Coach McVey and Spring Hill. In fact, Coach McVey told the teammates at a team meeting that they "should support (Gennari)" and "lift (Gennari) up". In comparison, Coach McVey told the teammates to not provide Plaintiff any moral support. Coach Craig McVey sent a message to Plaintiff's teammate and friend stating, "I know it might be hard but do not discuss with ------ -. He is going to be looking for moral support but not on this one." By the use of the words "but not on this one" Coach McVey held Plaintiff in a false light and such a statement was libelous and against the freedom of speech policy of Spring Hill.  Terrence Gennari was charged with two felonies and had a public arrest. He was allowed to remain in GroupMe messaging threads, attend team events, and given

37

the support of Spring Hill while suspended. Plaintiff however was left in isolation, held in a false light, removed from all team activities and communications.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands judgment against Spring Hill for all damages awardable under Title IX, including but not limited to attorney's fees and all available damages, which may include but not be limited to, if available, compensatory, punitive, treble damages, attorney's fees, costs, prejudgment interest, and post-judgment interest.

**COUNT II: GENDER DISCRIMINATION UNDER TITLE IX: DELIBERATE INDIFFERENCE TO PLAINTIFF'S SEXUAL HARASSMENT AND BULLYING (Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a)) (against Spring Hill College)**

73.    Plaintiff incorporates by reference all preceding facts and allegations set forth above.

74.    Spring Hill was on notice and aware of the fact the Plaintiff was being bullied and harassed because of his perceived sexual orientation and gender by fellow students.

75.    Spring Hill deliberately chose not to fully investigate the assailants and allowed the discrimination, harassment and bullying to continue. Further, Spring Hill retaliated against Plaintiff for the reporting of the harassment, bullying and discrimination by unlawfully suspending Plaintiff from all athletic activities and communications. Spring Hill's response to Plaintiff's reporting was clearly

unreasonable. Spring Hill discouraged Plaintiff from pursuing the matter, dismissed his reports of harassment and bullying, refused to undertake any investigation which subjected Plaintiff to further harassment by the assailants, an assault, and further worry, emotional distress, anxiety and mental anguish, self-harm, continued feelings of being unsafe, and ultimately removal from the team. Spring Hill's response was clearly unreasonable as it placed Plaintiff vulnerable to additional discrimination and sexual harassment and retaliation. The harassment and bullying were severe, pervasive, and objectively offensive that it effectively barred the Plaintiff's access to an educational opportunity or benefit. Spring Hill further unlawfully removed Plaintiff from the team, placing him in a false light and leaving him vulnerable to increased mental anguish, depression, worry, suicidal ideations, and anxiety. Spring Hill failed to take any precautions that would prevent future attacks from the assailants by, for example, implementing and enforcing no contact policies, investigating the allegations. Further, Spring Hill violated the law by retaliating against Plaintiff when it unlawfully suspended Plaintiff and intentionally told Plaintiff's close friends to not comfort him. Spring Hill failed to implement a more protective sexual harassment policy to handle future incidents, by investigating the matter, by providing Plaintiff other safety protections available to Spring Hill.

76.     Spring Hill failed to acknowledge Plaintiff's reporting of the sexual harassment and bullying and such failure to investigate, conduct any disciplinary

hearings, or contact Plaintiff and offer any assistance or resources was clearly unreasonable. Spring Hill also deliberately:

a. failed to proper hire, train and retain officers, staff and faculty as to proper methods to deal with reports of sexual abuse, investigate same and accommodate victims in a manner that would permit them to without undue hindrance, complete their higher education.

b. Failed to properly and timely report incidents of sexual assault, harassment and bullying.

c. Failed to provide adequate counseling and assistance to victims of sexual assault, harassment and bullying.

d. Failed to adequately monitor and supervise departments, including athletic departments, to ensure compliance with protections and standards for sexual assault prevention, reporting and investigation.

e. Failed to discover, develop and/or implement basic safeguards designed to prevent and/or minimize incidents of sexual assault, harassment and bullying.

f. Failed to investigate and/or monitor persons accused of sexual assault, harassment and bullying to ensure additional events did not occur.

g. Failed to adopt and implement adequate safeguards to prevent known sexual harassment occurring on campus.

h. Failed to provide adequate staff, with proper training, to counsel and assist victims of sexual assault, harassment and bullying.

i. Tolerated sexual assailants on campus despite reports to the highest levels of their identities.

j. Failed to adopt education programs to promote awareness of sexual assault, harassment, and bullying.

k. Failed to adopt and enforce institutional sanctions for sex offenses, both forcible and non-forcible.

l. Failed to adopt and enforce procedures students should follow if they become sexual assault, harassment and/or bullying victims, including who should be contacted, the importance of retaining evidence, and to whom the offense should be reported.

m. Failed to inform victims that they have the option of reporting the sexual assault, harassment and bullying to law enforcement authorities and that they will receive assistance from the institution in the process.

n. Failed to notify sexual assault, harassment and bullying victims about counseling services and options for changing academic schedules and living arrangements in the wake of a sexual assault, harassment and bullying and address or protect against retaliation in the wake of reporting a sexual assault, harassment and bullying.

o. Failed to put in place an accurate routine procedure to notify the campus community about serious criminal activity that is likely to be a threat to students and employees.

p. Failed to adopt and periodically review procedures to make sure they are adequate to address complaints of serious sexual misconduct.

q. Failed to develop a clear policy about which kinds of sexual offenses will be handled internally and which will be turned over to the criminal authorities.

r. Failed to recognize and address the high propensity of rapes, sexual assaults, harassment and bullying taking place on campus; and

s. Failed to make the goal of protecting the campus community from sexual assaults and harassment an integral part of the institution's day-to-day mission of providing a safe and secure learning and working environment.

t. Failed to abide by, enforce or follow the rules and regulations of Spring Hill, including but not limited to Spring Hill's Sexual Discrimination and Harassment Policy concerning the reporting of harassment and bullying by a fellow student, and willfully, maliciously, recklessly failed to investigate the complaint, and failed to provide Plaintiff any of the following relief allegedly available under Spring Hill's policies and procedures: an actual and enforced "No-Contact Order"; rescheduling of exams and assignments; providing alternative course completion and athletic practice/competition options; Modification or change in class and athletic schedule,

42

including the ability to drop a course without penalty or to transfer or to practice in a different setting at a different location and time; Change in work schedule or job assignment; Change in student's campus housing; Leaves of absence; Assistance from Spring Hill support staff in completing housing relocation and athletic practices; Limiting assailants' access to certain Spring Hill facilities or activities; Providing academic support services, such as tutoring; providing Escort services; providing Increased security and monitoring of certain areas of the campus or similar measures; providing referral to counseling services both on and off campus; failed to provide Plaintiff resources on and off campus for trained advocates who can provide crisis response; failed to provide assistance in identifying advocacy support to obtain orders of protection within the criminal justice system, among other things. Spring Hill's own rules, regulations and policies state that all reports of a criminal nature, especially the reporting of an assault, harassment and bullying by a fellow student, would be investigated and a litany of relief is allegedly available under the policies. However, Spring Hill breached their own policies by willfully, recklessly, maliciously and in bad faith refusing to investigate the matter and to provide any of the allegedly available relief to the Plaintiff. Spring Hill failed to discharge their duties pursuant to Spring Hill's own policies and procedures.

77.    Spring Hill's deliberate indifference to Plaintiff's sexual harassment and bullying exposed him to continued mental pain and anguish and sexual

harassment, which was so severe, pervasive, and objectively offensive that it effectively barred him access to meaningful educational opportunities and benefits including academics, athletic programs, and on-campus events and activities. Moreover, Spring Hill retaliated by wrongfully suspending Plaintiff from the track and field team after he reported the bullying and harassment.

78.     As a direct and proximate result of Spring Hill's deliberate indifference to Plaintiff's sexual harassment and bullying, Plaintiff suffered damages and injuries for which Spring Hill is liable.

79.     Spring Hill is also liable for retaliating against Plaintiff after reporting he was being sexually harassed and bullied by teammates. Specifically, Spring Hill wrongfully and in retaliation, suspended Plaintiff from the track and field team and reduced promised scholarship monies.

**WHEREFORE the above premises considered**, Plaintiff seeks all available damages, including but not limited to compensatory, punitive, treble damages, attorney's fees, costs, prejudgment interest, and post-judgment interest.

## COUNT III: RETALIATION IN VIOLATION OF TITLE IX (against Spring Hill College)

80.     Plaintiff adopts all preceding paragraphs of this Complaint as if fully set forth herein.

81.     As shown above, Plaintiff was unlawfully and wrongfully suspended from all athletic activities and communications in retaliation for his vocalization of the sexual harassment and bullying he was enduring by fellow students.

82.     Further, Plaintiff was not provided immediate assistance, an investigation or any other benefit as described in this Complaint also in retaliation for the reporting of the sexual misconduct, harassment and bullying. All of the herein described retaliatory and intentional acts of Spring Hill by and through its employees proximately caused Plaintiff to lose participation opportunities, to lose the support of his teammates, to lose support services of Spring Hill, to suffer mental anguish, to suffer physical injury, to suffer emotional distress, to suffer depression, to suffer anxiety, to lose sleep, to worry, to suffer embarrassment, have to seek medical and mental care, and to retain the services of legal counsel.

**WHEREFORE, these premises considered**, Plaintiff seeks all available remedies under Title IX, including but not limited to compensatory, punitive, treble damages, attorney's fees, costs, prejudgment interest, and post-judgment interest.

## COUNT IV – VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964 (against Spring Hill College)

83.     Plaintiff adopts all preceding paragraphs of this Complaint as if fully set forth herein.

84.     Title VI of the Civil Rights Act of 1964 (Title VI), 42 U.S.C.2000d et seq., prohibits discrimination based on race, color, or national origin in any program or activity receiving Federal financial assistance.

85.     Spring Hill is an educational institute who receives federal financial assistance and is subject to Title VI of the Civil Rights Act of 1964.

86.     Plaintiff, an African American who had a perceived homosexual sexual orientation, reported he was being bullied and sexually harassed by teammates. Despite his reporting, Spring Hill failed to timely undertake an investigation, failed to impose any restrictions and enforce any such restrictions protecting the Plaintiff from further abuse, harassment and bullying.

87.     When one of the assailants (known to Spring Hill as one of the persons harassing and bullying Plaintiff) falsely made allegations against Plaintiff, Spring Hill immediately suspended him in violation of Title VI and Spring Hill's own policies and procedures.

88.     Spring Hill treated Plaintiff disparately and differently because of his race and perceived sexual orientation. When one of the assailants, Gennari, was arrested and ultimately plead guilty for certain criminal activities, including but not limited to criminal mischief 1st degree and burglary 3rd degree, Gennari was permitted to interact with teammates, receive team communications, participate in certain team/school sponsored activities, and receive the support of his teammates.

In contrast, Spring Hill intentionally isolated Plaintiff when he was falsely accused by the known harasser, Plaintiff was suspended and put in complete isolation. Coach McVey told the teammates to support Gennari whereas Coach McVey instructed teammates to leave Plaintiff alone and not provide him with any support. Plaintiff lost more opportunities, including activities with the team and scholarship funds, and suffered increased depression, anxiety, embarrassment, suicidal ideations, worry, and lost sleep. Plaintiff further suffered physically as a result of the actions of Spring Hill and its employees.  Also, Gennari was arrested for felony DUI on April 9, 2023, yet he was able to compete at the SIAC Outdoor Track & Field Championship. He was also despite the arrest allowed to do many activities, including but not limited to: interact with teammates, receive team communications, participate in certain team/school sponsored activities, practice, compete and receive the support of his teammates, Coach McVey and the Athletic Department.

89.    Spring Hill treated Plaintiff differently and in a disparate way in violation of Title VI because of his race and perceived sexual orientation.

90.    Spring Hill is the recipient of federal funds and is bound to comply with Title VI. Its actions and inactions as set forth in this Complaint are in direct violation of this statute. As identified in this Complaint, Plaintiff was not afforded any relief available after reporting the sexual harassment and bullying. Spring Hill failed to acknowledge Plaintiff's reporting of the sexual harassment and bullying and such

failure to investigate, conduct any disciplinary hearings, or contact Plaintiff and offer any assistance or resources was clearly unreasonable. Spring Hill also deliberately:

a. failed to properly hire, train and retain officers, staff and faculty as to proper methods to deal with reports of sexual abuse, investigate same and accommodate victims in a manner that would permit them to without undue hindrance complete their higher education.

b. Failed to properly and timely report incidents of sexual assault, harassment and bullying.

c. Failed to provide adequate counseling and assistance to victims of sexual assault, harassment and bullying.

d. Failed to adequately monitor and supervise departments, including athletic departments, to ensure compliance with protections and standards for sexual assault prevention, reporting and investigation.

e. Failed to discover, develop and/or implement basic safeguards designed to prevent and/or minimize incidents of sexual assault, harassment and bullying.

f. Failed to investigate and/or monitor persons accused of sexual assault, harassment and bullying to ensure additional events did not occur.

g. Failed to adopt and implement adequate safeguards to prevent known sexual harassment occurring on campus.

h. Failed to provide adequate staff, with proper training, to counsel and assist victims of sexual assault, harassment and bullying.

i. Tolerated sexual assailants on campus despite reports to the highest levels of their identities.

j. Failed to adopt education programs to promote awareness of sexual assault, harassment, and bullying.

k. Failed to adopt and enforce institutional sanctions for sex offenses, both forcible and non-forcible.

l. Failed to adopt and enforce procedures students should follow if they become sexual assault, harassment and/or bullying victims, including who should be contacted, the importance of retaining evidence, and to whom the offense should be reported.

m. Failed to inform victims that they have the option of reporting the sexual assault, harassment and bullying to law enforcement authorities and that they will receive assistance from the institution in the process.

n. Failed to notify sexual assault, harassment and bullying victims about counseling services and options for changing academic schedules and living arrangements in the wake of a sexual assault, harassment and bullying and address or protect against retaliation in the wake of reporting a sexual assault, harassment and bullying.

o. Failed to put in place an accurate routine procedure to notify the campus community about serious criminal activity that is likely to be a threat to students and employees.

p. Failed to adopt and periodically review procedures to make sure they are adequate to address complaints of serious sexual misconduct.

q. Failed to develop a clear policy about which kinds of sexual offenses will be handled internally and which will be turned over to the criminal authorities.

r. Failed to recognize and address the high propensity of rapes, sexual assaults, harassment and bullying taking place on campus; and

s. Failed to make the goal of protecting the campus community from sexual assaults and harassment an integral part of the institution's day-to-day mission of providing a safe and secure learning and working environment.

t. Failed to abide by, enforce or follow the rules and regulations of Spring Hill, including but not limited to Spring Hill's Sexual Discrimination and Harassment Policy concerning the reporting of harassment and bullying by a fellow student, and willfully and maliciously, recklessly failed to investigate the complaint, and failed to provide Plaintiff any of the following relief allegedly available under Spring Hill's policies and procedures: an actual and enforced "No-Contact Order"; rescheduling of exams and assignments; providing alternative course completion and athletic practice/competition options; Modification or change in class and athletic schedule,

50

including the ability to drop a course without penalty or to transfer or to practice in a different setting at a different location and time; Change in work schedule or job assignment; Change in student's campus housing; Leaves of absence; Assistance from Spring Hill support staff in completing housing relocation and athletic practices; Limiting assailants' access to certain Spring Hill facilities or activities; Providing academic support services, such as tutoring; providing Escort services; providing Increased security and monitoring of certain areas of the campus or similar measures; providing referral to counseling services both on and off campus; failed to provide Plaintiff resources on and off campus for trained advocates who can provide crisis response; failed to provide assistance in identifying advocacy support to obtain orders of protection within the criminal justice system, among other things. Spring Hill's own rules, regulations and policies state that all reports of a criminal nature, especially the reporting of an assault, harassment and bullying by a fellow student, would be investigated and a litany of relief is allegedly available under the policies. However, Spring Hill breached their own policies by willfully, recklessly, maliciously and in bad faith refusing to investigate the matter and to provide any of the allegedly available relief to the Plaintiff. Spring Hill failed to discharge their duties pursuant to Spring Hill's own policies and procedures.

91.    Spring Hill's deliberate indifference to Plaintiff's sexual harassment and bullying exposed him to continued mental pain and anguish and sexual

harassment, which was so severe, pervasive, and objectively offensive that it effectively barred him access to meaningful educational opportunities and benefits including academics, athletic programs, and on-campus events and activities. Moreover, Spring Hill retaliated by wrongfully suspending Plaintiff from the track and field team after he reported the bullying and harassment.

92.     As a direct and proximate result of Spring Hill's deliberate indifference to Plaintiff's sexual harassment and bullying, Plaintiff suffered damages and injuries for which Spring Hill is liable.

93.     Spring Hill is also liable for retaliating against Plaintiff after reporting he was being sexually harassed and bullied by teammates. Specifically, Spring Hill wrongfully and in retaliation, suspended Plaintiff from the track and field team and reduced promised scholarship monies and instructed teammates to completely isolate Plaintiff, removed Plaintiff from all activities, communications and other opportunities enjoyed by teammates.

**WHEREFORE the above premises considered**, Plaintiff seeks all relief he may be entitled pursuant to Title VI, including but not limited to compensatory, punitive, treble damages, attorney's fees, costs, prejudgment interest, and post-judgment interest.

**COUNT V – RETALIATION IN VIOLATION OF TITLE VI (against Spring Hill College)**

94.     Plaintiff adopts all preceding paragraphs of this Complaint as if fully set forth herein.

95.     As described in the Complaint, Spring Hill was obligated to comply with Title VI and it violated Title VI in its response (and lack thereof) to Plaintiff's reporting of sexual harassment and bullying by teammates.

96.     Spring Hill is also liable for retaliating against Plaintiff after reporting he was being sexually harassed and bullied by teammates. Specifically, Spring Hill wrongfully, intentionally and in retaliation, suspended Plaintiff from the track and field team and reduced promised scholarship monies and instructed teammates to completely isolate Plaintiff, removed Plaintiff from all activities, communications and other opportunities enjoyed by teammates.

97.     Following Spring Hill eventually agreeing to allow Plaintiff to be reinstated Coach Craig McVey continued his efforts to retaliate and punish Plaintiff by intentionally continuing to exclude Plaintiff from emails containing summer workouts and from Plaintiff participating in team related activities. Plaintiff was forced to involve counsel to get access to all activities. Also, Chad LeBlanc aggressively forced Plaintiff to attend a private and unnecessary meeting with Coach Craig McVey, Chad LeBlanc, and Joe Niland inappropriately coping the Title IX Coordinator Kevin Abel to influence him. In addition, Kevin Abel and Dr. Vannee

Cao-Nguyen negligently, reckless or intentionally prevented Plaintiff from obtaining documents in accordance with FERPA after requesting the documents multiple times and providing them relevant statutes as to why Plaintiff was entitled to the materials. Kevin Abel and Dr. Vannee Cao-Nguyen further retaliated against Plaintiff by attempting to include a Non-Title IX Code of Conduct within the Title IX Investigation and refusing to remove it from the investigation after being provided the relevant provisions within the Policy why it could not be included resulting in Plaintiff suffering loss of time, undue stress, increased anxiety and depression. Further, Kevin Abel attempted to coerce, intimidate, harass, and retaliate against Plaintiff by implying the Title IX Investigation may not continue for Plaintiff if Plaintiff raised concerns of the inclusion of the Infliction of Physical Harm Code of Conduct Charge within the Title IX Investigation and continued to press Spring Hill to provide Plaintiff copies of the documents in accordance with FERPA. Kevin Abel also failed to timely and appropriately conduct investigations and failed to timely and properly provide written acknowledgements of information Plaintiff requested multiple times about the Title IX Investigation and the process of the Title IX Investigation. Kevin Abel and Dr. Vannee Cao-Nguyen failed to include Title IX Violations within the Investigation against Coach Craig McVey after Plaintiff explained McVey had been previously aware of the sexual harassment and bullying and in fact McVey witnessed some of the harassment and bullying yet did nothing

54

and that Coach McVey retaliated against Plaintiff for reporting Title IX violations and sexual harassment, sexually charged bullying and violation of sexual misconduct policies.

98.     As a proximate result of Spring Hill's retaliation in violation of Title VI, Plaintiff was caused to suffer anxiety, depression, worry, embarrassment, physical harm, mental anguish, and loss sleep among other damages.

**WHEREFORE the above premises considered** Plaintiff seeks all available relief he is entitled to including but not limited to compensatory, punitive, treble damages, attorney's fees, costs, prejudgment interest, and post-judgment interest.

## COUNT VI: NEGLIGENCE AND WANTONNESS (against Spring Hill College)

99.     Plaintiff adopts all preceding paragraphs of this Complaint as if fully set forth herein.

100.    Spring Hill owed Plaintiff a duty of reasonable care.

101.    Spring Hill breached their duty in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously:

a. ignoring Plaintiff's complaints of sexual harassment and bullying.

b. intentionally, negligently, or recklessly allowing the harassment and bullying against Plaintiff.

c. retaliating against Plaintiff for reporting the harassment and bullying and failing to properly hire, train and retain officers, staff and faculty as to proper

55

methods to deal with reports of sexual abuse, harassment and bullying, investigate same and accommodate victims in a manner that would permit them to without undue hindrance, complete their higher education and failing to properly and timely report incidents of sexual assault, harassment and bullying and ailing to provide adequate counseling and assistance to victims of sexual assault, harassment and bullying.

d. Failing to adequately monitor and supervise departments, including athletic departments, to ensure compliance with protections and standards for sexual assault, harassment and bullying prevention, reporting and investigation.

e. Failing to discover, develop and/or implement basic safeguards designed to prevent and/or minimize incidents of sexual assault, harassment and bullying.

f. Failing to investigate and/or monitor persons accused of sexual assault, harassment and bullying to ensure additional events did not occur.

g. Failing to adopt and implement adequate safeguards to prevent known sexual harassment occurring on campus.

h. Failing to provide adequate staff, with proper training, to counsel and assist victims of sexual assault, harassment and bullying.

i. Tolerating sexual assailants on campus despite reports to the highest levels of their identities.

j. Failing to adopt education programs to promote awareness of rape, acquaintance rape, and other sex crimes.

k. Failing to adopt and enforce institutional sanctions for sex offenses, both forcible and non-forcible.

l. Failing to adopt and enforce procedures students should follow if they become sexual assault victims, including who should be contacted, the importance of retaining evidence, and to whom the offense should be reported.

m. Failing to inform victims that they have the option of reporting the sexual assault, harassment and bullying to law enforcement authorities and that they will receive assistance from the institution in the process.

n. Failing to notify sexual assault, harassment and bullying victims about counseling services and options for changing academic schedules and living arrangements in the wake of a sexual assault, harassment and bullying and address or protect against retaliation in the wake of reporting a sexual assault, harassment and bullying.

o. Failing to put in place an accurate routine procedure to notify the campus community about serious criminal activity that is likely to be a threat to students and employees.

p. Failing to adopt and periodically review procedures to make sure they are adequate to address complaints of serious sexual misconduct.

q. Failing to develop a clear policy about which kinds of sexual offenses will be handled internally and which will be turned over to the criminal authorities.

r. Failing to recognize and address the high propensity of sexual harassment and bullying taking place; and

s. Failing to make the goal of protecting the campus community from sexual assaults and harassment an integral part of the institution's day-to-day mission of providing a safe and secure learning and working environment.

t. Failing to abide by, enforce or follow the rules and regulations of Spring Hill, including but not limited to sexual discrimination and harassment policies, Freedom of Inquiry, Freedom of Speech policies and those which concern the reporting of an assault, harassment or bullying by a student, and willfully and maliciously, recklessly failed to investigate the complaint, and failing to provide Plaintiff any of relief allegedly available under Spring Hill's policies and procedures.

102.   The above enumerated breaches of duty were the proximate cause of substantial injury and damage to Plaintiff, as more specifically described herein.

103.   These damages include, without limitation, great pain of mind and body, physical injury, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life, which Plaintiff has suffered and continues to suffer spiritually, mentally and emotionally. Plaintiff was prevented and will continue to

be prevented from performing his daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**WHEREFORE, the above premises considered**, Plaintiff hereby seeks all damages available including but not limited to compensatory, punitive, treble damages, attorney's fees, costs, prejudgment interest, and post-judgment interest.

**COUNT VII: BREACH OF CONTRACT (against Spring Hill College)**

104.   Plaintiff adopts all preceding paragraphs of this Complaint as if fully set forth herein.

105.   Plaintiff had a valid, enforceable contract with Spring Hill as an academic enrollee, and as a resident living in on-campus housing.

106.   Spring Hill breached this contract in failing to adequately warn Plaintiff of the dangerous sexual assault, harassment and bullying conditions on campus that have been allowed to metastasize considering non-existent investigation procedures and student support activities.

107.   Spring Hill also breached this contract by failing to provide an adequately safe living and educational environment for Plaintiff, and by failing to maintain an adequately safe living and educational environment for Plaintiff after he reported sexual harassment and bullying.

108.   Spring Hill violated its own policies in its wrongful suspension of the Plaintiff. Spring Hill wrongfully suspended Plaintiff and precluded Plaintiff his due process rights and caused his unlawful loss of NCAA eligibility.  Spring Hill's policies require an individual to be found in violation and cannot enforce a suspension based on an "interim decision".

109.   In addition, Spring Hill violated its Freedom of Inquiry and Freedom of Speech Policy when Coach McVey messaged Plaintiff's teammate Claire Morgan stating, "I know it might be hard but do not discuss with -----" and that "he is going to be looking for moral support but not on this one." He also violated the policies by forbidding the Plaintiff from discussing the improper suspension with anyone within the program. This prevented Plaintiff from gathering evidence to defend the false allegations and wrongful suspension. Coach McVey also sent a libelous email to the entire team which held Plaintiff in a false light and implied guilt on his behalf.

110.   As a result of these breaches of contract, Plaintiff suffered damages which were foreseeable, and for which recovery is now requested.

**WHEREFORE the above premises considered**, the Plaintiff hereby seeks all available damages including but not limited to compensatory, punitive, treble damages, attorney's fees, costs, prejudgment interest, and post-judgment interest.

**COUNT VIII: NEGLIGENT HIRING, TRAINING & SUPERVISION (against Spring Hill College)**

111.   Plaintiff adopts all preceding paragraphs of this Complaint as if fully set forth herein.

112.   Defendant failed to exercise reasonable care in the hiring of its employees who were unsuitable for the positions and their unsuitableness was obvious had the Defendant exercised reasonable care and had the employees who were notified of the sexual harassment and bullying conducted any investigation, much less a proper investigation, the Plaintiff would not have endured continued harassment, bullying and assault from the assailants, would not have endured further pain and suffering, embarrassment, grief, emotional distress, and mental anguish he endured.

113.   Defendant's failure to train its employees in the handling of claims such as those presented here led to Plaintiff having to endure continued harassment by the assailants and to suffer pain and suffering, mental anguish, embarrassment, self-harm, grief, and emotional distress.

114.   Defendant failed to supervise its employees and to ensure they properly and appropriately discharged their duties pursuant to policies for handling of sexual harassment and bullying investigations which caused Plaintiff to endure further harassment, assault and bullying, to endure mental anguish, worry, grief, emotional distress, pain and suffering, self-harm, and other damages. Defendant also failed to

supervise and train its employees on how to perform an inspection, when suspensions on Athletic teams are available and what rights students have during an investigation.

**WHEREFORE, the above premises considered**, Plaintiff seeks all available damages, including but not limited to compensatory, punitive, treble damages, attorney's fees, costs, prejudgment interest, and post-judgment interest.

**COUNT IX: INVASION OF PRIVACY (against Spring Hill and McVey)**

115.   Plaintiff adopts all preceding paragraphs of this Complaint as if fully set forth herein.

116.   Defendants Spring Hill and McVey placed Plaintiff in a false light when McVey immediately and against policy and procedure suspended Plaintiff and further instructed the team members to not communicate or support Plaintiff implying guilt on the part of Plaintiff. McVey went further when he pinpointed Claire Morgan, Plaintiff's close friend, and specifically stated to her that "I know it might be hard but do not discuss with -------." He is going to be looking for moral support but not on this one."

117.   As a proximate result of Defendants Spring Hill and McVey's actions, Plaintiff was placed in a false light and Plaintiff suffered emotional distress, mental anguish, anxiety, depression, physical ailments, lost opportunities, costs and other damages.

**WHEREFORE the above premises considered**, Plaintiff seeks all available remedies including but not limited compensatory, punitive, treble damages, attorney's fees, costs, prejudgment interest, and post-judgment interest.

## COUNT X: NEGLIGENT AND WANTON MISREPRESENTATION (against Spring Hill College)

118.   Plaintiff adopts all preceding paragraphs of this Complaint as if fully set forth herein.

119.   In July 2022, Defendant Spring Hill's Coach McVey promised Plaintiff that if Plaintiff received All- Conference Honors at the Cross-Country Conference Meet, then he would increase Plaintiff's scholarship by $1,000 to $2,000.

120.   Plaintiff earned the honors.

121.   Defendant Spring Hill failed to provide Plaintiff the additional scholarship.

122.   Defendant Spring Hill's Coach McVey knew or should have known that he could not and/or was not going to award Plaintiff the additional funds.

123.   Plaintiff relied on the promises and representations of McVey.

124.   Spring Hill made misrepresentations of material fact to their students, including Plaintiff, including, without limitation, the following: a. Spring Hill is "committed to providing students with a safe environment that is conducive to personal growth and learning".

63

125.   Spring Hill made misrepresentations of material fact to their students, including Plaintiff, including, without limitation, the following: "Spring Hill College is committed to a workplace and educational environment that is free of sexual and other unlawful harassment and where the dignity and worth of each of its members is respected. Sexual harassment, including sexual misconduct, is a type of discrimination prohibited by federal laws such as Title IX of the Education Amendments of 1972 and Title VII of the Civil Rights Act of 1964 and by Alabama law. As a matter of college policy, sexual or other unlawful harassment occurring in the course of any College activity is prohibited."

126.   Spring Hill made misrepresentations of material fact to their students, including Plaintiff, including, without limitation, the following: "Spring Hill College and any member of Spring Hill College's community are prohibited from taking materially adverse action by intimidating, threatening, coercing, harassing, or discriminating against any individual for the purpose of interfering with any right or privilege secured by law or policy, or because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this policy and procedure."

127.   Spring Hill made misrepresentations of material fact to their students, including Plaintiff, including, without limitation, the following: b. "Spring Hill College does not discriminate on the basis of race, color, national origin, sex, sexual

orientation, gender identity, disability, religion, age, veteran status, genetic information or any other applicable legally protected basis in its educational programs and activities, admissions, or employment practices. This policy is in compliance with applicable laws prohibiting discrimination, including applicable provisions of and amendments to Title IX of the Education Amendments of 1972, the Americans with Disabilities Act of 1990, Section 504 of the Rehabilitation Act of 1973, Titles VI and VII of the Civil Rights Act of 1964, other applicable laws, and College policies."

128.   Spring Hill College made misrepresentations of material fact to their students, including Plaintiff, including, without limitation, the following: "All members of the Spring Hill College academic community enjoy the privilege of freedom of speech and expression. This includes the ability to express points of view on the widest range of public and private concerns, and to engage in the robust expression of ideas. The College expects a balanced approach in all communications and the inclusion of contrary points of view. As is true with society at large, free speech and expression are always subject to reasonable restrictions of time, place, and manner, and do not include unlawful activity. Obviously, and in all events, the use of the College forum shall not imply acceptance or endorsement by the College of the views expressed. The College reserves sole authority to decide any reasonable restrictions of time, place, and manner."

129.   Other misrepresentations by the Defendant included: "Code of Conduct violations of the College's rules are reported to the Associate Athletic Director for Internal Affairs and Compliance or Director of Athletics. Code of Conduct violations of the Athletic Department's rules are reported to members of Student Affairs staff. Violations of departmental, conference, and NCAA conduct rules are reported to the student-athlete's head coach, Associate Athletic Director for Internal Affairs and Compliance, the Director of Athletics and the NCAA, as appropriate. If a student-athlete is found to be in violation of a department, College, conference, or NCAA policy, the penalty imposed depends upon the severity of the offense and may include the following: Ineligibility, Suspension, Dismissal from the squad, Cancellation or change in the student-athlete's grant-in-aid, Dismissal from the College."

130.  Defendant also misrepresented the following: "5.9 BIAS BASED HARASSMENT Harassing, or other offensive words or conduct directed at individuals because of their race, sex, national origin, gender, sexual orientation, religion, disability, pregnancy, age, or military status is prohibited. This conduct includes: Verbal harassment, such as comments, jokes or references, and offensive personal or protected class references; Demeaning, insulting, or intimidating comments about an individual or a protected class; The display in the College community of demeaning, insulting, intimidating objects, pictures, or photographs;

Demeaning, insulting, or intimidating written, recorded, or electronically transmitted messages (such as e-mail, instant messaging, or Internet materials); Harassing or other disruptive misconduct in the classroom or during the course of academic or physical instruction is prohibited. The faculty member has the ultimate control over such behavior and is authorized to eject from the classroom or field of instruction any student engaged in disruptive, harassing or violent conduct. This conduct includes, but is not limited to, conduct that: interferes with normal classroom or athletic procedure or instruction, or interferes with the presentation by the faculty member and/or other students, or interferes with the rights of other students to have a learning environment free of disruption, harassment and violence, or interferes with academic evaluation of students or their work, or constitutes physical or mental abuse, threat of physical or mental abuse, or poses a danger to the health, safety, or well-being of the faculty member or other students, regardless of whether such conduct is on or off campus."

131. Spring Hill also misrepresented the following "5.10 SEXUAL HARASSMENT AND VIOLENCE Sexually harassing or offensive conduct in the College community, whether committed by supervisors, managers, non- supervisory employees, students or non-employees, is prohibited. This conduct includes Unwanted or unwelcome physical contact or conduct of any kind, including sexual flirtations, touching, advances, or propositions. "Unwanted, unwelcome" words or

67

actions mean the person(s) affected regards it as undesirable and did not solicit or incite it. Whether conduct is unwanted or unwelcome depends upon whether a reasonable person under the same circumstances would consider the conduct unwanted; Verbal harassment of a sexual nature, such as lewd comments, sexual jokes or references, and offensive personal references; Demeaning, insulting, intimidating, or sexually suggestive comments about an individual; The display in the College community of demeaning, insulting, intimidating, or sexually suggestive objects, pictures, or photographs; Demeaning, insulting, intimidating, or sexually suggestive written, recorded, or electronically transmitted messages (such as e-mail, instant messaging, or Internet materials)."

132.   Plaintiff relied on the representations of the Defendant to his detriment as the Defendant failed to follow the representations forcing Plaintiff into an unlawful suspension causing him to miss an athletic season, scholarship opportunity, and caused him worry, embarrassment, anxiety, physical injury, loss of sleep, and was forced to retain counsel.

**WHEREFORE the above premises considered** Plaintiff seeks all available damages including but not limited to compensatory, punitive, treble damages, attorney's fees, costs, prejudgment interest, and post-judgment interest.

**COUNT XI: LIBEL (against Defendant Tate and Defendant Gennari)**

133.   Plaintiff adopts all preceding paragraphs of this Complaint as if fully set forth herein.

134.   Defendant Tate and Defendant Gennari made libelous comments to others, including but not limited to Spring Hill College's track and field team and cross-country team's GroupMe forums including but not limited to the comment "he is not a man" and referred to Plaintiff as "fag", "gay boy" and "faggot". Defendant Gennari falsely stated that Plaintiff hit Defendant Tate in the GroupMe messaging thread distributed to all Spring Hill teammates.

135.   The comments made by Defendant Tate and Defendant Gennari damaged Plaintiff's reputation and further caused Plaintiff anxiety, worry, depression, loss of enjoyment of life, embarrassment, among other damages. They also led to Plaintiff's improper suspension from Spring Hill athletic activities.

**WHEREFORE, the above premises considered**, Plaintiff seeks all available damages including but not limited to compensatory, punitive, treble damages, attorney's fees, costs, prejudgment interest, and post-judgment interest.

**COUNT XII: ASSAULT and BATTERY (against Defendant Tate)**

136.   Plaintiff adopts all preceding paragraphs of this Complaint as if fully set forth herein.

137.   In February 2022 at St. Paul's Episcopal Church, Defendant Tate assaulted Plaintiff.

138.   On October 24, 2022, Defendant Tate inappropriately touched Plaintiff.

139.   On March 20, 2023, Defendant Tate assaulted Plaintiff.

140.   Each of the assaults caused Plaintiff physical injury as well as emotional stress, mental anguish, embarrassment, anxiety and depression.

**WHEREFORE the above premises considered** Plaintiff seeks all available damages including but not limited to compensatory, punitive, treble damages, attorney's fees, costs, prejudgment interest, and post-judgment interest.

## COUNT XIII: SLANDER (against Defendants Tate and Gennari)

141.   Plaintiff adopts all paragraphs of this Complaint as if fully set forth herein.

142.   In front of fellow teammates on multiple occasions throughout 2022 and 2023 Defendant Tate and Defendant Gennari called Plaintiff "faggot", "gay boy", "fag" and made other negative slurs directed to and about Plaintiff.

143.   Defendant Tate falsely told McVey that Plaintiff hit him which Defendant Tate knew to be false, and McVey believed the false accusation resulting in Plaintiff's suspension from the athletic team and related activities.

144.   The constant slander, bullying and harassment engaged in by Defendant Tate and Defendant Gennari caused Plaintiff great anxiety, worry, stress, depression, damage to reputation, embarrassment and physical injuries.

**WHEREFORE, the above premises considered** Plaintiff seeks all available damages including but not limited to compensatory, punitive, treble damages, attorney's fees, costs, prejudgment interest, and post-judgment interest.

**COUNT XIV: TORT OF OUTRAGE (against Defendants Tate and Gennari)**

145.   Plaintiff adopts all preceding paragraphs of this Complaint as if fully set forth herein.

146.   Defendants Tate and Gennari repeatedly sexually harassed and bullied Plaintiff.

147.   For instance, on November 6, 2021, Defendant Tate attempted to get in the shower with Plaintiff against his will. Defendant Tate circulated unwanted videos sexual in nature in or around January 27, 2022. Defendants Tate and Gennari repeatedly called Plaintiff "gay" "gay boy" "faggot" and other derogatory comments. Defendant Tate pleasured himself in front of Plaintiff in a taunting and unwelcome manner. Defendant Tate made false allegations of assault which led to Plaintiff's suspension from Spring Hill's Cross-Country and Track & Field teams and Plaintiff to endure worry, anxiety, mental anguish and other damages.

**WHEREFORE the above premises considered** Plaintiff demands all damages available including but not limited to compensatory, punitive, treble damages, attorney's fees, costs, prejudgment interest, and post-judgment interest.

## COUNT XV: TORTIOUS INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONS (against Defendant Tate)

148.   Plaintiff adopts all preceding paragraphs of this Complaint as if fully set forth herein.

149.   Plaintiff had a contractual relationship with Spring Hill College to attend Spring Hill College and participate as a scholarship athlete.

150.   Defendant was aware of this relationship.

151.   Defendant Tate intentionally made derogatory and false comments about Plaintiff to others. Those comments included but were not limited to "fag", "faggot", "gay boy", "you are not a man" and "be a man". In addition, Defendant Tate falsely told Coach McVey that Plaintiff hit him – which was false. As a result of the false allegations, Spring Hill College suspended Plaintiff from participating in any athletic activity. Defendant interfered with Plaintiff's relationship with Spring Hill College causing Plaintiff to incur damage to his reputation, anxiety, mental anguish, worry, loss of sleep, embarrassment, depression, and other damages.

**WHEREFORE the above premises considered** Plaintiff seeks all damages he is entitled including but not limited to compensatory, punitive, treble damages, attorney's fees, costs, prejudgment interest, and post-judgment interest.

**COUNT XVI: PROMISSORY ESTOPPEL (against Spring Hill)**

152.   Plaintiff adopts all preceding paragraphs of this Complaint as if fully set forth herein.

153.   Defendant made a clear and unambiguous promise to the Plaintiff. Specifically, in July 2022, Defendant Spring Hill's Coach McVey promised Plaintiff that if Plaintiff received All- Conference Honors at the Cross-Country Conference Meet, then he would increase Plaintiff's scholarship by $1,000 to $2,000.

154.   Plaintiff acted in reliance on the Defendant's promise which was reasonable and foreseeable. Plaintiff earned the honors.

155.   Plaintiff suffered an injury due to the reliance on the Defendant's promise as Defendant Spring Hill failed to provide Plaintiff the additional scholarship.

156.   Defendant Spring Hill's Coach McVey knew or should have known that he could not and/or was not going to award Plaintiff the additional funds.

157.   Plaintiff relied on the promises and representations of McVey and has not received the promised amount.

**WHEREFORE, the above premises considered**, Plaintiff seeks any and all damages available including but not limited to compensatory, punitive, treble damages, attorney's fees, costs, prejudgment interest, and post-judgment interest.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all causes of action.

*/s/ Jamie A. Johnston*

_____

JAMIE A. JOHNSTON(JOH164)

**OF COUNSEL:**
Jamie A. Johnston PC
509 Cloverdale Road Suite 101
Montgomery, Alabama 36106
334.202.9228
334.265.8789 – facsimile
jamie@jjohnstonpc.com
MAILING ADDRESS:
PO Box 4663
Montgomery, Alabama 36103

## CERTIFICATE OF SERVICE

On September 13, 2023, a copy of the foregoing has been filed with the Court's electronic filing system which shall generate a copy to the following counsel of record:

James C. Pennington
Ogletree Deakins
420 20th Street North
Suite 1900
Birmingham, Alabama 35203
James.pennington@ogletreedeakins.com

*/s/ Jamie A. Johnston*

_____

OF COUNSEL

74