**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION**

| | | |
|---|---|---|
| **JOHN DOE[1]**, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | <u>**Civil Action No.: 1:23-CV-340**</u> |
| | ) | |
| | ) | <u>**JURY TRIAL DEMANDED**</u> |
| **SPRING HILL COLLEGE,** | ) | |
| **CRAIG MCVEY,** | ) | |
| **WILLIAM ROBERT TATE.** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**SECOND AMENDED COMPLAINT**</u>

**COMES NOW**, Plaintiff John Doe (hereinafter "Plaintiff") files his Second Amended Complaint and Jury Demand (hereinafter referred to as the "Complaint") complaining of Defendants Spring Hill College, Craig McVey, and William Robert Tate. In support thereof, Plaintiff offers the following:

**I.**    <u>**PARTIES**</u>

1. Plaintiff John Doe ("Plaintiff") is a male individual who at all material times was a student athlete at Spring Hill College.

---

[1] "John Doe" has been substituted for Plaintiff's name for all the reasons provided in his Motion to Proceed under a Fictitious Name, Supplemental Motion to Proceed under a Fictitious Name, and subsequent court filings. This Court denied Plaintiff's motion; however, Plaintiff appealed the decision and moved to stay the Order. This Court granted Plaintiff's Motion to Stay.

1

2.     Defendant Craig McVey ("McVey") is a male individual resident of the state of Alabama who at all times herein was an employee of Spring Hill College serving as Head Coach of Cross Country and Outdoor Track & Field.

3.     Defendant William Robert Tate ("Defendant Tate" or "Assailant") is a former student athlete at Spring Hill College. Defendant Tate is an adult resident of the state of Kentucky.

4.     Defendant Spring Hill College ("Spring Hill") is a domestic non-profit corporation that functions as a private educational institution located in Mobile, Alabama. Defendant Spring Hill is a recipient of federal funds under Title IX, 20 U.S.C. 1681-1688 ("Title IX") and Title VI, 42 U.S.C. 2000d et seq. ("Title VI").

## II. JURISDICTION AND VENUE

5.     This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §1331 because Plaintiff brings this action under 20 U.S.C. §1681, among other federal statutes.

6.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over Plaintiff's claims brought under Alabama law because Plaintiff's state law claims are so related to his federal law claims that they form part of the same case or controversy.

7.     This Court has personal jurisdiction over the Defendants because they are citizens of the state of Alabama and/or committed the tortious acts giving rise to this action in the state of Alabama.

8.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(1)-(2) because this is the judicial district where the events or omissions giving rise to

Plaintiff's claims occurred and at least one Defendant resides in this judicial district.

### III. FACTUAL ALLEGATIONS

9.     Plaintiff is an African American student athlete at Spring Hill College where he is a member of the Cross Country and Track & Field team.

10.    Defendant Tate, while teammates at Spring Hill College, engaged in a pattern of control, abuse, and manipulation of the Plaintiff by blackmailing the Plaintiff with false rumors about Plaintiff including Plaintiff's perceived sexual orientation.

11.    Defendant Tate threatened the Plaintiff that he was going to spread false rumors about his perceived sexuality.

12.    Plaintiff endured extreme psychological, emotional, and mental anguish, emotional distress, and physical manifestations of emotional distress as a result of Defendant Tate's bullying, harassment, and threats.

13.    Defendant Tate repeatedly bullied and harassed Plaintiff about his perceived sexual orientation and gender.

14.    Defendant Tate frequently called the Plaintiff "faggot" or "gay boy" or "fag".

15.     Defendant Tate threatened to harm the Plaintiff on multiple occasions. For example, Defendant Tate stated to the Plaintiff, he would "beat [Plaintiff's] ass".

16.     The harassment, bullying and threatening took place for over a year. It took place on a repeated basis during nearly every encounter between Plaintiff and the assailant from approximately November 6, 2021 to March 20, 2023.

17.     The harassing and bullying communications were done verbally in front of other teammates and Craig McVey including but not limited to teammates and Craig McVey witnessing Defendant William Tate make comments about the Plaintiff's perceived sexual orientation and gender.

18.     Craig McVey witnessed a teammate pressure Plaintiff in an attempt to get him to answer whether or not he was gay in February 2023. Craig McVey also witnessed Defendant Tate ridicule Plaintiff on October 15, 2022, calling him "gay" "gay boy" "fagot" and other offensive comments in front of teammates.

19.     In addition, the harassment and bullying communications took place in part in text and group messages where other members of the athletic teams, faculty and staff were recipients and provided the derogatory messages.

20.     In addition, on October 24, 2022, Defendant Tate inappropriately and violently touched Plaintiff on his anus without his consent.

21.     Also on October 24, 2022, Defendant Tate made comments including "be a man", "you're not a real man" and other homophobic and offensive comments which Plaintiff found to be harassing and unwelcome.

22.     Defendant Tate's actions were extreme, outrageous, and extensive.

23.     On another occasion on or about October 14, 2022, Defendant Tate also pleasured himself in Plaintiff's presence while mocking Plaintiff's perceived sexual orientation.

24.     On November 6, 2021, Defendant Tate also followed Plaintiff into the shower and made sexual innuendos despite Plaintiff's repeated requests to be left alone.  This event took place in front of teammates, Thomas Monier and Brain PemPel.

25.     Defendant Tate has sexually harassed Plaintiff.

26.     Defendant Tate has inappropriately touched Plaintiff and sexually assaulted the Plaintiff.

27.     Defendant Tate forced the Plaintiff to engage in homosexual acts against his will and religion.

28.     Defendant Tate has threatened Plaintiff causing psychological harm and mental anguish.

29.     Defendant Tate has attempted to control Plaintiff (by threatening rumors about his sexuality if Plaintiff said anything).

30.     Defendant Tate physically assaulted Plaintiff on multiple occasions.

31.     Defendant Tate spread false rumors about Plaintiff in an attempt to belittle and suppress the Plaintiff.

32.     In February 2022 Defendant Tate pushed Plaintiff down on the ground.  This was witnessed by a close friend of the Plaintiff. Defendant Tate committed these acts after the Plaintiff refused his sexual advances and because Defendant Tate thought the Plaintiff was potentially romantically involved with another individual. During this encounter Defendant Tate began repeatedly stating to the Plaintiff, "I should beat your ass right now."

33.     Defendant Tate repeatedly attempted to control the Plaintiff and continued his controlling behavior in an attempt to suppress the sexual harassment and abuse he was enduring.

34.     Defendant Tate threatened the Plaintiff via text message and refused to return the Plaintiff's property on or around October 15, 2022.

35.     Whenever Defendant Tate thought Plaintiff would expose the way he was treating him, he threatened to spread rumors about the Plaintiff to suppress the Plaintiff from seeking help.

36.     On March 20, 2023, Defendant Tate made statements to the Plaintiff explaining he was glad he had put the Plaintiff through extensive sexual harassment and psychological and emotional trauma.

37.     Plaintiff endured constant harassment and bullying centered in large part about his perceived sexual orientation and gender.

38.    Some of Plaintiff's teammates admit witnessing extensive bullying, harassment, abuse, and issues caused by Defendant Tate.

39.    Defendant Tate repeatedly reminded Plaintiff of false rumors and information he would spread to third parties in the event the Plaintiff reported to teammates or others Defendant Tate's outrageous conduct.

40.    Defendant Tate ensured there were consequences in the event Plaintiff ever spoke about him in a way he did not like. For example, Defendant Tate lashed out at the Plaintiff calling him "gay boy" "fagot" and other offensive names in front of others.

41.    Defendant Tate frequently referred to the Plaintiff as a "pussy" his "bitch" "vagina" "a chick" and other offensive names both to the Plaintiff himself in person, messages, and to third parties.

42.    On or around January 27, 2022 Defendant Tate called the Plaintiff from another Spring Hill College student's phone number after the Plaintiff repeatedly attempted to ignore him and deny his sexual advances.

43.    Defendant William Robert Tate made offensive comments about the Plaintiff in front of others including but not limited to Harrison Weisinger on March 25, 2022. On this date he referred to the Plaintiff as "gay" and made other offensive comments frequently referring to a homosexual.

44.    Defendant Tate's belittled the Plaintiff as part of his ongoing attempt to suppress the Plaintiff from seeking help from the psychological, physical, emotional, pain

and suffering he endured by called him "gay boy" "fagot" "pussy" "his bitch" and other offensive and outrageous slurs with Defendant Tate referring to himself as the Plaintiff's "daddy."

45.    Defendant Tate frequently asked the Plaintiff if he was interested in another male student at Spring Hill College and would appear upset, angry, and question the Plaintiff about his interactions with such male.

46.    Defendant William Robert Tate frequently made comments to the Plaintiff in person and electronically stating certain other individuals were the Plaintiff's "boyfriend" when such was not true. And would act irate if he ever thought the Plaintiff was interested in other individuals.

47.    Defendant William Robert Tate frequently attempted to force the Plaintiff to do what he wanted him to against the instruction of Craig McVey such as running the distance he wanted versus the amount Craig McVey set in place.

48.    Defendant William Robert Tate frequently encouraged the Plaintiff to engage in alcohol and even wanted and encouraged the Plaintiff to smoke cannabis.

49.    Defendant William Robert Tate forced the Plaintiff to engage in homosexual acts against his will.

50.    Defendant William Robert Tate attempted to go over Craig McVey's head and force a break between one of the teams Cross Country and Track & Field seasons by going to Chad LeBlanc, a direct boss of Craig McVey. And attempted to get the Plaintiff

to participate in such and became irate and ridiculed the Plaintiff for not participating in such.

51.     Defendant William Robert Tate frequently used gaslighting tactics and frequently told the Plaintiff it was his fault when he would lash out at him, especially when such occurred in public.

52.     Defendant William Robert Tate frequently hovered over the Plaintiff when he was around other males as if he was jealous and prevented the Plaintiff from peacefully being around others.

53.     Defendant William Robert Tate frequently stalked the Plaintiff. For example, Defendant William Robert Tate frequently appeared many times on an app's list that keeps track of who looks at your Instagram excessively. Defendant William Robert Tate's sent the Plaintiff threatening message such as "easy there Adam Smith" in the Track & Field GroupMe messaging forums.

54.     Adam Smith is a well-known homosexual home builder in Atlanta, Georgia that the Plaintiff follows on social media. Upon information and belief Defendant William Robert Tate stalked the Plaintiff's following list on Instagram and found this information and that the Plaintiff was following this individual and threatened and attempted to intimidate the Plaintiff when he sent said message in team GroupMe messaging forums.

55. Defendant William Robert Tate would frequently block the Plaintiff on social media and by phone and re-add him following the Plaintiff being "good" and doing as he wanted as another tactic of manipulation and control.

56. Following Defendant William Robert Tate first assaulted the Plaintiff in February 2022 the Plaintiff told him he would press charges. And Defendant William Robert Tate responded saying no one would believe him and that he came from a family of means with a lot of money inherited from his grandfather that "lived in Florida" and that he would "get out of it."

57. Some of the bullying and harassment included but was not limited to the following:

(a) In February 2022 William Tate stated "I should beat your ass right now" while attempting to shove Plaintiff to the ground as hard as possible in front of classmate.

(b) In or around October 14, 2022, William Tate pleasured himself in front of Plaintiff in the hotel during a Cross Country Meet while making sexually uncomfortable and mocking comments to Plaintiff.

(c) After Plaintiff stated truthfully that the men's team was not able to watch the women's team because Defendant William Robert Tate forced them to go on their cool down instead, Defendant William Robert Tate became so irate that he began shouting "gay boy" "fagot" and other offensive slurs about the Plaintiff

while also making suggestions that the Plaintiff was in a relationship with another male in front of numerous witnesses.

(d) In February 2023, another teammate made gender-based discriminatory remarks about Plaintiff and pressured Plaintiff on his sexuality in front of Craig McVey in the Outlaw Recreation Center on campus in the Indoor Tennis Facility.

(e) On March 6, 2023, as Plaintiff was eating dinner with his friend Claire Morgan and Thomas Prados in the Cafeteria in the Student Center at Spring Hill College, Defendant Tate came up to their table. Being uncomfortable, Plaintiff respectfully asked Defendant Tate to leave. In response however Defendant Tate shouted, "gay boy" and "faggot."

(f) At the second Track & Field meet at the Montevallo Falcon Classic on March 18, 2023, Defendant Tate continued to harass, mock and ridicule Plaintiff and threw side jabs at Plaintiff in front of others any given opportunity.

(g) On March 20, 2023, Plaintiff was going to Moe's (which is close to campus). Plaintiff parked in the parking lot and got out of his car when Defendant Tate began yelling offensive slurs and remarks to Plaintiff including but not limited to "faggot" "gay" and "gay boy." During this incident Defendant Tate spit at Plaintiff.

(h) On March 20, 2023, during the incident at Moe's, Plaintiff informed William Tate that he was going to report William Tate. William Tate again threatened Plaintiff and when Plaintiff left William Tate mocked him more.

(i) On August 17, 2022, William Tate made slanderous and offensive slurs referring to the Plaintiff as a homosexual. These remarks were made to Claire Morgan in front of the Plaintiff while at Spring Hill College's beach volleyball court.

(j) On October 15, 2022, William Tate shouted, "gay boy" "fagot" and other derogatory and homophobic comments and remarks in relation to the Plaintiff's sexuality while at a Cross Country meet at Berry College.

(k) William Tate made libelous and slanderous comments in GroupMe messaging threads and other group messaging forums on a repeated basis from 2021 – 2023. Some of the statements made by William Tate included: "he's not a man so I didn't expect anything different", "why did u run away and then get to your car and drive away as quickly as possible. Scared of me buddy".

58.    Plaintiff went to Craig McVey about the harassment that he was enduring from Defendant William Robert Tate and another teammate and notified him of the actions as alleged above and, in this Complaint, and Craig McVey and Spring Hill committed discrimination as alleged in this section based on the Plaintiff's race and perceived sexual orientation by not advising the Plaintiff, an African American with a perceived homosexual

orientation of his Title IX rights in order to protect Defendant William Robert Tate, a White male allowing the Plaintiff to endure such for years.

59.     Craig McVey lightheartedly agreed to monitor the harassment and bullying. However, in reality, Craig McVey refused to enforce any restrictions protecting Plaintiff (including but not limited to restricting Defendant Tate from Plaintiff), refused to investigate, and engaged in actions which forced the Plaintiff to be in the presence of and even alone with William Tate.

60.     In fact, Craig McVey witnessed Plaintiff being bullied and harassed about his sexuality in February 2023, but did nothing in response.

61.     In addition, Craig McVey witnessed Defendant Tate ridicule Plaintiff on October 15, 2022 calling him "gay" "gay boy" "fagot" and other offensive comments in front of teammates.

62.     Defendant McVey did nothing when witnessing the harassment and bullying to protect Plaintiff, did not impose any restrictions or punishment on the teammates engaging in this misconduct, and failed to advise the Plaintiff of his right to make a Title IX Complaint.

63.     Craig McVey failed to take any action or advise the Plaintiff of his rights under Spring Hill's Title IX Policy when Plaintiff reported the extensive harassment and bullying.

64. Craig McVey failed to report the harassment and bullying to the Title IX Coordinator when the Plaintiff reported the extensive harassment and bullying.

65. Craig McVey further acknowledged witnessing the harassment and bullying.

66. Craig McVey rather than protecting Plaintiff allowed the harassment and bullying to continue.

67. Craig McVey failed to detail to the Plaintiff his rights under Title IX when the Plaintiff reported extensive sexually charged harassment and bullying on October 25, 2022. Craig McVey also failed to make a report to the Title IX Coordinator.

68. In addition, after Plaintiff complained of the harassment and bullying and Craig McVey witnessing the harassment and bullying Craig McVey suspended Plaintiff from all team activities improperly and based on an "interim decision" in violation of Spring Hill's own Student-Athlete Handbook when the Handbook required a finding of a violation. Spring Hill acted in a discriminatory manner based on race, gender, and perceived sexual orientation by refusing to investigate the matter, ignoring the known harassment and bullying, and automatically taking the word of Defendant William Robert Tate, a White Male, and suspended the Plaintiff, an African American improperly and in violation of the Student-Athlete Handbook.

69. Title IX Coordinator / Vice President of Culture and Community / Associate Vice President Dr. Vannee Cao-Nguyen even questioned the legitimacy of the Plaintiff being suspended based on an "interim decision" when the Student Athlete Handbook

requires a suspension can only take place after a finding of a violation of the Student Athlete Handbook.

70. On March 5, 2023, while at the Mississippi College Opener Track Meet in front of teammate Claire Morgan, Craig McVey ridiculed Plaintiff calling him "entitled" among other negative comments.

71. To defend his action, on March 20, 2023 Craig McVey alleged the suspension was because William Tate (falsely) claimed Plaintiff physically hit him. However, the Plaintiff did not hit William Tate on March 20, 2023.

72. On March 20, 2023, despite the fact William Tate spit on Plaintiff, Plaintiff did not strike William Tate and avoided a potential altercation by leaving the situation.

73. On March 20, 2023, during the encounter between the Plaintiff and Defendant William Robert Tate as detailed in this Complaint Defendant William Robert Tate smelled like alcohol.

74. Defendant Spring Hill was aware that the Plaintiff was more credible than Defendant William Robert Tate following Defendant William Robert Tate's false report on March 20, 2023, that the Plaintiff struck him across the face.

75. For example, on March 20, 2023, during the encounter between the Plaintiff and Defendant William Robert Tate as detailed in this Complaint Defendant William Robert Tate was not able to identify what the Plaintiff was wearing to law enforcement during such encounter minutes after it occurred.

76.     Conduct Officer Nathan McQuinn had the police report which clearly articulated Defendant William Robert Tate was not able to identify what the Plaintiff was wearing and when Conduct Officer Nathan McQuinn asked the Plaintiff what Defendant William Robert Tate was wearing on March 29, 2023 he was able to identify such immediately.

77.     Despite this, Defendant Spring Hill unlawfully and inappropriately suspended the Plaintiff from athletic teams based on an "interim decision" which was in violation of their own Student-Athlete Handbook which required a finding of a violation to warrant a suspension.

78.     On October 25, 2022, following William Tate inappropriately touching the Plaintiff, Defendant William Robert Tate actually mocked and taunted the Plaintiff for leaving asking Plaintiff if he feared him.

79.     Moreover, on March 20, 2023, William Tate made false allegations against the Plaintiff stating the Plaintiff struck him across the face in response to Plaintiff telling William Tate he was reporting him again for extensive sexual harassment and bullying.

80.     Craig McVey and the Athletic Department, including Compliance Officer Chad LeBlanc and Athletic Director Joe Niland never investigated the falsely alleged incident reported by William Tate on March 20, 2023, in which William Tate stated the Plaintiff struck him across the face.

81.     Had Spring Hill and the Athletic Department staff properly investigated Defendant William Tate's false report made on March 20, 2023, they would have confirmed through independent witnesses and the Plaintiff that Plaintiff never touched William Tate and that the remarks made by William Tate were falsely done to protect himself.

82.     Rather than investigate, Spring Hill and the Athletic Department led by Craig McVey suspended Plaintiff.

83.     The suspension was retaliatory for Plaintiff reporting the harassment and bullying.

84.     In addition to suspending Plaintiff, Craig McVey instructed all members of the team to leave Plaintiff in complete isolation.

85.     In addition to suspending Plaintiff, Craig McVey instructed members of the team to not communicate with the Plaintiff.

86.     In addition to suspending Plaintiff, Craig McVey instructed members of the team to not comfort the Plaintiff.

87.     Craig McVey suggested in communications to the team that Plaintiff was being investigated for assault.

88.     Craig McVey implied guilt on behalf of the Plaintiff to the team and Claire Morgan, when the Plaintiff had *not* been found in violation of any Code of Conduct rules, therefore, placing the Plaintiff in a false light.

89.     When suspending the Plaintiff, Craig McVey ordered Plaintiff to be removed from all activities and communications.

90.     Spring Hill acknowledged through written communication to the Plaintiff they did not control the GroupMe messaging threads many members of the team were in together.

91.     However, Craig McVey ordered Claire Morgan remove Plaintiff from all such GroupMe messaging threads when Craig McVey unlawfully, improperly, and retaliatorily suspended Plaintiff.

92.     When Craig McVey ordered Claire Morgan remove Plaintiff from all GroupMe messaging threads, Craig McVey was aware through previous conversations with the Plaintiff that there was evidence of Defendant William Robert Tate and other teammates harassing and bullying the Plaintiff in messaging threads.

93.     On approximately March 21, 2023, Plaintiff sent via email to Craig McVey, Chad LeBlanc, and Joe Niland proof of messages received from both Defendant William Robert Tate and other teammates. Craig McVey failed to address such messages in his response email to the Plaintiff and Chad LeBlanc and Joe Niland failed to respond to such email which clearly provided evidence of some of the extensive sexual harassment and bullying the Plaintiff was enduring in reference to his gender. These messages also violated Spring Hill's Title IX Policy and Spring Hill's Student-Athlete Handbook and the Bias – Based Harassment provisions of such Handbooks.

94. Craig McVey and the Athletic Department ordered the Plaintiff not attend track meets, practices and other team activities and did not provide him any workouts.

95. On March 20, 2023, Craig McVey also immediately stated to Plaintiff to not communicate with any individuals on the team or William Tate about his improper suspension or the events surrounding his improper suspension. Craig McVey's action herein clearly violated Spring Hill College's Freedom of Speech and Expression Policy.

96. The same day Craig McVey improperly suspended the Plaintiff he also messaged Plaintiff's friend Claire Morgan and stated for her to not reach out to Plaintiff and that Plaintiff would be looking for "moral support" "but not on this one" and that she was not to discuss the matter with Plaintiff at all.

97. In a text message to female athlete Claire Morgan, Craig McVey specifically stated, "I know it might be hard but do not discuss with -----, he is going to be looking for moral support but not on this one."

98. In the events above Plaintiff, an African American with a perceived homosexuality, endured harsher treatment from Craig McVey than a white heterosexual male when Plaintiff was improperly suspended due to his reports of sexual harassment and bullying and due to racial discrimination.

99. Upon information and belief in August 2023, Dr. Vannee Cao-Nguyen falsely stated to the Plaintiff she had not heard back from William Robert Tate in response to the Plaintiff's Title IX Complaint, however in the Notice of Appeal Findings Document

provided to the Plaintiff it states Defendant William Robert Tate emailed a response to the filing of a Notice of Appeal by the Plaintiff to Dr. Vannee Cao-Nguyen when the Plaintiff appealed Defendant Spring Hill closing his Title IX Complaint prior to it being completely investigated.

100.   During the Plaintiff's meeting with Title IX Coordinator Kevin Abel; Kevin Abel told him he would ensure the Plaintiff's Title IX Complaint was investigated completely, however, such did not occur due to the intentional and retaliatory acts of Spring Hill.

101.   Defendant Spring Hill intentionally delayed the initiation of the Plaintiff's Title IX Complaint to preclude him of his rights to a complete Title IX Investigation.

102.   According to an audio recording of the Plaintiff's meeting with Then Title IX Coordinator Kevin Abel upon information and belief Then Title IX Coordinator Kevin Abel had not even read the Plaintiff's Title IX Complaint prior to their in-person meeting on March 29, 2023.

103.   Craig McVey's treatment of Plaintiff when the Plaintiff was improperly suspended is in stark contrast with how he treated a white heterosexual male when he was suspended from the team for committing multiple felonies and such was due to race and perceived sexual orientation.

104.   On or around March 9, 2022, a white teammate was caught on camera vandalizing classrooms at St. Paul's Episcopal School (a nearby private school less than a

mile away who's track Spring Hill College Track Athletes practiced on). He was charged with multiple felonies on or around March 9, 2023 and had to pay damages to St. Paul's and the court ordered community service and good behavior.

105. Following the white teammate's arrest and suspension Craig McVey held a meeting with the entire team around March 9, 2022, in which Craig McVey supported the white teammate and explained to the team why they should morally support him, and that they should "lift him up" and "most of us wouldn't be able to handle being in jail" despite the white teammate's arrest for multiple felonies.

106. Following the white teammate's arrest and suspension the white teammate was still allowed to attend team events, remain in team communications and practice while suspended.

107. Following the white teammate's arrest and suspension Craig McVey encouraged teammates to provide white teammate's moral support while he was suspended.

108. Following his arrest and suspension, Craig McVey allowed the white teammate to remain in all team communications and did not order he be removed from any GroupMe messaging threads and allowed him to practice with the team and provided him workouts to do on his own.

109. Likewise, on April 9, 2023, the same white teammate was charged with felony DUI.

110.  Despite this arrest on April 9, 2023, the white teammate was permitted to compete in the SIAC Outdoor Track & Field Championship.

111.  The white teammate was facing felony charges on March 9, 2023 yet he continued to enjoy full status and benefits of being a student-athlete which the Student Athlete Handbook prohibits.

112.  In contrast, following the alleged encounter with William Tate on March 20, 2023, and the Plaintiff's improper suspension, where there was no evidence of any wrongdoing on the part of the Plaintiff, Craig McVey forced Plaintiff into isolation, told his teammates to leave him completely alone, to have no contact with him, to not comfort him, and to not support him.

113.  Plaintiff denied any wrongdoing and denied ever hitting William Tate following the false report William Tate made on March 20, 2023 that the Plaintiff struck him across the face.

114.  Spring Hill had no evidence against Plaintiff of wrongdoing when he was improperly suspended on March 20, 2023.

115.  While facing felony charges a white teammate was able to run and was only suspended for approximately 20 days when the athletic student handbook states, "A student-athlete who is charged with a felony will not be allowed to represent the College in game competition until the matter has been resolved in court and all conditions for reinstatement have been met. A student athlete who is charged with a misdemeanor will

have his/her case reviewed by the Director of Athletics pending the outcome by legal authorities. Disciplinary action may be invoked by the department of athletics."

116. Spring Hill College improperly suspended Plaintiff in violation of the Student-Athlete Handbook by suspending him on an "interim decision" when the Handbook requires a finding of a violation while allowing a white teammate to compete and represent the college while facing felony charges which the Student-Athlete Handbook *prohibits*.

117. A white Sprint Hill teammate was facing felony charges on or around March 9, 2023, and suspended when he was able to compete, remain in team communications, receive support from Craig McVey, the Athletic Department, and teammates.

118. Defendant Spring Hill further punished Plaintiff for vocalizing the harassment and bullying he was enduring by William Tate and by refusing to provide Plaintiff the promised increase in his scholarship.

119. Craig McVey did not isolate or restrict conversation with or about white teammate's suspension unlike what he did to the Plaintiff when the Plaintiff was unlawfully and improperly suspended.

120. And furthermore, shortly after a white teammate was suspended the white teammate was allowed to come to a track meet at the University of South Alabama in which he apologized to the team and was offered moral support and words of encouragement from Craig McVey and teammates.

121.  Moreover, on April 9, 2023, a white teammate was charged with felony DUI.

122.  Despite this arrest on April 9, 2023, the white teammate was permitted to compete in the SIAC Outdoor Track & Field Championship.

123.  A white teammate was facing felony charges approximately March 9, 2022, yet he was able to compete.

124.  A white teammate was facing felony charges approximately March 9, 2022, yet he was able to remain in team communications while suspended.

125.  A white teammate was facing felony charges approximately March 9, 2022, yet he was able to receive support from Craig McVey and the Athletic Department and teammates while suspended.

126.  A white teammate was facing felony charges on approximately March 9, 2022, yet he was able to compete while he should have been suspended.

127.  A white teammate was facing felony charges on approximately March 9, 2023, yet he was able to receive support from Craig McVey and the Athletic Department and teammates while suspended.

128.  However, in contrast, Craig McVey did not allow the Plaintiff to receive the same treatment as the white teammate when the white teammate was suspended given the Plaintiff was not permitted to attend a track meet like the white teammate who was able to, and Craig McVey instructed teammates to not support the Plaintiff.

129. Craig McVey specifically instructed teammates of the Plaintiff to not support Plaintiff when he was improperly and unlawfully suspended.

130. More harsh treatment was placed on Plaintiff by Craig McVey due to the Plaintiff being an African American male who had a perceived homosexuality.

131. On September 09, 2023, at Chick-Fil-A following the USA Azalea City Classic Cross Country Meet a teammate made a comment in front of Craig McVey insinuating the Plaintiff liked males which Defendant McVey smiled and nodded in the affirmative to in agreement. Such actions establish that Defendant Spring Hill and Defendant McVey treated the Plaintiff differently as contained in this Complaint based on his perceived sexual orientation and based on his perceived sexual preference.

132. None of the benefits received by a white heterosexual male when he was suspended as alleged in this Complaint were received by the Plaintiff, an African American with a perceived homosexual - sexual orientation when he was improperly suspended because of the Plaintiff's race, perceived sexual orientation and in response to the Plaintiff's reports of extensive sexual harassment.

133. Defendant Spring Hill allowed the Plaintiff to endure extensive sexual harassment and bullying due to the Plaintiff's race and perceived sexual orientation, and in retaliation to the Plaintiff's reports of such extensive sexual harassment and bullying. This is shown by Defendant Spring Hill College assisting Defendant William Robert Tate a white male when he falsely accused the Plaintiff of striking him across the face by

suspending the Plaintiff based on and "interim decision" when the Student-Athlete Handbook did not allow such and even violating the Plaintiff, an African American's rights by their own Student-Athlete Handbook. Another example being, Defendant Spring Hill allowed a white heterosexual male to enjoy all the benefits as alleged in this Complaint when he was suspended while not offering the Plaintiff, an African American with a perceived sexual orientation the same benefits when he was improperly suspended.

134. Defendant Spring Hill failed to investigate and share to the Athletic Department Plaintiff's report of Title IX Violations made March 29, 2023 to Then Title IX Coordinator Kevin Abel against William Tate when the student-athlete Handbook requires it.

135. The Student Athlete Handbook specifically provided for disciplinary action and the information previously reported by the Plaintiff was sufficient to warrant disciplinary action against Defendant William Tate. However, no disciplinary action or investigation by the Athletic Department took place.

136. The Student Athlete Handbook provides: "Code of Conduct violations of the College's rules are reported to the Associate Athletic Director for Internal Affairs and Compliance or Director of Athletics. Code of Conduct violations of the Athletic Department's rules are reported to members of Student Affairs staff. Violations of departmental, conference, and NCAA conduct rules are reported to the student-athlete's head coach, Associate Athletic Director for Internal Affairs and Compliance, the Director

of Athletics, and the NCAA, as appropriate. If a student-athlete is found to be in violation of a department, College, conference, or NCAA policy, the penalty imposed depends upon the severity of the offense and may include the following: Ineligibility, Suspension, Dismissal from the squad, Cancellation or change in the student athletes grant-in-aid, Dismissal from the College."

137. William Tate did not face any disciplinary action and were allowed to continue running and did not suffer any consequences or "interim decisions" following Plaintiff's Complaints made March 21, 2023, and March 29, 2022, to Craig McVey, Chad LeBlanc, and Joe Niland and then Title IX Coordinator Kevin Abel on March 29, 2023 showing clear messages which were clear violations of the Student – Athlete Handbook's Bias-Based Harassment Provisions and Spring Hill College's Title IX Policy due to Defendant William Robert Tate being a White Male and because William Tate and the Plaintiff's teammate was a comparable teammate who was a White Heterosexual Male.

138. However, when Defendant William Robert Tate falsely accused the Plaintiff of striking him across the face the Plaintiff was suspended by an "interim decision" due to the Plaintiff being an African American with a perceived homosexuality as explained in this Complaint in violation of Spring Hill's Student-Athlete Handbook which clearly states an individual must be found in violation of the Student-Athlete Handbook to face disciplinary action including suspension and does not allow a suspension based on an "interim decision."

139.   Then Title IX Coordinator Kevin Abel made promises and assurances to Plaintiff on or around March 29, 2023, including but not limited to the imposition of a no contact order against Tate and a white teammate who was also bullying and harassing Plaintiff but never implemented one.

140.   A white teammate was allowed to practice with the team and by himself with workouts provided by Craig McVey during his suspension whereas Plaintiff was kept in isolation and not permitted any participation and not provided any workouts by Craig McVey to do with the team or on his own when he was improperly suspended. Instead of addressing the problem, Craig McVey attempted to remove the Plaintiff from the teams and did not provide the Plaintiff with workouts to do on his own or with the team while suspended because he wanted to permanently remove him from the team following his reports of sexual harassment and bullying and because harsher treatment was placed on the Plaintiff due to his race and perceived sexual orientation.

141. Tate and another teammate violated the student-athlete handbook by committing Bias-Based Harassment against the Plaintiff but were not punished by Defendant McVey or Defendant Spring Hill following Plaintiff showing evidence of such and screenshots of messages he had received due to their race and due to a heterosexual white teammate's race and sexuality in contrast with the Plaintiff's perceived sexual orientation and race.

142.   Spring Hill retaliated against the Plaintiff and committed intentional acts against the Plaintiff as included in this section and the Complaint based on his race, perceived sexual orientation, and in response to his complaints of sexual harassment and racial discrimination.

143.   Spring Hill violated FERPA by not providing Plaintiff access to information requested under FERPA to which he was entitled.

144.   Spring Hill violated FERPA by not even responding to Plaintiff's requests under FERPA within 45 days of such requests as required by FERPA.

145.   The student-athlete Handbook requires the Office of Student Affairs to make known to the Athletic Department the submission of the Complaints the Plaintiff made on March 29, 2023, being a Title IX Complaint to the Title IX Office; however, such did not take place.

146.   William Tate was not suspended on an "interim decision" after the Plaintiff again reported how he was mistreated by William Tate on March 20, 2023, and March 29, 2023, and submitted written evidence showing violations of the Student-Athlete Handbook Bias-Based Harassment provisions and Spring Hill's Title IX Policy.

147.   Defendant Spring Hill improperly suspended the Plaintiff when William Tate falsely accused him of striking him across the face, and he was suspended without so much as a phone call from Craig McVey. Especially considering the Plaintiff was suspended

based on an "interim decision" when the Student Athlete Handbook requires such an action can only occur "after a finding of a violation of the handbook."

148.  Plaintiff was not afforded his due process rights in accordance with the Student Athlete Handbook given Plaintiff was suspended based on an "interim decision" as admitted by Conduct Officer Nathan McQuinn on record when a suspension required a finding of a violation.

149.  Plaintiff should not have been suspended on an "interim decision" without even being questioned or being able to discuss what occurred or being afforded the rights provided to him by Spring Hill's own policies such as the Student-Athlete Handbook. Especially considering Spring Hill policies such as the Student-Athlete Handbook required a finding of a violation to suspend the Plaintiff.

150.  Defendant McVey and Spring Hill automatically believed William Tate, a white male when William Tate falsely stated the Plaintiff struck him across the face. Defendant McVey and Spring Hill believed such due to the Plaintiff's race and perceived sexual orientation.

151.  Defendant McVey and Spring Hill did not punish William Tate, a white male or another teammate who was bullying and harassing Plaintiff who was a white heterosexual male, in any way following the Plaintiff submitting clear messages which were clear violations of the Bias-Based Provisions of the Student-Athlete Handbook, however, they did not mind suspending the Plaintiff, an African American, with a

perceived homosexual sexual orientation based on an "interim decision" when the Student – Athlete Handbook required a finding of a violation.

152.   Defendant Spring Hill and Defendant McVey did not reach out to the Plaintiff prior to suspending the Plaintiff following William Tate alleging the Plaintiff struck him across the face on March 20, 2023.

153.   Plaintiff would have never been suspended *if* the Plaintiff had not been suspended on an *"interim decision"* as acknowledged by Nathan McQuinn on record and provided his due process rights since an action such as suspension **required a finding of a violation.**

154.   The Office of Student Affairs Conduct Officer Nathan McQuinn nor any other individual at Spring Hill College or elsewhere ever found the Plaintiff responsible for any wrongdoing and never found that the Plaintiff struck William Tate across the face.

155.   Moreover, as emails show Dr. Vannee Cao-Nguyen intentionally and falsely stated to the Plaintiff he was removed from the GroupMe messaging thread due to the unwarranted suspension (which took place out of policy) by other athletes even though the Plaintiff was removed from such at the direction of Craig McVey via text message to Claire Morgan.

156.   A white heterosexual male was not removed from GroupMe messaging threads at the direction of Craig McVey when he was suspended on or around March 9, 2022.

157. The intentional removal of Plaintiff from such GroupMe communications and his isolation from other teammates was done at the instruction and demand of Craig McVey because of his race and perceived sexuality and in Retaliation for Plaintiff complaining about William Tate and another teammate sexually harassing and bullying him in part because of his perceived sexual orientation and gender.

158. Defendant Spring Hill later made assertions that they could not dictate who was in the GroupMe communications when the Plaintiff requested William Tate and another teammate who was bullying Plaintiff be removed, however, that was not the case when Plaintiff was improperly suspended and removed from such GroupMe communications at the direction of Craig McVey via text message to Claire Morgan.

159. Defendant Spring Hill also falsely stated the Plaintiff was removed from such GroupMe messaging threads by other athletes; however, it was done at the instruction and demand of Craig McVey via text message to Claire Morgan.

160. Defendant Spring Hill's actions in this Complaint punished Plaintiff and imposed worse treatment on him because he had a different perceived sexual orientation and race.

161. Defendant Spring Hill allowed a white heterosexual male to return to competition sooner than allowed by the Handbook when he was suspended following his felony arrest on or around March 9, 2022.

162. In contrast to the treatment received by the above referenced white heterosexual male, Defendant McVey and Spring Hill refused to allow Plaintiff to return in the shortened time frame causing Plaintiff to miss the remainder of his track season when he was improperly and unlawfully suspended.

163. Plaintiff missed the remainder of the season after being improperly and unlawfully suspended and missed out on an entire season of Track & Field NCAA eligibility that cannot be restored.

164. Defendant Spring Hill's actions punished Plaintiff and imposed worse treatment against him because he had a different perceived sexual orientation and race than the above referenced white heterosexual teammate and a different race than William Tate, a white male and because Plaintiff complained about the harassment and bullying, he endured from Tate and the other teammate.

165. Spring Hill College Code of Conduct states in part in relation to Conduct Violations on Page 69 that, "Proceedings conducted pursuant to this Code shall be fair and expeditious. Except where expressly adopted by this Code, the procedures of criminal and civil courts shall not govern disciplinary proceedings. In these proceedings, formal rules of evidence shall not be applicable, nor shall deviations from prescribed procedures invalidate a proceeding or decision unless significant prejudice to an accused student or to the College may result. In any hearing or disciplinary conference, the party bringing the Complaint shall bear the burden of establishing by a consideration of the totality of

evidence that, more likely than not based on the preponderance of evidence, a violation of the code has occurred. The student does not have a right to representation by legal counsel at any non-Title IX hearing. Students who have concurrent criminal charges pending against them are permitted to consult with counsel during their disciplinary hearing, although the role of counsel is limited to consultation only. The complainant in such a case may also be permitted to have legal counsel present at the hearing. Other advisors, such as parents, faculty mentors or other associates of the student, are allowed at the sole discretion of the College. This may be allowed if the College believes it will increase the educational value of the meeting. If allowed, the guest's role will be one of consultation, not of advocacy. The procedures described below are intended to clarify the normal chain of events that follow an alleged violation of the College's Code of Conduct."

166. The Plaintiff was improperly suspended based on an "interim decision" by the Athletic Department and the Code of Conduct process was not "fair nor expeditious" as stated within Spring Hill's Code of Conduct causing Plaintiff to miss the remainder of the season and wait nearly one hundred days to know whether he would be reinstated, which only occurred after he retained counsel.

167. On July 10, 2023, Title IX Coordinator Dr. Vannee Cao-Nguyen acknowledged that an Infliction of Physical Harm should not have been included within the Title IX Investigation commenced by the Plaintiff, yet it was not removed.

168. Also, Defendant Spring Hill failed to prepare a Notice of Investigation for the Title IX Complaint Plaintiff filed on or around March 29, 2023 against the Plaintiff's teammate, despite acknowledging a Complaint was filed.

169. During the Plaintiff's meeting with Title IX Coordinator Kevin Abel, Kevin Abel told Plaintiff he would ensure the Plaintiff's Title IX Complaint was investigated completely; however, this did not occur due to the intentional and retaliatory acts of Spring Hill.

170. Following the Title VI & IX Complaints of the Plaintiff being filed Spring Hill appointed an investigator to investigate the Plaintiff's claims. However, she did not properly investigate the claims. For instance, the Investigator allowed other witnesses to sign the notes taken by her during their interview with them in accordance with the Spring Hill Title IX Policy and during her "investigation" but did not provide the Plaintiff the same opportunity after being provided the relevant policy requiring this and after the Plaintiff made the request citing the Policy.

171. The investigator also failed to provide the Plaintiff with answers as to whether or not certain individuals he requested be interviewed participated in the investigation as witnesses as required in the Spring Hill Title IX Policy and after being provided relevant policy which explained he was entitled to the requested information.

172.   Defendant Spring Hill promised via email and in the Notice of Investigation of the Title IX Investigation that they would provide a "neutral investigator" however the Investigator had previously worked with Spring Hill and/or its current Counsel of Record.

173.   Defendant Spring Hill's conduct was blatant, discriminatory, and deliberately indifferent.

174.   In the circumstances giving rise to the claims of the Plaintiff, a history of student harassment, resulting from deliberate indifference, has been allowed to continue at Defendant Spring Hill for many years.

175.   Plaintiff has an educational contract with Defendant Spring Hill that included agreements and duties to provide adequately for safety, to adequately and in compliance with law, report instances of assault and/or harassment the breach of which caused the damages claimed herein.

176.   At all relevant times, Spring Hill received federal funding for its academic programs and activities and was subject to the requirements of Title IX of the Education Amendments of 1972, 20 U.S.C. 1681(a) (hereinafter "Title IX").

177.   Defendant Spring Hill is responsible for ensuring that its employees are properly trained and supervised to perform their jobs.

178.   Defendant Spring Hill is responsible for the acts and omissions of its employees, agents, part-time student workers, officers, and tenants.

179. Defendant Spring Hill employees failed to adequately investigate the Complaints of Plaintiff concerning sexual harassment and bullying and retaliated against him for making such reports of violations of Title IX and sexual misconduct policies and Title VI.

180. At all times relevant to this Complaint, Defendant Spring Hill failed to protect Plaintiff and others as it negligently, willfully, wantonly, maliciously, and with complete deliberate indifference discharged its duty to provide safety to the students at the school.

181. The inactions of Defendant Spring Hill were deliberately indifferent and the delay in investigating, resolving, and protecting the Plaintiff was clearly unjustified.

182. Defendant Spring Hill also retaliated against the Plaintiff after he reported the sexual harassment and bullying by suspending Plaintiff from all activities.

183. Defendant Spring Hill also retaliated against the Plaintiff after he reported the sexual harassment and bullying by reducing his promised scholarship.

184. Defendant Spring Hill also retaliated against the Plaintiff after he reported the sexual harassment and bullying, he was enduring, by joining in the harassment. For example, Craig McVey called Plaintiff "entitled" in front of teammate(s).

185. Defendant Spring Hill also retaliated against the Plaintiff after he reported the sexual harassment and bullying by being deliberately indifferent to the Complaints of Sexual Harassment submitted by the Plaintiff on multiple dates including but not limited to the Complaints of Sexual Harassment Plaintiff made to Craig McVey on October 25,

2022, and March 20, 2023, and to the then Title IX Coordinator Kevin Abel on March 20, 2023.

186. Defendant Spring Hill also retaliated against the Plaintiff after he reported the sexual harassment and bullying by being deliberately indifferent to the Complaints submitted by the Plaintiff on multiple dates including but not limited to the Title IX Complaint the Plaintiff made to Then Title IX Coordinator Kevin Abel on March 29, 2023.

187. Defendant Spring Hill also retaliated against the Plaintiff after Craig McVey witnessed the Plaintiff being sexually harassed on multiple occasions by being deliberately indifferent and not taking any action.

188. Defendant Spring Hill was deliberately indifferent in such a severe way that it effectively barred the Plaintiff access to educational opportunities and benefits.

189. Title IX and Spring Hill's own policies requires an educational institution to act when it has control over the harasser and the place of harassment.

190. In this Complaint the acts involved bullying and harassment by a student athlete that took place on and off campus and during school sponsored events.

191. Defendant Spring Hill had control over William Tate and other teammates by virtue of their status as student-athletes, and it had control over the campus and school sponsored activities.

192. Under Spring Hill's governing policies, Title IX complainants such as Plaintiff have rights including to be informed of available options in making a report and

to have "equal access to educational programs and activities and interim protective measures as appropriate, to receive information regarding support resources, to request from the Title IX Coordinator that the school enforce a no contact directive, and to do a thorough and impartial investigation."

193. In violation of its own policy and federal guidelines, when Plaintiff reported initially of the harassment and bullying, Defendant Spring Hill and its employees were deliberately indifferent and did nothing. They never informed Plaintiff of his rights, never offered him interim protective measures, never offered him a no contact directive against the Plaintiff's teammate, never investigated or assessed his Complaint after first being informed.

194. Defendant Spring Hill pretended to take action on the Plaintiff's Title IX Complaint filed on or around March 29, 2023, after the Plaintiff retained Counsel and Spring Hill was on notice he had retained Counsel, but instead suppressed the Plaintiff of his rights under its own Title IX Policy as alleged in this Complaint.

195. Then Title IX Coordinator Kevin Abel tried to talk the Plaintiff out of filing a Title IX Complaint during an in-person meeting on March 29, 2023.

196. Plaintiff was entitled to an assessment by the school of whether William Tate and others identified by Plaintiff were responsible for violating Spring Hill's Sexual Misconduct Policy.

197.   Plaintiff was at the least entitled to an "assessment" by the Title IX Office to determine if additional action should be taken to protect the health and safety of the Plaintiff and the campus community.

198.   Plaintiff was not even directed to a Title IX office after making reports to Craig McVey on multiple dates that he was experienced sexual harassment and bullying on a frequent and almost daily basis.

199.   Plaintiff was not directed to the Title IX office after complaining about harassment and bullying to Craig McVey, Chad LeBlanc, Joe Niland via email on March 21, 2023, which included messages showing clear gender-based discriminatory comments.

200.   The Plaintiff was not offered any relief or protection by Spring Hill College following his reports.

201.   William Tate and another teammate continued to harass and bully the Plaintiff and Craig McVey continued to allow it to happen.

202.   Craig McVey later retaliated against the Plaintiff for his Complaints to Craig McVey of harassment and bullying, by unlawfully and improperly suspending him from the Track & Field and Cross-Country teams.

203.   The Plaintiff expressed to Spring Hill that Spring Hill's deliberate indifference to his Complaints of harassment and bullying caused him worry, anxiety, fear, depression, physical injuries, suicidal ideation, and emotional distress.

204. Spring Hill maintains control over its Athletic Department, employees, and students.

205. Spring Hill determines who remains a student, who remains on an athletic team, where students reside, and the safety and well-being of its student body.

206. Spring Hill's refusal to address and assist Plaintiff when he first reported (and thereafter reported) the bullying and harassment was a clear deliberate indifference.

207. Spring Hill allowed William Tate and the other bullying teammate to continue to contact and harass Plaintiff.

208. Plaintiff was diagnosed with anxiety and depression from the bullying and sexual harassment and remains under the care of mental health providers.

209. Plaintiff had trouble sleeping due to the sexual harassment and bullying and such is evident by electronic stored evidence.

210. Plaintiff made plans to end his life due to the sexual harassment and bullying and lack of a response by Defendant Spring Hill including but not limited to making a Last Will & Testament.

211. For months, following his reporting of the harassment and bullying Spring Hill failed to inform Plaintiff of his rights to receive counseling in a timely manner despite his anxiety and depression.

212. Following the Plaintiffs reporting of the harassment and bullying to Spring Hill, Spring Hill failed to assist the Plaintiff in getting counseling and treatment he needed.

213.   Following the Plaintiff's reporting of the harassment and bullying to Spring Hill no one informed him of his rights under Title IX.

214.   Following the Plaintiff reporting to Spring Hill harassment and bullying no one investigated his complaints.

215.   Following the Plaintiff reporting to Spring Hill harassment and bullying no one at Spring Hill assessed whether William Tate or other teammate(s) were a threat to him.

216.   Following the Plaintiff's reporting to Spring Hill harassment and bullying no one at Spring Hill restricted William Tate and another harassing teammate from communicating or contacting the Plaintiff.

217.   Following the Plaintiff reporting to Spring Hill harassment and bullying no one at Spring Hill offered him any of the interim or permanent protective measures required under Title IX.

218.   Following the Plaintiff's reporting to Spring Hill harassment and bullying no one at Spring Hill informed him that he had a right not to be retaliated against for reporting sexual harassment and/or racial discrimination by anyone at Spring Hill.

219.   Following the Plaintiff's reporting to Spring Hill of harassment and bullying no one at Spring Hill followed up with him at any time to ensure he received any mental health or medical care.

220.  Following the Plaintiff reporting to Spring Hill harassment and bullying no one at Spring Hill encouraged him to remain at Spring Hill.

221.  Following the Plaintiff reporting to Spring Hill harassment and bullying no one at Spring Hill assisted him in leaving Spring Hill when it became clear he was not safe and free from harassment and bullying.

222.  Despite Spring Hill's duties to the Plaintiff, Spring Hill punished Plaintiff following his reports to Craig McVey of extensive and repeated sexual harassment and bullying occurring almost daily by suspending him from all athletic activities and by instructing his teammates, friends, and members of the staff to leave him alone.

223.  Spring Hill through Craig McVey instructed all team members to isolate Plaintiff when he was unlawfully and improperly suspended.

224.  When Plaintiff was unlawfully, and improperly suspended Craig McVey placed him in a false light by portraying guilt on behalf of the Plaintiff when he had not been found in violation of anything when he was unlawfully and improperly suspended.

225.  Craig McVey furthered the bullying and harassment engaged in by William Tate and another teammate when the Plaintiff was improperly and unlawfully suspended on March 20, 2023.

226.  As a direct and proximate result of the intentional acts of each of the Defendants as alleged in this Complaint; Plaintiff's fears, anxiety, depression, and physical ailments grew increasingly worse.

227. Plaintiff endured suicidal ideations and remains under psychiatric care.

228. Plaintiff has undergone medical, psychological, and psychiatric help.

229. Plaintiff has ever-increasing fears, anxiety, depression, PTSD, sleeplessness, panic attacks, feelings of worthlessness and hopelessness, loss of motivation, and a severe decline in overall functioning, and it has been determined by mental health providers that the Plaintiff will suffer negative life-long effects, challenges, and trust issues in relationships due to the actions of the Defendants.

230. As an educational institute seeking to educate students and profit from that relationship, Spring Hill owes Plaintiff a duty of reasonable care.

231. Reasonable care is the degree of caution and concern for the safety of students that an ordinarily prudent and rational college may apply in the same circumstances.

232. Sadly, some universities seek to evade the standard of reasonable care they owe students and to their safety rather than adhere to any degree of reasonableness when it comes to the safety of students.

233. More specifically, Spring Hill had a duty to act as a reasonable collegiate educational institute and apply a reasonable degree of care in hiring, training, and supervising employees, and the retention of employees.

234. Spring Hill breached each of its duties herein due to the Plaintiff's race and perceived sexual orientation.

235. Spring Hill had a duty to ensure that faculty that interact with students from the initial reporting of the harassment and bullying throughout the entire Title IX process properly follow all policies.

236. Spring Hill had a duty to apply and enact the school's own policies and procedures.

237. Spring Hill had a duty to train Spring Hill employees about what to do if a student reports sexual harassment, bullying, or harassment based on gender.

238. Spring Hill had a duty to train Spring Hill employees about what to do if another student reports adverse treatment being endured by another student.

239. Spring Hill had a duty to train Spring Hill employees on how to investigate reports of sexual based harassment and bullying and racial discrimination.

240. Spring Hill had a duty to train Spring Hill employees on how to observe distress in students and to obtain health care for students suffering physically and mentally.

241. Finally, Spring Hill possessed superior knowledge of the risks to Plaintiff and had the ability to control its employees (who tolerated the bullying and harassment by student athletes) and its student-athletes (who could have been disciplined under Spring Hill's misconduct policies).

242. Spring Hill had and continues to owe a duty to Plaintiff, as well as other students, outside of the existence of a "special relationship." Plaintiff can establish duties

owed, as well as violations of said duties, which are not dependent on the existence of a special relationship.

243. Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to properly and/or adequately hire, train, and supervise employees and faculty as to proper methods of dealing with reports of sexual abuse, bullying and harassment, and racial discrimination.

244. Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to investigate same and accommodate victims in a manner that would permit them without undue hindrance, to complete their higher education.

245. Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to properly and timely report and/or investigate incidents or claims of sexual assault, harassment, bullying, racial discrimination.

246. Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to provide adequate counseling and assistance to victims of sexual assault, harassment, bullying, racial discrimination.

247. Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to adequately monitor and supervise departments, including athletic departments, to ensure compliance with protections and standards for sexual assault, harassment, racial discrimination, and bullying prevention, reporting, and investigation.

248.   Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to discover, develop, and/or implement basic safeguards designed to prevent and/or minimize incidents of sexual assault, bullying and harassment.

249.   Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to investigate and/or monitor persons accused of sexual assault, bullying, harassment, racial discrimination, to ensure additional events and/or harassment of victims did not occur.

250.   Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to adopt and implement adequate safeguards to prevent known sexual harassment, bullying, racial discrimination occurring on campus.

251.   Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to provide adequate staff, with proper training, to counsel and assist victims of sexual assault, bullying, harassment, and racial discrimination.

252.   Spring Hill breached its duties to Plaintiff in multiple ways, including by tolerating sexual assailants on campus despite reports to the highest levels of their identities.

253.   Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to address reports that William Tate and another teammate continued to bully and/or harass the Plaintiff online.

254. Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to address reports that he was continuing to be bullied and/or harassed in person.

255. Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to adopt education programs to promote awareness of bullying, harassment, discrimination, and other illegal activities.

256. Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to adopt and enforce institutional sanctions for sex offenses, harassment, bullying, and racial discrimination both forcible and non-forcible.

257. Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to adopt and enforce procedures students should follow if they become sexual assault, bullying, harassment, racial discrimination victims, including who should be contacted, the importance of retaining evidence, and to whom the offense should be reported.

258. Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to inform victims that they have the option of reporting the sexual assault, harassment, bullying, racial discrimination to law enforcement authorities and that they will receive assistance from the institution in the process.

259. Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to notify sexual assault, harassment, bullying, racial discrimination victims about

counseling services and options for changing academic schedules and living arrangements in the wake of a sexual assault, harassment, and bullying.

260. Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to put in place an accurate routine procedure to notify the campus community about serious criminal activity that is likely to be a threat to students and employees.

261. Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to adopt and periodically review procedures to make sure they are adequate to address Complaints of sexual misconduct.

262. Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to develop a clear policy about which kinds of sexual offenses will be handled internally, and which will be turned over to the criminal authorities.

263. Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to make the goal of protecting the campus community from sexual assaults, harassment, racial discrimination an integral part of the institution's day-to-day mission.

264. Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to implement antiretaliation policies for reporting, and/or failed to act on those policies when evidence of retaliatory conduct was uncovered.

265. Spring Hill breached its duties to Plaintiff in multiple ways, including by failing to notify the Plaintiff and distribute to the Plaintiff its own Title IX, VI Policies, antidiscrimination policies, antiretaliation policies, antiharassment policies, and make

Plaintiff and other students aware of the Title IX, VI process or that they could initiate a Title IX, VI Investigation or file a formal Complaint or report because of retaliation, discrimination, harassment.

266.   Despite the reporting of incidents of extensive harassment and bullying by the Plaintiff, Spring Hill deliberately, willfully, recklessly, and consciously decided not to investigate the matter.

267.   Spring Hill also willfully, maliciously, and acted in bad faith by failing to discharge duties and failing to follow Spring Hill's Title IX Sex Discrimination, Sexual Harassment, and Sexual Violence Policy and other policies such as anti-racial discrimination policies.

268.   Spring Hill never issued nor enforced a "No-Contact Order" as promised to the Plaintiff.

269.   Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to: Rescheduling of exams and assignments.

270.   Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to alternative course completion options to the Plaintiff.

271.   Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to providing a modification or change in class schedule, including the ability to drop a course without penalty or to transfer as promised.

272. Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to a change in work schedule or job assignment.

273. Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to a change in student's campus housing.

274. Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to a leave of absence.

275. Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to assistance from support staff in completing housing relocation.

276. Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to academic support services, such as tutoring; providing escort services; providing increased security and monitoring of certain areas of the campus or similar measures.

277. Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to referral to counseling services both on and off campus.

278. Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to resources on and off campus for trained advocates who can provide crisis response.

279. Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to assistance in identifying advocacy support to obtain orders of protection within the criminal justice system.

280. Despite having a policy that encourages reporting of all crimes, harassment and bullying, Spring Hill did not provide Plaintiff any support and did not attempt to investigate his allegations when the sexually charged bullying and harassment was reported.

281. Spring Hill's Title IX policy suggests appropriate support will be offered in every case of sexual harassment and sexually charged bullying; however, Spring Hill offered no support in this one.

282. Plaintiff's claims of sexual harassment and bullying were not investigated, he was not provided needed mental health treatment, he was not protected, and he was not provided with any relief.

283. In fact, after Plaintiff notified Spring Hill of the harassment and bullying, he continued to be harassed – all of which would have been prevented.

284. Moreover, Plaintiff's mental health deteriorated further given the lack of response and investigation by Spring Hill.

285. None of the benefits provided to a white heterosexual male when he was suspended were provided to the Plaintiff, an African American male with a perceived homosexuality when he was unlawfully suspended given such suspension was unlawful,

and discriminatory based on perceived sexual orientation and race, and in Retaliation for the Plaintiff reporting sexual harassment and Craig McVey witnessing the harassment and bullying, and given such suspension was improper and done based on an "interim decision" by the Athletic Department when Spring Hill's Athletic Handbook mandated an individual may only be suspended after being found in violation of such handbook.

286. The above breaches of Defendant Spring Hill's duties of reasonable care, which flow to all students including Plaintiff, were the proximate cause of substantial injury and damage to Plaintiff, as more specifically described herein.

287. These damages include, without limitation, great pain of body and mind, physical injury, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life, which Plaintiff has suffered and continues to suffer.

### IIII. Causes of Action

### COUNT I: VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C.1681(a) et seq. (against Defendant Spring Hill College)

288. Plaintiff realleges paragraphs 9, 57-287 of this Complaint as if alleged herein.

289. Defendant Spring Hill witnessed through employees and/or was on notice or aware of the actions of Defendant Tate and other students as alleged in the Factual Allegations of this Complaint.

290.  At all times relevant hereto, Spring Hill received federal funding for its educational programs, and was subject to the provisions of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), et. seq., which guaranteed Plaintiff equal access without discrimination to all educational programs at Spring Hill.

291.  Plaintiff endured extensive sexually charged bullying and harassment from Defendant William Robert Tate and/or another teammate almost every encounter with such individuals being based on his perceived sexual orientation and gender in the context of an educational program or activity that receives federal financial assistance.

292.  Defendant Spring Hill was on notice of the extensive harassment and bullying being endured by the Plaintiff based on the Plaintiff's perceived sexual orientation and gender and including but not limited to the matters alleged in this Complaint.

293.  Defendant Spring Hill did nothing following reports made by the Plaintiff on October 25, 2022, and multiple other dates of the sexual harassment, and did not explain to him he could file a Complaint under Title IX with the Title IX Coordinator or advise him of any of his rights under Title IX. Defendant Spring Hill failed to properly address the matter causing the Plaintiff to have to endure the harassment, bullying, anxiety, worrying, and other damages for years. Defendant Spring Hill failed to notify Plaintiff of his right to file a Title IX Complaint and failed to report the harassment to the Title IX Coordinator themselves causing Plaintiff to endure the harassment much longer than he would have had the harassment been reported.

294. Instead of assisting the Plaintiff, Defendant Spring Hill mistreated the Plaintiff, retaliated against him, and offered no benefits their own policies provided him the right to as alleged in this Complaint.

295. Defendant Spring Hill failed to provide Plaintiff any relief required as explained in this Complaint following Plaintiff placing Defendant Spring Hill on notice, he was enduring extensive sexually charged bullying and harassment.

296. Defendant Spring Hill failed to take action and report the matter to the Title IX Coordinator or advise the Plaintiff of his rights under Title IX after reports by the Plaintiff.

297. Craig McVey witnessed some of the harassment and bullying Plaintiff endured. For example, Craig McVey witnessed a white heterosexual teammate pressure him repeatedly about his perceived sexual orientation February 2023 even after the Plaintiff had asked him to stop. Instead of intervening, Craig McVey gulped at the Plaintiff and looked the other way. A month after this encounter the Plaintiff was unlawfully suspended from the team in retaliation.

298. Spring Hill's actions and failures to act created an environment in which such misconduct was tolerated, thus encouraging continued and repeated intimidation, sexual harassment, gender-based harassment, thus proximately creating injury to the Plaintiff.

299. The harassment and discrimination were sufficiently severe and pervasive to create an abusive and sexually hostile educational environment for Plaintiff, sufficient that

he was forced to leave the campus, and was ultimately a cause of his mental anguish, physical harm, emotional distress, loss of sleep, worry, anxiety, mental illness, and other damages.

300.   Spring Hill failed to include Defendant McVey within a Title IX Investigation for Retaliation after the Plaintiff reported sexual harassment to Craig McVey as required by Title IX and Spring Hill's own Title IX Policy after Plaintiff stated to Defendant Spring Hill via email and in conversations to the Title IX Coordinator that Defendant McVey had retaliated against him following his Complaints to Craig McVey of sexually charged bullying and harassment and that the Plaintiff wanted such investigated within a Title IX Investigation. This caused the Plaintiff to not be able to have a hearing on the matter as Spring Hill's Title IX Policy required and precluded the Plaintiff of all his rights under Title IX and Spring Hill's Policy such as and including but not limited to a full investigative report which the Plaintiff would have had access to following an investigation and a hearing by decisionmakers on the matter following the investigation.

301.   Spring Hill was deliberately indifferent to a culture of sexual hostility and violence, bullying and harassment instituting and/or mis-administering the policies cited herein, including without limitation:  Violating its own policies set forth under Title IX, anti-harassment policies, and anti-discrimination policies.

302.   Spring Hill's sexually hostile policies and practices were a proximate cause of Plaintiff being subjected to multiple semesters of sexual harassment and bullying,

gender and racial discrimination in the form of (1) a hostile educational environment, (2) ongoing pain, mental anguish, and enduring of constant bullying, threats and sexually charged harassment; (3) then unfairly and in Retaliation for complaining about the harassment and bullying being forced off the athletic team and to isolate, and ultimately forcing Plaintiff to leave campus.

303.   The mental pain and anguish that Plaintiff suffered was so severe, pervasive, and objectively offensive that it effectively barred his access to educational opportunities and benefits.

304.   Further, Spring Hill unfairly and in retaliation to Plaintiff exercising his rights (reporting the bullying and harassment) evicted Plaintiff from the athletic teams he was a part of. Plaintiff endured treatment by Craig McVey where Plaintiff was intentionally forced into isolation.

305.   As a direct and proximate result of Spring Hill's creation of and deliberate indifference to its sexually hostile educational environment, Plaintiff suffered damages and injuries for which Spring Hill is liable.

306.   By its actions as described above, Spring Hill engaged in intentional discrimination in violation of Title IX.

307.   Plaintiff further alleges that Spring Hill intentionally discriminated against him when Craig McVey refused to provide the required assistance to allow Plaintiff to obtain available assistance.

308.  Plaintiff further alleges that Spring Hill intentionally discriminated against Plaintiff when Craig McVey refused to provide the required assistance to ensure he would be free from exposure, bullying and harassment by William Tate and another teammate.

309.  The inaction of Defendant Spring Hill and Defendant McVey resulted in Plaintiff having to endure extensive sexually charged bullying, sexually charged harassment, displays of aggressive physical assault, mental manipulation, depression, anxiety, and suicidal ideations for years.

310.  Ultimately the events and omissions above caused Plaintiff to suffer grave mental illness requiring continued care.

311.  Spring Hill breached its duties to Plaintiff in multiple ways, including but not limited to by: failing to properly and/or adequately hire, train, and supervise employees and faculty as to proper methods of dealing with reports of sexual abuse, harassment and bullying and investigate same and accommodate victims in a manner that would permit them without undue hindrance, to complete their higher education and to participate in athletic activities;

312.  Spring Hill breached its duties to Plaintiff in multiple ways, including but not limited to by failing to properly and timely report incidents or claims of sexual assault, harassment, and bullying.

313.   Spring Hill breached its duties to Plaintiff in multiple ways, including but not limited to by failing to provide adequate counseling and assistance to victims of sexual assault, harassment, and bullying.

314.   Spring Hill breached its duties to Plaintiff in multiple ways, including but not limited to by failing to adequately monitor and supervise departments, including athletic departments, to ensure compliance with protections and standards for sexual assault, harassment and bullying prevention, reporting, and investigation.

315.   Spring Hill breached its duties to Plaintiff in multiple ways, including but not limited to by failing to discover, develop, and/or implement basic safeguards designed to prevent and/or minimize incidents of sexual assault, harassment, and bullying.

316.   Spring Hill breached its duties to Plaintiff in multiple ways, including but not limited to by failing to investigate and/or monitor persons accused of sexual assault, harassment and bullying to ensure additional events and/or harassment of victims did not occur.

317.   Spring Hill breached its duties to Plaintiff in multiple ways, including but not limited to by failing to adopt and implement adequate safeguards to prevent known sexual harassment occurring on campus.

318.   Spring Hill breached its duties to Plaintiff in multiple ways, including but not limited to by failing to provide adequate staff, with proper training, to counsel and assist victims of sexual assault, bullying and harassment.

319.   Spring Hill breached its duties to Plaintiff in multiple ways, including but not limited to by tolerating sexual assailants on campus despite reports to the highest levels of their identities; and despite reports that they continue to bully and/or harass their victims online and/or in person.

320.   Spring Hill breached its duties to Plaintiff in multiple ways, including but not limited to by failing to adopt education programs to promote awareness of assault, harassment, and bullying.

321.   Spring Hill breached its duties to Plaintiff in multiple ways, including but not limited to by failing to adopt and enforce institutional sanctions for sex offenses, both forcible and non-forcible.

322.   Spring Hill breached its duties to Plaintiff in multiple ways, including but not limited to by failing to adopt and enforce procedures students should follow if they become sexual assault victims, victims of bullying and victims of harassment, including who should be contacted, the importance of retaining evidence, and to whom the offense should be reported.

323.   Spring Hill breached its duties to Plaintiff in multiple ways, including but not limited to by failing to inform victims that they have the option of reporting the sexual assault, harassment and bullying to law enforcement authorities and that they will receive assistance from the institution in the process.

324.    Spring Hill breached its duties to Plaintiff in multiple ways, including but not limited to by failing to notify sexual assault, harassment and bullying victims about counseling services and options for changing academic schedules and living arrangements in the wake of a sexual assault, bullying and/or harassment.

325.    Spring Hill breached its duties to Plaintiff in multiple ways, including but not limited to by failing to put in place an accurate routine procedure to notify the campus community about serious criminal activity that is likely to be a threat to students and employees.

326.    Spring Hill breached its duties to Plaintiff in multiple ways, including but not limited to by failing to adopt and periodically review procedures to make sure they are adequate to address Complaints of sexual misconduct, bullying and sexual harassment.

327.    Spring Hill breached its duties to Plaintiff in multiple ways, including but not limited to by failing to develop a clear policy about which kinds of sexual offenses will be handled internally, and which will be turned over to the criminal authorities.

328.    Spring Hill breached its duties to Plaintiff in multiple ways, including but not limited to by failing to make the goal of protecting the campus community from sexual assaults and harassment an integral part of the institution's day-to-day mission.

329.    Spring Hill breached its duties to Plaintiff in multiple ways, including but not limited to failing to implement antiretaliation policies for reporting, and/or failed to act on those policies when evidence of retaliatory conduct was uncovered.

330.  Despite the reporting of harassment and bullying by the Plaintiff, Spring Hill deliberately, willfully, recklessly, and consciously decided not to investigate the matter.

331.  Spring Hill also willfully, maliciously, and acted in bad faith by failing to discharge duties and failing to follow Spring Hill's Title IX Sex Discrimination, Sexual Harassment, and Sexual Violence Policy among other policies.

332.  Spring Hill never issued a legitimate "No-Contact Order" following the Plaintiff's Title IX Complaint as promised by then Title IX Coordinator Kevin Abel on record and never enforced any alleged restriction even after acknowledging a Complaint had been sufficiently submitted.

333.  Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to: Rescheduling of exams and assignments.

334.  Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to: Providing alternative course completion options.

335.  Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to modification or change in class schedule.

336.  Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to the ability to drop a course without penalty or to transfer.

337. Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to change in work schedule or job assignment.

338. Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to change in student's campus housing.

339. Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to leaves of absence.

340. Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to assistance from Spring Hill support staff in completing housing relocation.

341. Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to limiting William Tate and others who were involved with bullying and harassing Plaintiff access to certain Spring Hill facilities or activities pending resolution of the matter.

342. Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to: Voluntary leave of absence.

343. Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to providing academic support services, such as tutoring and providing escort services.

344. Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to providing increased security and monitoring of certain areas of the campus or similar measures.

345. Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to providing referral to counseling services both on and off campus.

346. Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to failed to provide Plaintiff resources on and off campus for trained advocates who can provide crisis response.

347. Spring Hill never provided Plaintiff any relief allowed under Spring Hill's Title IX policy including but not limited to failed to aid in identifying advocacy support to obtain orders of protection within the criminal justice system.

348. Despite having a policy that Spring Hill encourages reporting of all crimes, bullying, discrimination and harassment, Spring Hill did not provide Plaintiff any support and did not attempt to investigate his allegations when the bullying and harassment based on his perceived sexual orientation and gender was reported.

349. Spring Hill's Title IX policy states that appropriate support will be offered in every case; however, Spring Hill offered no support in this one.

350. Plaintiff's claims of harassment and bullying were not investigated.

351.   Plaintiff was not provided needed mental health treatment following his claims of harassment and bullying.

352.   Plaintiff was not protected following his claims of sexual harassment and bullying.

353.   Plaintiff was not provided with any relief following his claims of harassment and bullying.

354.   Then Title IX Coordinator Kevin Abel even tried to talk the Plaintiff out of filing a Title IX Complaint in an in-person meeting on March 29, 2023.

355.   Then Title IX Coordinator Kevin Abel even continued to pressure the Plaintiff to "think about it" even after the Plaintiff had clearly stated he was ready to initiate the Title IX Complaint in his person meeting with Then Title IX Coordinator Kevin on March 29, 2023.

356.   In fact, after Plaintiff notified Spring Hill of the bullying and harassment, William Tate and a teammate continued to harass the Plaintiff, assaulted Plaintiff, and continued to bully Plaintiff.

357.   After Plaintiff notified Spring Hill of the bullying and harassment and after Craig McVey witnessed some of the harassment and bullying, Defendant Spring Hill evicted Plaintiff from the team and reduced his promised increase in athletic scholarship. For example, Craig McVey witnessed a teammate pressure the Plaintiff repeatedly asking him what his sexuality was February 2023.

358. After Plaintiff notified Spring Hill of the bullying and harassment Plaintiff's mental health deteriorated further given the lack of response and investigation by Spring Hill and Spring Hill's Retaliation.

359. At all times relevant to this Complaint, Spring Hill had actual notice of Plaintiff's Title IX Complaint and failed to respond adequately and reasonably, in violation of Title IX and the Spring Hill Title IX policies, subjecting Plaintiff to further abuse, bullying, harassment and Retaliation.

360. Under Spring Hill's sexual assault, discrimination and harassment policies and procedures, Spring Hill was required to assess both the Complaint and the danger posed to Plaintiff and the Spring Hill community.

361. Not assessing both the Complaint and the danger posed to Plaintiff and the Spring Hill community was a gross dereliction of Spring Hill's duties and was in deliberate indifference to Plaintiff's rights to receive an education at Spring Hill.

362. Spring Hill's indifference and choice not to investigate or assist Plaintiff following his Complaints to the Athletic Department of sexually charged harassment and bullying on multiple dates including but not limited to on or around October 25, 2022, March 20, 2023, March 29, 2023 resulted in Plaintiff's escalating fear that he would not be safe on campus and led to Plaintiff's suicidal ideation, depression, anxiety, mental anguish, continued harassment, and bullying.

363. Spring Hill's indifference and choice not to investigate or assist Plaintiff following his reports to the Title IX Coordinator of sexually charged harassment and bullying on multiple dates including but not limited to on or around October 25, 2022, March 20, 2023, and March 29, 2023 resulted in Plaintiff's escalating fear that he would not be safe on campus and led to Plaintiff's suicidal ideation, depression, anxiety, mental anguish, continued harassment, and bullying.

364. Defendant Craig McVey was on notice that the Plaintiff was being controlled by Defendant William Robert Tate and that Defendant William Robert Tate was doing this by sexually harassing the Plaintiff as expressed in this Complaint and he failed to inform the Plaintiff of his Title IX rights and take appropriate action.

365. Despite being made aware of the harassment and bullying the Plaintiff was enduring and Defendant Spring Hill and Defendant McVey witnessing it Defendant Spring Hill suspended Plaintiff from the athletic teams in Retaliation for reporting the bullying and harassment.

366. Spring Hill was deliberately indifferent to Plaintiff's Complaints of discrimination, assault, bullying and harassment by William Tate and a teammate.

367. Spring Hill's inaction in response to Plaintiff's reporting, and its failure to support and protect Plaintiff's rights under Title IX were clearly unreasonable considering the known circumstances.

368.   Spring Hill and Craig McVey refused to ask questions, complete a report, investigate Plaintiff's Complaint, failed to protect Plaintiff, failed to provide Plaintiff any Title IX assistance in connection with the harassment and bullying.

369.   Spring Hill's officers deliberately refused even to enter Plaintiff's Title IX Complaint onto Spring Hill's internal database which records Complaints, until much later and after Plaintiff secured counsel.

370.   Spring Hill's officers deliberately ignored Plaintiff's Complaints.

371.   As explained in this Complaint Spring Hill acted with deliberate indifference in deviating significantly from the statutory standard of care requirements of Title IX outlined in the U.S. Department of Education's guidance letters and from the requirements of its own policies and procedures.

372.   As explained in this Complaint Spring Hill failed to enact and/or disseminate and/or implement proper or adequate procedures to discover, prohibit, or remedy the kind of discrimination, bullying and harassment that Plaintiff suffered.

373.   Spring Hill's failure included, without limitation, non-existent or inadequate customs, policies, or procedures for training staff and faculty in Title IX requirements and their own Title IX policy, including the recognition, reporting, investigation, and correction of unlawful Title IX discrimination and Retaliation such as Plaintiff experienced.

374.  Spring Hill knew or should have known that dangerous consequences could be suffered by individuals, including Plaintiff, by failing to properly train and supervise its employees regarding the requirements of its sexual misconduct, bullying, discrimination, and harassment policies.

375.  Spring Hill's failure to act amounted to deliberate indifference toward the unlawful sexual conduct and retaliatory conduct that had occurred, was occurring, and was likely to continue occurring to Plaintiff.

376.  Spring Hill's failure to follow policies, customs, or practices in failing to train and supervise its employees in proper procedure for responding to Title IX Complaints fairly, equitably, and without Retaliation, were the proximate cause of, and moving force behind, the violation of Plaintiff's rights under Title IX, which led to his suicidal ideations, depression, anxiety, and physical ailment.

377.  Spring Hill deliberately did not investigate the sexual harassment and bullying occurring almost daily after the Plaintiff reported it to Craig McVey on or around October 25, 2022.

378.  Spring Hill deliberately did not investigate the sexual harassment and bullying occurring almost daily and did not take down any information from the Plaintiff.

379.  Spring Hill deliberately did not investigate the sexual harassment and bullying occurring almost daily and did not provide Plaintiff any direction or guidance on Title IX protections.

380. Spring Hill deliberately did not investigate the sexual harassment and bullying occurring almost daily and did not provide Plaintiff any protections.

381. Spring Hill deliberately did not investigate the sexual harassment and bullying occurring almost daily and did not provide Plaintiff any medical or mental health care.

382. To the contrary, Spring Hill allowed the harassment and bullying to continue and went further by retaliating against Plaintiff when it removed him from the athletic team, forced him into isolation, and failed to give him promised scholarship money.

383. The retaliatory actions were taken because of Plaintiff's vocalizing the discrimination, bullying, and harassment protected Title IX Complaint.

384. Knowing that any of these actions could befall them would cause other students to question whether they should risk making a Title IX Complaint to Spring Hill or reporting sexual harassment.

385. As a direct and proximate result of Defendant Spring Hill's actions and inactions, Plaintiff has been deprived or educational opportunities and has sustained and continues to sustain severe emotional distress, anguish, embarrassment, humiliation, anxiety, frustration, stress, trauma, and concern. Plaintiff Doe's experience was so unwelcome and was sufficiently severe, pervasive, and objectively offensive to deprive Plaintiff of equal access to educational activities and programs.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands judgment against Spring Hill for all damages awardable under Title IX, including but not limited to attorney's fees and all available damages, which may include but not be limited to, if available, compensatory damages, consequential damages, punitive damages, treble damages, attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest.

## COUNT II: VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. 1681 ----- Gender/Sex Discrimination (against Defendant Spring Hill College)

386.   Plaintiff realleges paragraphs 9, 57-287 of this Complaint as if alleged herein.

387.   Spring Hill College is an educational institution, is the recipient of federal financial assistance, and is subject to private causes of action under Title IX.

388.   Title IX liability arises when a school district, who is an appropriate person with authority to take corrective action in response to student-on-student sexual harassment, has sufficient actual notice of the sexual harassment but responds thereto with deliberate indifference and acts unreasonably in light of known circumstances.

389.   Defendant Craig McVey and other school officials believed Plaintiff to be a homosexual, or at the very least, to possess effeminate attributes and such sexual preference.

390.  On September 09, 2023, at Chick-Fil-A following the USA Azalea City Classic Cross Country Meet a teammate made a comment in front of Craig McVey

insinuating the Plaintiff liked males which Defendant McVey smiled and nodded in the affirmative to in agreement. Such actions establish that Defendant Spring Hill and Defendant McVey treated the Plaintiff differently as contained in this Complaint based on his perceived sexual orientation and based on his perceived sexual preference.

391.  Defendant Craig McVey and other school officials' affirmatory reaction and refusal to intervene to stop Defendant William Robert Tate's sexual harassment due to their belief of the Plaintiff's perceived sexual orientation or perceived sexual preference as explained in this Complaint.

392.  Defendant Craig McVey and other school officials attempted to dismiss and downplay the sexual harassment and abuse Plaintiff was experienced with the intent to discriminate on the basis of Plaintiff's sex and perceived sexual orientation and perceived sexual preference.

393.  Spring Hill College was on notice of misconduct and discrimination in the form of intimidation, sexual harassment, and gender-based harassment by Defendant William Robert Tate.

394.  By their actions and inactions, Defendant Spring Hill created an environment in which such misconduct was tolerated, thus encouraging continued and repeated intimidation, sexual harassment, and gender-based harassment and thus proximately causing injury to Plaintiff.

395. Defendant Craig McVey was on notice that the Plaintiff was being controlled by Defendant William Robert Tate and that Defendant William Robert Tate was doing this by sexually harassing the Plaintiff as expressed in this Complaint and failed to inform the Plaintiff of his Title IX rights and take appropriate action, including but not limited to notifying the Plaintiff of his right to file a Title IX Complaint, therefore forcing the Plaintiff to enduring sexual harassment for much longer than Plaintiff would had, had Defendant McVey immediately informed Plaintiff of his rights.

396. Defendant Craig McVey and other school officials had actual knowledge and had the authority to investigate and take meaningful action to end the discrimination and sexual harassment but failed to do so. Defendant McVey and Spring Hill officials had a duty and obligation by Title IX and Spring Hill's own Title IX policy to report instances of sexual harassment, gender-based discrimination to the Title IX coordinator and failed to report the harassment and discrimination causing the Plaintiff to endure the sexual harassment for longer than he would have, had the Title IX been notified by Defendant McVey and Spring Hill officials immediately.

397. The discrimination, intimidation, and sexual harassment occurring with Spring Hill's Cross Country and Track & Field teams effectively barred Plaintiff access to educational opportunities, including but not limited to, attending school and athletic practices and activities without fear, embarrassment, intimidation, and mental anguish associated with pervasive and continuing sexual harassment.

398. Plaintiff suffered repeated student-on-student intimidation and sexual harassment, which is considered discrimination based on sex and is prohibited by Title IX.

399. The gender-based harassment, intimidation, and sexual harassment suffered by Plaintiff was severe, pervasive, and objectively offensive as required by Title IX.

400. The gender-based harassment, intimidation, and sexual harassment suffered by Plaintiff was severe, pervasive, and objectively offensive as required by Title IX.

401. The gender-based harassment, intimidation, and sexual harassment suffered by Plaintiff created a hostile environment at Spring Hill College.

402. Spring Hill further violated Title IX and its own policies and Student-Athlete Handbook by immediately believing false allegations of Defendant William Robert Tate, a white male and not providing Plaintiff, an African American, a proper investigation prior to facing disciplinary action and a suspension from the Track & Field team when the Student-Athlete Handbook mandated such a suspension could only take place after a finding of a violation and not on an "interim decision" like the Plaintiff received.

403. Defendant Spring Hill unlawfully and improperly suspended the Plaintiff due to the Plaintiff's perceived sexual orientation and perceived preference and violated the Plaintiff's rights in accordance with their own policies by suspending him on an "interim decision" when such a decision required a finding of a violation.

404. Spring Hill intended to hurt Plaintiff, to discriminate against him based on his race and perceived sexual orientation, and to retaliate against him as is evident when comparing their treatment of Plaintiff with another white heterosexual male.

405. Suspending Plaintiff as acknowledged on record by Mr. Nathan McQuinn on an "interim" decision was not permitted by the Student Athlete Handbook which *requires* an individual be found in violation of the Student-Athlete Handbook to be suspended from an athletic team.

406. A suspension may only come after a ***finding*** of a violation of an offense and depending on the severity, however, Plaintiff was suspended without being afforded his due process rights in accordance with the Policy and based on an "interim decision."

407. The suspension was done improperly and intentionally in retaliation for Plaintiff's reporting of the harassment and bullying, discrimination and sexual misconduct by William Tate and another Spring Hill teammate.

408. Spring Hill's immediate suspension was improper, retaliatory, and further evidence of its own discrimination against the Plaintiff based on his perceived sexual orientation and race.

409. Before the suspension Spring Hill did not undertake any investigation or a hearing and Plaintiff lost the benefit of his due process rights.

410. A white heterosexual teammate, after being arrested and suspended from the team for vandalizing a local school and committing multiple felonies, was given full

support by Craig McVey and Spring Hill. In fact, Craig McVey told the teammates at a team meeting that they "should support (the white heterosexual male)" and "lift (the white heterosexual male) up".

411.  In comparison to the treatment received by the white heterosexual male teammate, Craig McVey told the teammates to not provide Plaintiff any moral support when he was improperly suspended. Craig McVey sent a message to Plaintiff's teammate and friend stating, "I know it might be hard but do not discuss with -------. He is going to be looking for moral support but not on this one."

412.  Using the words "but not on this one" Craig McVey held Plaintiff in a false light when he improperly suspended the Plaintiff, and such a statement was libelous and against the freedom of speech policy of Spring Hill.

413.  A white heterosexual teammate was charged with two felonies and had a public arrest. He was allowed to remain in GroupMe messaging threads, attend team events, and given the support of Spring Hill while suspended. Plaintiff however was left in isolation, held in a false light, removed from all team activities and communications.

414.  Each of the foregoing actions support Plaintiff's contention that Spring Hill engaged in their own acts of intentional discrimination against Plaintiff, which are sufficient to support an allegation of a Title IX violation.

415.  By its actions and inactions, Spring Hill College acted with deliberate indifference toward Plaintiff's right to a safe and secure educational environment, thus

materially impairing Plaintiff's ability to pursue his education at Spring Hill College in violation of the requirements of Title IX.

416.   As a direct and proximate result of Defendant Spring Hill's actions and inactions, Plaintiff has been deprived or educational opportunities and has sustained and continues to sustain severe emotional distress, anguish, embarrassment, humiliation, anxiety, frustration, stress, trauma, and concern. Plaintiff Doe's experience was so unwelcome and was sufficiently severe, pervasive, and objectively offensive so as to deprive Plaintiff of equal access to educational activities and programs.

**WHEREFORE, these premises considered**, Plaintiff seeks all available remedies under Title IX, including but not limited to compensatory damages, consequential damages, punitive damages, treble damages, attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest.

## COUNT III: RETALIATION IN VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972 (against Defendant Spring Hill College)

417.   Plaintiff realleges paragraphs 9, 57-287 of this Complaint as if alleged herein.

418.   Defendant Spring Hill witnessed through employees and/or was on notice or aware of the actions of Defendant William Robert Tate and another teammate as alleged in the Factual Allegations of this Complaint.

419.   Spring Hill was on notice of the sexually charged bullying and harassment as alleged in this Complaint and in the factual allegations of this Complaint.

420. Defendant Spring Hill was aware Defendant William Robert Tate was controlling and manipulating the Plaintiff by attempting to blackmail him with false rumors.

421. As shown in this Complaint and the Factual Allegations of this Complaint, Plaintiff was unlawfully, wrongfully, and improperly suspended from all athletic activities and communications in retaliation for his vocalization of the sexual harassment and bullying he was enduring by fellow students by Craig McVey and Spring Hill.

422. As shown in the Factual Allegations of this Complaint and in this Complaint Defendant Spring Hill mistreated and retaliated against the Plaintiff instead of assisting him and provided him no benefits their own policies provided and failing to follow their duty of care.

423. Plaintiff was suspended as acknowledged on record by the Athletic Department on an "interim decision" when a suspension from an Athletic team is only allowed following the finding of a violation of the Student-Athlete Handbook. Such occurred following the Plaintiff's reporting of harassment and bullying and Craig McVey witnessing such. For example, Craig McVey witnessed a teammate pressure the Plaintiff on his sexuality. Despite witnessing this misconduct, Craig McVey did nothing.

424. Defendant Spring Hill suspended the Plaintiff unlawfully and in retaliation of his vocalization of the sexual harassment and bullying he was enduring by fellow students.

Defendant Spring Hill's actions were done in retaliation, discrimination based on the Plaintiff's race and perceived sexual orientation as well.

425. Further, Plaintiff was not provided immediate assistance, an investigation, or any other benefit as described in this Complaint also in retaliation for the reporting of the sexual misconduct, harassment and bullying and Retaliation by Craig McVey following the Plaintiff's reports to Craig McVey and in retaliation for the Plaintiff reporting discrimination based on race by Craig McVey.

426. Further, Spring Hill retaliated against the Plaintiff following him reporting sexual harassment by failing to even respond to his requests made in accordance with FERPA within 45 days as required by FERPA following his report of sexually charged bullying and harassment and racial discrimination.

427. Further, Spring Hill retaliated against the Plaintiff following him reporting sexual harassment by failing to provide Plaintiff materials requested in accordance with FERPA after the Plaintiff provided relevant provisions of FERPA that explained why he was entitled to these materials.

428. Spring Hill College failed to deliver on its promise made 08/23/2023 and other dates through Dr. Vannee Cao-Nguyen to provide the Plaintiff with all documents used within the Title IX Investigation and Faculty Investigation and requested in accordance with FERPA *after* the conclusion of the Faculty Investigation against multiple faculty members and documents also contained within the Faculty Investigation and Title IX

Investigation and requested in accordance with FERPA in an attempt to further withhold the information from the Plaintiff and in retaliation. Defendant Spring Hill continues to withhold the information.

429. After the Plaintiff filed a Title IX and Title VI Complaint then-Title IX Coordinator Kevin Abel acknowledged a records request was filed in accordance with FERPA in a recorded conversation. Kevin Abel failed to even offer the Plaintiff the right to inspection of the documents within 45 days of the Plaintiff filing the request in accordance with FERPA and never followed up with the Plaintiff concerning his request and did not provide any response in relation to the records request within the 45-day requirement by FERPA. This took place shortly after the Plaintiff had filed the records request in accordance with FERPA and shortly after the Plaintiff filed a Complaint alleging violations of Title IX and Title VI against students and faculty of Spring Hill even though Mr. Abel is on record and in emails acknowledging the request was filed in accordance with FERPA.

430. Defendant Spring Hill intentionally withheld and continues to withhold the materials.

431. Spring Hill College failed to deliver on its promise made 08/23/2023 through Dr. Vannee Cao-Nguyen to provide the Plaintiff the right to documentation and the actual report from the Faculty Investigation.

432.   Spring Hill College's "Findings Document" in response to Complaints submitted in writing by the Plaintiff of mistreatment, adverse treatment, and retaliation following filing his Title IX and Title VI failed to mention Former Employee and Former Title IX Coordinator Kevin Abel, who the Plaintiff complained about while he was still employed at Spring Hill College.

433.   Complaints submitted by the Plaintiff were sent via email to Dr. Van Brunt and sent to Dr. Van Brunt in a shared Google Document which was shared with Dr. Vannee Cao-Nguyen. Spring Hill College agreed through Dr. Vannee Cao-Nguyen via email to include findings against Kevin Abel and acknowledged that a Complaint had been filed against him as well, however, Spring Hill College failed to include the findings.

434.   Spring Hill College even acknowledged via email after Kevin Abel was no longer at Spring Hill College that findings would still be issued for the actions he committed while at Spring Hill College, however, this was not provided in retaliation for the Plaintiff filing Title IX and Title VI Complaints and for the Plaintiff previously exercising his rights and filing Complaints of Violations of Title IX and Title VI. Then Title IX Coordinator Kevin Abel separated either voluntarily or involuntarily from Spring Hill College days following the Plaintiff's Complaints against him filed on or around July 5, 2023, however, Spring Hill acknowledged via email he would still be included in the "findings" report even though he was no longer at Spring Hill College.

435. Upon information and belief Defendant Spring Hill offered then Title IX Coordinator Kevin Abel a different job but advised him he could no longer be Title IX Coordinator after mishandling the Plaintiff's Title IX Complaint and instead of wanting to take the other job the then Title IX Coordinator Kevin Abel resigned from Spring Hill.

436. Spring Hill College failed to include Craig McVey, Kevin Abel, Chad LeBlanc, Joe Niland within the Title IX Investigation despite the Plaintiff alleging retaliation in response to reporting sexual harassment and racial discrimination and retaliation for reporting sexual harassment and racial discrimination against these individuals and demanding they be included in a Title IX Investigation in accordance with Spring Hill College's own Title IX Policy.

437. Further, Spring Hill retaliated against the Plaintiff following him reporting sexual harassment by ignoring, failing to respond, and failing to include Defendant McVey within a Title IX Investigation for retaliation as required by Title IX and Spring Hill's own policies after Plaintiff stated to Defendant Spring Hill via email Defendant McVey had retaliated against him following his complaints of sexually charged bullying and harassment.

438. All of the retaliatory and intentional acts of Spring Hill as included in this Complaint were in retaliation for the Plaintiff's reports of sexual harassment and sexually charged bullying and for the Plaintiff engaging in an investigation in relation to the violations of Title IX and continuing to report and communicate with individuals including

but not limited to Title IX Coordinator Dr. Vannee Cao-Nguyen, Title IX Coordinator Kevin Abel, Title IX Investigator about the violations of Title IX.

439. All the herein described retaliatory and intentional acts of Spring Hill by and through its employees proximately caused Plaintiff to lose participation opportunities.

440. The herein described retaliatory and intentional acts of Spring Hill by and through its employees proximately caused Plaintiff to lose the support of his teammates.

441. The herein described retaliatory and intentional acts of Spring Hill by and through its employees proximately caused Plaintiff to lose support services of Spring Hill.

442. The herein described retaliatory and intentional acts of Spring Hill by and through its employees proximately caused Plaintiff to suffer mental anguish, to suffer physical injury, to suffer emotional distress, to suffer depression, to suffer anxiety, to lose sleep, to worry, to suffer embarrassment, have to seek medical and mental care, and to retain the services of legal counsel. Plaintiff Doe's experience was so unwelcome and was sufficiently severe, pervasive, and objectively offensive so as to deprive Plaintiff of equal access to educational activities and programs.

**WHEREFORE, these premises considered**, Plaintiff seeks all available remedies under Title IX, including but not limited to compensatory damages, consequential damages, punitive damages, treble damages, attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest.

## COUNT IV – VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964 (against Defendant Spring Hill College)

443.    Plaintiff realleges paragraphs 9, 57-287 of this Complaint as if alleged herein.

444.    Defendant Spring Hill witnessed through employees and/or was on notice or aware of the actions of Defendant William Robert Tate and another white heterosexual teammate as alleged in the Factual Allegations of this Complaint.

445.    Title VI of the Civil Rights Act of 1964 (Title VI), 42 U.S.C.2000d et seq., prohibits discrimination based on race, color, or national origin in any program or activity receiving Federal financial assistance.

446.    Spring Hill is an educational institute who receives federal financial assistance and is subject to Title VI of the Civil Rights Act of 1964.

447.    Plaintiff, an African American reported to Craig McVey and Spring Hill he was being bullied and sexually harassed by teammates.

448.    Despite the Plaintiff's reporting of extensive and almost daily harassment and bullying, Spring Hill failed to timely undertake an investigation, failed to impose any restrictions, and enforce any restrictions protecting the Plaintiff from further abuse, harassment, and bullying.

449.    Defendant Spring Hill failed to timely undertake an investigation, failed to impose any restrictions, and enforce any restrictions protecting the Plaintiff from further abuse, harassment and bullying due to the Plaintiff's race.

450. Defendant Spring Hill allowed the Plaintiff to endure extensive sexual harassment and mistreatment from teammates and instead of assisting him mistreated him itself and retaliated against him as alleged in the Factual Allegations of this Complaint and breached their duties of care.

451. When Defendant William Robert Tate, a white male, (known to Spring Hill as one of the persons harassing and bullying Plaintiff) falsely made allegations against Plaintiff, an African American male, Spring Hill immediately suspended him in violation of Title VI and Spring Hill's own policies and procedures based on an "interim decision" when the Student – Athlete Handbook requires a finding of a violation for action such as suspension from a team to take place.

452. Spring Hill treated Plaintiff disparately and differently when he was improperly suspended versus similarly situated a white male teammate when he was suspended because of the Plaintiff's race.

453. When the white male was arrested and ultimately plead guilty for certain criminal activities, including but not limited to criminal mischief 1st degree and burglary 3rd degree, and suspended from the team, he was permitted to interact with teammates.

454. When the white male, was arrested and ultimately plead guilty for certain criminal activities and suspended from the team he still received team communications.

455. When the white male, was arrested and ultimately plead guilty for certain criminal activities and suspended he was allowed to participate in certain team/school sponsored activities and receive the support of his teammates.

456. When the white male, was arrested and ultimately plead guilty for certain criminal activities and suspended from the team he was provided workouts to do on his own and with the team.

457. In contrast, Spring Hill intentionally isolated Plaintiff when he was falsely accused by the known harasser, Plaintiff was improperly suspended and put in complete isolation and not provided any of the benefits enjoyed by the white teammate as explained in this Cause of Action and other parts of this Complaint.

458. Plaintiff was suspended based on an "interim decision" as acknowledged on record by Nathan McQuinn even though Spring Hill's own Student – Athlete Handbook only allowed a suspension after an investigation and finding of a violation.

459. Craig McVey told the teammates to support the white heterosexual male whereas Craig McVey instructed teammates to leave Plaintiff, an African American male, alone and to not provide him with any moral support.

460. Plaintiff, an African American male, lost more opportunities, than the comparable white male, when comparing their suspensions including activities with the team and scholarship funds, and suffered increased depression, anxiety, embarrassment, suicidal ideations, worry, and lost sleep.

461.   Plaintiff, an African American male, was not provided workouts to do on his own or with the team when he was improperly suspended unlike the white teammate when he was suspended.

462.   Plaintiff further suffered physically as a result of the actions of Spring Hill and its employees.

463.   Also, the white male teammate was arrested for felony DUI on April 9, 2023, yet he was able to compete at the SIAC Outdoor Track & Field Championship.

464.   Despite his arrest on April 9, 2023, the white male was also allowed to do many activities, including but not limited to: interact with teammates, receive team communications, participate in certain team/school sponsored activities, practice, compete and receive the support of his teammates, Craig McVey, and the Athletic Department. Plaintiff was not able to enjoy the same benefits as the comparable white male as included in this Complaint and herein.

465.   Spring Hill ordered Plaintiff, an African American male, be removed from GroupMe messaging threads despite later acknowledging they could not control who was in such communications when he was improperly suspended.

466.   Spring Hill did not order that white male comparable teammate be removed from GroupMe messaging threads when he was suspended from the team like he did when the Plaintiff was improperly suspended.

467.    Spring Hill later acknowledged to Plaintiff via email through Dr. Vannee Cao-Nguyen that Spring Hill could not control who was in the GroupMe messaging threads including many members of the Cross Country and Track & Field teams.

468.    Spring Hill and Craig McVey knew such GroupMe messaging threads included evidence of harassment and bullying the Plaintiff was enduring and ordered Claire Morgan to remove the Plaintiff, an African American male from such when he unlawfully suspended him.

469.    Spring Hill treated Plaintiff differently and in a disparate way in violation of Title VI because of his race.

470.    None of the benefits received by the white male, as included in this Complaint when he was suspended were provided to the Plaintiff an African American male due to the Plaintiff's race when he was improperly suspended.

471.    The actions of Defendant Spring Hill as alleged in this Cause of Action resulted in the Plaintiff leaving campus and staying at home for the remainder of the school year and resulted in the loss of educational activities and the loss of the Plaintiff participating in athletic activities and social activities and resulted in financial losses.

472.    Spring Hill is the recipient of federal funds and is bound to comply with Title VI. Its actions and inactions as set forth in this Complaint are in direct violation of this statute.

473.   Plaintiff, an African American male, was not afforded any relief available after reporting the sexual harassment and bullying he was enduring.

474.   Spring Hill failed to acknowledge Plaintiff's reporting of the sexual harassment and bullying and such failure to investigate, conduct any disciplinary hearings, or contact Plaintiff and offer any assistance or resources was clearly unreasonable.

475.   Spring Hill also deliberately failed to properly hire, train, and retain officers, staff, and faculty as to proper methods to deal with reports of sexual abuse, investigate same and accommodate victims in a manner that would permit them to without undue hindrance complete their higher education.

476.   Spring Hill also deliberately failed to properly and timely report incidents of sexual assault, harassment, and bullying.

477.   Spring Hill also deliberately failed to provide adequate counseling and assistance to victims of sexual assault, harassment, and bullying.

478.   Spring Hill also deliberately failed to adequately monitor and supervise departments, including athletic departments, to ensure compliance with protections and standards for sexual assault prevention, reporting and investigation.

479.   Spring Hill also deliberately failed to discover, develop and/or implement basic safeguards designed to prevent and/or minimize incidents of sexual assault, harassment, and bullying.

480.    Spring Hill also deliberately failed to investigate and/or monitor persons accused of sexual assault, harassment and bullying to ensure additional events did not occur.

481.    Spring Hill also deliberately failed to adopt and implement adequate safeguards to prevent known sexual harassment occurring on campus.

482.    Spring Hill also deliberately failed to provide adequate staff, with proper training, to counsel and assist victims of sexual assault, harassment, and bullying.

483.    Spring Hill also deliberately tolerated sexual assailants on campus despite reports to the highest levels of their identities.

484.    Spring Hill also deliberately failed to adopt education programs to promote awareness of sexual assault, harassment, and bullying.

485.    Spring Hill also deliberately failed to adopt and enforce institutional sanctions for sex offenses, both forcible and non-forcible.

486.    Spring Hill also deliberately failed to adopt and enforce procedures students should follow if they become sexual assault, harassment and/or bullying victims, including who should be contacted, the importance of retaining evidence, and to whom the offense should be reported.

487.    Spring Hill also deliberately failed to inform victims that they have the option of reporting the sexual assault, harassment and bullying to law enforcement authorities and that they will receive assistance from the institution in the process.

488. Spring Hill also deliberately failed to notify sexual assault, harassment and bullying victims about counseling services and options for changing academic schedules and living arrangements in the wake of a sexual assault, harassment and bullying and address or protect against retaliation in the wake of reporting a sexual assault, harassment, and bullying.

489. Spring Hill also deliberately failed to put in place an accurate routine procedure to notify the campus community about serious criminal activity that is likely to be a threat to students and employees.

490. Spring Hill also deliberately failed to adopt and periodically review procedures to make sure they are adequate to address Complaints of serious sexual misconduct.

491. Spring Hill also deliberately failed to develop a clear policy about which kinds of sexual offenses will be handled internally, and which will be turned over to the criminal authorities.

492. Spring Hill also deliberately failed to recognize and address the high propensity of rapes, sexual assaults, harassment, and bullying taking place on campus.

493. Spring Hill also deliberately failed to make the goal of protecting the campus community from sexual assaults and harassment an integral part of the institution's day-to-day mission of providing a safe and secure learning and working environment.

494.    Spring Hill also deliberately failed to abide by, enforce or follow the rules and regulations of Spring Hill, including but not limited to Spring Hill's Sexual Discrimination and Harassment Policy concerning the reporting of harassment and bullying by a fellow student.

495.    Spring Hill also deliberately and willfully and maliciously, and recklessly failed to investigate the Complaint.

496.    Spring Hill also deliberately failed to provide Plaintiff any of the following relief allegedly available under Spring Hill's policies and procedures including but not limited to an actual and enforced "No-Contact Order".

497.    Spring Hill also deliberately failed to provide the Plaintiff with rescheduling of exams and assignments.

498.    Spring Hill also deliberately failed to provide the Plaintiff with alternative course completion and athletic practice/competition options to the Plaintiff.

499.    Spring Hill also deliberately failed to provide the Plaintiff with a modification or change in class and athletic schedule, including the ability to drop a course without penalty or to transfer or to practice in a different setting at a different location and time.

500.    Spring Hill also deliberately failed to provide the Plaintiff with a change in work schedule or job assignment.

501.    Spring Hill also deliberately failed to provide the Plaintiff with a change in student's campus housing.

502. Spring Hill also deliberately failed to provide the Plaintiff with the opportunity for a Leave of absence.

503. Spring Hill also deliberately failed to provide the Plaintiff with assistance from Spring Hill support staff in completing housing relocation and athletic practices.

504. Spring Hill also deliberately failed to provide the Plaintiff adequate safety by limiting assailants' access to certain Spring Hill facilities or activities.

505. Spring Hill also deliberately failed to provide academic support services, such as tutoring; providing escort services; providing increased security and monitoring of certain areas of the campus or similar measures.

506. Spring Hill also deliberately failed to provide referral to counseling services both on and off campus.

507. Spring Hill also deliberately failed to provide Plaintiff resources on and off campus for trained advocates who can provide crisis response.

508. Spring Hill also deliberately failed to aid in identifying advocacy support to obtain orders of protection within the criminal justice system.

509. Spring Hill's own rules, regulations, and policies state that all reports of a criminal nature, especially the reporting of an assault, harassment and bullying by a fellow student, would be investigated and a litany of relief is allegedly available under Spring Hill policies.

510. However, Spring Hill breached their own policies such as their Title IX Policy and Student-Athlete Handbook by willfully, recklessly, maliciously and in bad faith refusing to investigate the matter and refusing to provide any of the allegedly available relief to the Plaintiff after he reported such sexually charged harassment and bullying to Craig McVey. Spring Hill failed to discharge their duties herein pursuant to its own policies and procedures including but not limited to their Title IX Policy, and antiharassment, antidiscrimination, and antiretaliation policies.

511. Spring Hill's deliberate indifference to Plaintiff's sexual harassment and bullying exposed him to continued mental pain and anguish and sexual harassment, which was so severe, pervasive, and objectively offensive that it effectively barred him access to meaningful educational opportunities and benefits for years including academics, athletic programs, and on-campus events and activities. Moreover, Spring Hill retaliated by wrongfully suspending Plaintiff from the track and field team after he reported the bullying and sexual harassment.

512. Spring Hill is also liable for retaliating against Plaintiff after reporting he was being sexually harassed and bullied by teammates. Specifically, Spring Hill wrongfully and in retaliation, suspended Plaintiff from the track and field team and reduced promised scholarship monies and instructed teammates to completely isolate Plaintiff, removed Plaintiff from all activities, communications and other opportunities enjoyed by teammates.

513.   Spring Hill failed to even ask questions or investigate the Plaintiff's request that Defendant McVey be included in the Title IX Investigation in retaliation after the Plaintiff made Defendant McVey aware of the sexual harassment he was enduring in retaliation to the Plaintiff filing the Title VI Complaint against Defendant McVey containing racial discrimination and Title IX Complaint alleging sexual harassment and Defendant McVey's failure to act in response to being made aware of the harassment.

514.   As a direct and proximate result of Spring Hill's deliberate indifference to Plaintiff's sexual harassment and bullying, Plaintiff suffered damages and injuries, and emotional distress for which Spring Hill is liable.

515.   The actions and inaction by Defendant Spring Hill as alleged in here was done due to the Plaintiff's race.

516.   All of the herein described acts of Spring Hill by and through its employees proximately caused Plaintiff to suffer mental anguish, to suffer physical injury, to suffer emotional distress, to suffer depression, to suffer anxiety, to lose sleep, to worry, to suffer embarrassment, have to seek medical and mental care, and to retain the services of legal counsel.   Plaintiff Doe's experience was so unwelcome and was sufficiently severe, pervasive, and objectively offensive so as to deprive Plaintiff of equal access to educational activities and programs.

**WHEREFORE the above premises considered**, Plaintiff seeks all relief he may be entitled pursuant to Title VI, including but not limited to compensatory damages,

consequential damages, punitive damages, treble damages, attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest.

## COUNT V - RETALIATION IN VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964 (against Defendant Spring Hill College)

517.    Plaintiff realleges paragraphs 9, 57-287 of this Complaint as if alleged herein.

518.    Defendant Spring Hill witnessed through employees and/or was on notice or aware of the actions of Defendant William Robert Tate and others as alleged in the Factual Allegations of this Complaint.

519.    As described in the Complaint, Spring Hill was obligated to comply with Title VI, and it violated Title VI in its response (and lack thereof) to Plaintiff's reporting of sexual harassment and bullying by teammates and racial discrimination.

520.    Spring Hill is liable for failing to take action on the Plaintiff's reports of sexual harassment and bullying, which they failed to take action on because of the Plaintiff's race.

521.    Spring Hill is liable for allowing the Plaintiff to endure sexual harassment, mistreatment from Defendant McVey, and retaliation from Defendant McVey because of the Plaintiff's race, retaliating against the Plaintiff due to the Plaintiff's race as alleged in this Complaint, and breaching its duties of care in retaliation to the Plaintiff's reporting of sexual harassment and bullying due in part because of the Plaintiff's race as alleged in this Complaint.

522.    Spring Hill is liable for failing to provide the Plaintiff with any of the benefits he was entitled to due to his race as alleged in this Complaint.

523. Spring Hill is also liable for retaliating against Plaintiff after reporting he was being sexually harassed and bullied by teammates and racial discrimination by Craig McVey.

524. Spring Hill is also liable for retaliating against Plaintiff and failing to act after he reported on or around March 29, 2023, and March 30, 2023, and thereafter to Then Title IX Coordinator Kevin Abel and other officials that he received disparate treatment by Craig McVey based on his race and endured sexual harassment by fellow teammates. In addition, Spring Hill is liable for treating Plaintiff differently based on his race in violation of Title VI and after Plaintiff made a Complaint under Title VI. Spring Hill failed to even ask questions or investigate the Plaintiff's request that Defendant McVey be included in the Title IX Investigation in retaliation after the Plaintiff made Defendant McVey aware of the sexual harassment he was enduring in retaliation to the Plaintiff filing the Title VI Complaint against Defendant McVey containing racial discrimination and Title IX Complaint alleging sexual harassment and Defendant McVey's failure to act in response to being made aware of the harassment.

525. Specifically, Spring Hill wrongfully, intentionally and in retaliation to the Plaintiff's Complaints of sexual harassment and racial discrimination, suspended Plaintiff from the track and field team and reduced promised scholarship monies and instructed teammates to completely isolate Plaintiff, removed Plaintiff from all activities, communications and other opportunities enjoyed by teammates.

526.    Following Spring Hill eventually agreeing to allow Plaintiff to be reinstated Craig McVey continued his efforts to retaliate for the Plaintiff's reports of sexual harassment and racial discrimination and punish Plaintiff by intentionally continuing to exclude Plaintiff from emails containing summer workouts and from Plaintiff participating in team related activities. Plaintiff was forced to involve counsel to get access to all activities.

527.    When Craig McVey did re-add the Plaintiff to such emails containing summer workouts, he addressed the Plaintiff by his name in his response email as "-------…" which was intentional and with sarcasm and negative emphasize.

528.    Following Spring Hill eventually agreeing to allow Plaintiff to be reinstated Spring Hill continued its efforts to retaliate and punish Plaintiff for his reports of sexual harassment and racial discrimination by aggressively forcing Plaintiff to attend a private and unnecessary meeting with Craig McVey, Chad LeBlanc, and Joe Niland inappropriately coping the Title IX Coordinator Kevin Abel to influence him.

529.    In retaliation after the Plaintiff reported racial discrimination Kevin Abel and Dr. Vannee Cao-Nguyen negligently, recklessly, and intentionally prevented Plaintiff from obtaining documents in accordance with FERPA after requesting the documents multiple times and providing them relevant statutes as to why Plaintiff was entitled to the materials.

530.    In retaliation after the Plaintiff reported racial discrimination Kevin Abel failed to even reply within 45 days as required by FERPA to the Plaintiff's requests filed

under FERPA, and as instructed by Kevin Abel on record in retaliation for Plaintiff's Title VI Complaint.

531. In retaliation after the Plaintiff reported racial discrimination Kevin Abel and Dr. Vannee Cao-Nguyen further retaliated against Plaintiff by attempting to include a Non-Title IX Code of Conduct within a Title IX Investigation and refusing to remove it from the investigation after being provided the relevant provisions within the Policy why it could not be included in a Title IX Investigation resulting in Plaintiff suffering loss of time, undue stress, increased anxiety, and depression.

532. In retaliation after the Plaintiff reported racial discrimination Kevin Abel attempted to coerce, intimidate, harass, and retaliate against the Plaintiff by implying the Title IX Investigation may not continue for the Plaintiff if the Plaintiff raised concerns of the inclusion of the Infliction of Physical Harm Code of Conduct Charge within the Title IX Investigation and continued to press Spring Hill to provide Plaintiff copies of the documents requested in accordance with FERPA, which he was rightfully entitled to by law.

533. In retaliation after the Plaintiff reported racial discrimination after the Plaintiff's Title VI Complaint Kevin Abel also failed to timely and appropriately conduct investigations and failed to timely and properly provide written acknowledgements of information Plaintiff requested multiple times about the Title IX Investigation and the process of the Title IX Investigation.

534. In retaliation after the Plaintiff reported racial discrimination after the Plaintiff's Title VI Complaint Kevin Abel and Dr. Vannee Cao-Nguyen failed to include Title IX Violations within the Title IX Investigation against Craig McVey after Plaintiff explained Craig McVey had been previously aware of the sexual harassment and bullying and in fact Craig McVey witnessed some of the harassment and bullying yet did nothing and that Craig McVey retaliated against Plaintiff for reporting Title IX violations and sexual harassment, sexually charged bullying and witnessing such and violated sexual misconduct policies.

535. Defendant Spring Hill intentionally did not respond to the Title IX and Title VI Complaints filed by the Plaintiff against Defendant Craig McVey and intentionally did not include such within a Title IX Investigation intending to preclude the Plaintiff of his rights under Title IX such as the right to cross examination of parties and witnesses to the Title IX Investigation and a hearing and a decision after a hearing and other protections in accordance with Title IX and Spring Hill's Title IX Policy and in retaliation to his complaints of racial discrimination and sexual harassment.

536. Spring Hill's Title IX Policy mandates the initiation of a Title IX Investigation in the event a student filed a Complaint explaining they endured retaliation after reporting sexual harassment.

537. Further, Plaintiff was not provided immediate assistance, an investigation or any other benefit as described in this Complaint also in retaliation for the reporting of racial

discrimination by Craig McVey to Defendant Spring Hill and after filing his Title VI Complaint.

538. Further, Spring Hill Retaliated against the Plaintiff following him reporting racial discrimination and filing a Title VI Complaint against Defendant Craig McVey by failing to even respond to his requests made in accordance with FERPA within 45 days as required by FERPA following his report of sexually charged bullying and harassment and racial discrimination.

539. Further, Spring Hill retaliated against the Plaintiff following him reporting racial discrimination by Defendant Craig McVey and after filing his Title VI Complaint by failing to provide Plaintiff materials requested in accordance with FERPA after the Plaintiff provided relevant provisions of FERPA that explained why he was entitled to such materials.

540. Spring Hill College failed to deliver on its promise made 08/23/2023 and other dates through Dr. Vannee Cao-Nguyen to provide the Plaintiff with all documents used within the Title IX Investigation and Faculty Investigation and Requested in accordance with FERPA *after* the conclusion of the Faculty Investigation against multiple faculty members and documents also contained within the Faculty Investigation and Title IX Investigation and requested in accordance with FERPA in an attempt to further withhold such information from the Plaintiff and in retaliation to the Plaintiff reporting racial discrimination by Defendant Craig McVey and filing a Title VI Complaint against

Defendant Craig McVey. Defendant Spring Hill stated they could not give the Plaintiff such materials while the Title IX and Faculty Investigation was pending, however, such still has not been provided after such investigations were closed in retaliation to the Plaintiff filing a Title VI Complaint against Defendant Craig McVey and reporting racial discrimination against the Plaintiff by Defendant Craig McVey.

541.    After the Plaintiff filed a Title IX and Title VI Complaint Then-Title IX Coordinator Kevin Abel acknowledged a records request was filed in accordance with FERPA in a recorded conversation. After such request was emailed to Kevin Abel and in the way the Plaintiff was instructed to file such in such recorded conversation with Kevin Abel. Thereafter in retaliation to the Plaintiff's Title VI Complaint against Defendant Craig McVey Kevin Abel failed to even offer the Plaintiff the right to inspection of such documents within 45 days of the Plaintiff filing such request in accordance with FERPA and never followed up with the Plaintiff concerning such and did not provide any response in relation to such records request within the 45-day requirement by FERPA. This took place shortly after the Plaintiff had filed such records request in accordance with FERPA and shortly after the Plaintiff filed a Complaint alleging Violations of Title VI against students and faculty of Spring Hill even though Mr. Abel is on record and in emails acknowledging such request was filed in accordance with FERPA.

542.    Defendant Spring Hill intentionally is withholding such materials after litigation started in this matter.

543. Spring Hill College failed to deliver on its promise made 08/23/2023 through Dr. Vannee Cao-Nguyen to provide the Plaintiff the right to documentation and the actual report from the Faculty Investigation in retaliation to the Plaintiff's Title VI Complaint against Defendant Craig McVey and the Plaintiff reporting racial discrimination by Defendant Craig McVey.

544. Spring Hill College's "Findings Document" in response to Complaints submitted in writing by the Plaintiff of mistreatment, adverse treatment, and retaliation following filing his Title IX and Title VI failed to mention Former Employee and Former Title IX Coordinator Kevin Abel, who the Plaintiff complained about while he was still employed at Spring Hill College.

545. Complaints submitted by the Plaintiff were sent via email to Dr. Van Brunt and sent to Dr. Van Brunt in a shared Google Document which was shared with Dr. Vannee Cao-Nguyen. Spring Hill College agreed through Dr. Vannee Cao-Nguyen via email to include findings against Kevin Abel and acknowledged that a Complaint had been filed against him as well, however, such has not been provided.

546. Spring Hill College even acknowledged via email after Kevin Abel was no longer at Spring Hill College that findings would still be issued for the actions he committed while at Spring Hill College, however, this was not provided in retaliation for the Plaintiff filing Title VI Complaints and Complaints of racial discrimination against Defendant Craig McVey and for the Plaintiff previously exercising his rights and filing

Complaints of Violations of Title VI. Then Title IX Coordinator Kevin Abel separated either voluntarily or involuntarily from Spring Hill College days following the Plaintiff's Complaints against him filed on or around July 5, 2023, however, Spring Hill acknowledged via email he would still be included in the "findings" report even though he was no longer at Spring Hill College.

547. Upon information and belief Defendant Spring Hill offered Then Title IX Coordinator Kevin Abel a different job but advised him he could no longer be Title IX Coordinator after mishandling the Plaintiff's Title IX Complaint and instead of wanting to take the other job Then Title IX Coordinator Kevin Abel resigned from Spring Hill.

548. Spring Hill College failed to include Craig McVey, Kevin Abel, Chad LeBlanc, Joe Niland within the Title IX Investigation despite the Plaintiff alleging Retaliation in response to reporting sexual harassment and racial discrimination and Retaliation for reporting sexual harassment and racial discrimination against these individuals and demanding they be included in a Title IX Investigation in accordance with Spring Hill College's own Title IX Policy. Such action and inaction was done by Defendant Spring Hill in retaliation to the Plaintiff filing a Title VI Complaint and reporting the racial discrimination he endured by individuals including but not limited to Defendant Craig McVey.

549. Further, Spring Hill retaliated against the Plaintiff following him reporting sexual harassment by ignoring, failing to respond, and failing to include Defendant McVey

within a Title IX Investigation for Retaliation after he reported sexual harassment as required by Title IX and Spring Hill's own policies after Plaintiff stated to Defendant Spring Hill via email Defendant McVey had retaliated against him following his Complaints of sexually charged bullying and harassment. Such actions and inaction were done by Defendant Spring Hill in retaliation to the Plaintiff reporting racial discrimination and after the Plaintiff filed a Title VI Complaint against Defendant Craig McVey.

550. All of the retaliatory acts herein and in this Complaint occurred after the Plaintiff filed a complaint of racial discrimination and Violations of Title VI against Defendant Craig McVey and after the Plaintiff engaged in an investigation related to the complaint of racial discrimination and Violations of Title VI and continued to communicate with individuals including but not limited to Title IX Coordinator Dr. Vannee Cao-Nguyen, Title IX Coordinator Kevin Abel, Title IX Investigator and others in relation to the complaint of racial discrimination and Violations of Title VI.

551. All the herein described retaliatory and intentional acts of Spring Hill by and through its employees proximately caused Plaintiff to suffer mental anguish, to suffer physical injury, to suffer emotional distress, to suffer depression, to suffer anxiety, to lose sleep, to worry, to suffer embarrassment, have to seek medical and mental care, and to retain the services of legal counsel. Plaintiff Doe's experience was so unwelcome and was sufficiently severe, pervasive, and objectively offensive so as to deprive Plaintiff of equal access to educational activities and programs.

**WHEREFORE the above premises considered** Plaintiff seeks all available relief he is entitled to including but not limited to compensatory damages, consequential damages, punitive damages, treble damages, attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest.

## COUNT VI: NEGLIGENCE, RECKLESSNESS, RECKLESS INDIFFERENCE, AND WANTONNESS (against Defendant Spring Hill College)

552.    Plaintiff realleges paragraphs 9, 57-287 of this Complaint as if alleged herein.

553.    Defendant Spring Hill witnessed through employees and/or was on notice or aware of the actions of Defendant William Robert Tate and their teammate as alleged in the Factual Allegations of this Complaint.

554.    Spring Hill owed Plaintiff a duty of reasonable care.

555.    Spring Hill acted with a conscience disregard and reckless indifference to the Plaintiff's Complaints of sexual harassment, retaliation enduring after reporting sexual harassment and racial discrimination.

556.    Spring Hill acted with a conscience disregard and reckless indifference to the Plaintiff's Complaints of sexual harassment, retaliation in violation of Title IX, and racial discrimination due to the Plaintiff's race and perceived sexual orientation.

557.    Defendant Spring Hill was aware of the risks William Tate and their teammate posed to the Plaintiff and promised a No Contact Order, however, none was put in place despite the fact the then Title IX Coordinator Kevin Abel promised one would be issued.

558. Defendant Spring Hill acted with extreme and reckless behavior and reckless indifference in response to the Plaintiff's reports of sexual harassment and concerns about his safety and failed to provide a No Contact Order after acknowledging one would be issued. Defendant McVey failed to even investigate the Plaintiff's reports of bullying and harassment by Defendant William Robert Tate as alleged in this Complaint after he was made aware of the bullying and harassment.

559. Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by ignoring Plaintiff's Complaints of sexual harassment and bullying.

560. Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by allowing the Plaintiff to endure the harassment and bullying for years. Defendant Spring Hill was negligent, reckless, recklessly indifferent, and acted wantonly by allowing Plaintiff to continue to receive mistreatment and failing to take proper and appropriate action or investigate after the Plaintiff notified Defendant McVey of the mistreatment he was enduring by Defendant William Robert Tate and another teammate as alleged herein.

561. Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with

reckless indifference by retaliating against Plaintiff for reporting the harassment and bullying.

562. Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by failing to properly hire, train and retain officers, staff, and faculty as to proper methods to deal with reports of sexual abuse, harassment, and bullying,

563. Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by failing to investigate same and accommodate victims in a manner that would permit them to without undue hindrance, complete their higher education.

564. Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by failing to properly and timely report incidents of sexual assault, sexual harassment and bullying and ailing to provide adequate counseling and assistance to victims of sexual assault, sexual harassment, and bullying.

565. Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by failing to adequately monitor and supervise departments, including athletic departments, to ensure compliance with protections and standards for sexual assault, sexual harassment and bullying prevention, reporting and investigation.

566. Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by failing to discover, develop and/or implement basic safeguards designed to prevent and/or minimize incidents of sexual assault, harassment, and bullying.

567. Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by failing to investigate and/or monitor persons accused of sexual assault, sexual harassment and bullying to ensure additional events did not occur.

568. Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by failing to adopt and implement adequate safeguards to prevent known sexual harassment occurring on campus and distribute it to students and/or athletes.

569. Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by failing to provide adequate staff, with proper training, to counsel and assist victims of sexual assault, harassment, and bullying.

570. Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by tolerating sexual assailants on campus despite reports to the highest levels of their identities.

571. Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by failing to adopt education programs to promote awareness of rape, acquaintance rape, and other sex crimes.

572. Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by failing to adopt and enforce institutional sanctions for sex offenses, both forcible and non-forcible.

573. Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by failing to adopt and enforce procedures students should follow if they become sexual assault victims, including who should be contacted, the importance of retaining evidence, and to whom the offense should be reported.

574. Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by failing to inform victims including the Plaintiff that they have the option of reporting sexual assault, harassment and bullying to law enforcement authorities and that they will receive assistance from the institution in the process.

575. Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with

reckless indifference by failing to notify sexual assault, harassment and bullying victims including the Plaintiff about counseling services and options for changing academic schedules and living arrangements in the wake of a sexual assault, harassment and bullying and address or protect against Retaliation in the wake of reporting a sexual assault, harassment and bullying.

576. Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by failing to put in place an accurate routine procedure to notify the campus community about serious criminal activity that is likely to be a threat to students and employees.

577. Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by failing to adopt and periodically review procedures to make sure they are adequate to address Complaints of serious sexual misconduct.

578. Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by failing to develop a clear policy about which kinds of sexual offenses will be handled internally, and which will be turned over to the criminal authorities.

579.   Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by failing to recognize and address the high propensity of sexual harassment and bullying taking place.

580.   Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by failing to make the goal of protecting the campus community from sexual assaults and harassment an integral part of the institution's day-to-day mission of providing a safe and secure learning and working environment.

581.   Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by failing to abide by, enforce or follow the rules and regulations of Spring Hill, including but not limited to sexual discrimination and harassment policies, Freedom of Inquiry, Freedom of Speech policies and those which concern the reporting of an assault, harassment or bullying by a student, and willfully and maliciously, recklessly failed to investigate the Complaint.

582.   Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by failing to provide Plaintiff any of the relief allegedly available under Spring Hill's policies and procedures.

583. Spring Hill breached their duty to the Plaintiff in multiple ways including by negligently, wantonly, recklessly, willfully, and maliciously, intentionally, and with reckless indifference by failing to provide the Plaintiff his due process rights and violating its own policy and suspending the Plaintiff from athletic teams based on an "interim decision" resulting in loss of NCAA eligibility that cannot be restored when Spring Hill's Student-Athlete Handbook makes clear such an action such as a suspension can only occur after the finding of a violation of a code of conduct.

584. Defendant Spring Hill was negligent, reckless, wanton, and recklessly indifferent as explained in this Cause of Action and Complaint, which was the proximate cause of substantial injury and damage to Plaintiff, as more specifically described herein.

585. Defendant Spring Hill was negligent, reckless, wanton, and recklessly indifferent when allowing the Plaintiff to endure the herein described events, including but not limited to enduring sexual harassment, enduring the slander, enduring the bullying, enduring the mental health crisis, overall mistreating the Plaintiff, failing to offer him any benefits its own policies provide, and retaliating against the Plaintiff by suspending him from the athletic team and removing the promised scholarship.

586. Defendant Spring Hill was negligent, reckless, recklessly indifferent, and acted with wantonness by allowing the Plaintiff to continue to receive mistreatment and failing to take proper and appropriate action or investigate after the Plaintiff notified

Defendant Craig McVey of the mistreatment Defendant Tate and a teammate were committing against him as alleged in this complaint.

587.   These damages include, without limitation, great pain of mind and body, physical injury, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life, which Plaintiff has suffered and continues to suffer spiritually, mentally, and emotionally. Plaintiff was prevented and will continue to be prevented from performing his daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**WHEREFORE, the above premises considered**, Plaintiff hereby seeks all damages available including but not limited to compensatory damages, consequential damages, punitive damages, treble damages, attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest.

## COUNT VII: BREACH OF CONTRACT (against Defendant Spring Hill College)

588.   Plaintiff realleges paragraphs 9, 57-287 of this Complaint as if alleged herein.

589.   Defendant Spring Hill witnessed through employers and/or was on notice or aware of the actions of Defendant William Robert Tate and teammate as alleged in the Factual Allegations of this Complaint.

590.   Plaintiff had a valid, enforceable contract with Spring Hill as an academic enrollee, and as a resident living in on-campus housing.

591.   Spring Hill breached its contract with the Plaintiff in failing to adequately warn Plaintiff of the dangerous sexual assault, harassment, bullying, racially discriminatory conditions on campus that have been allowed to metastasize considering non-existent investigation procedures and student support activities.

592.   Spring Hill also breached its contract with the Plaintiff by failing to provide an adequately safe living and educational environment for Plaintiff, and by failing to maintain an adequately safe living and educational environment for Plaintiff after he reported sexual harassment and bullying, which Spring Hill's handbooks state they provide.

593.   Spring Hill breached its contract with the Plaintiff with conscience disregard due to the Plaintiff being an African American with a perceived homosexuality.

594.   Spring Hill also breached its contract with the Plaintiff by discriminating against the Plaintiff based on race when Defendant William Robert Tate falsely accused the Plaintiff of striking him across the face and suspending him and taking adverse action against him when he had not been found in violation of the Student-Athlete Handbook and a suspension was not warranted or allowed by Spring Hill's own policies.

595.   Spring Hill also breached its contract with the Plaintiff by retaliating against the Plaintiff after he reported sexual harassment, racial discrimination, and retaliation

endured after reporting sexual harassment when their own policies stated they would assist in these types of reports.

596. Spring Hill also breached its contract with the Plaintiff by violating its own policies in its wrongful suspension of the Plaintiff. Spring Hill wrongfully suspended Plaintiff and precluded Plaintiff his due process rights and caused his unlawful loss of NCAA eligibility by suspending him on an "interim decision" when Spring Hill's own Student-Athlete Handbook mandate a suspension can only come depending on severity and *after a finding of a violation*.

597. Spring Hill's Student-Athlete Handbook require an individual to be found in violation of a provision and Spring Hill's own Student-Athlete Handbook makes clear a suspension cannot take place based on an "interim decision."

598. Spring Hill breached its contract with the Plaintiff by allowing the Plaintiff to endure sexual harassment, mistreating the Plaintiff itself, retaliating against the Plaintiff, failing to offer the Plaintiff any of the benefits its own policies provided as alleged in the Factual Allegations of this Complaint, and breaching its duty of care which was a breach of contract by failing to provide an adequately safe living and educational environment for Plaintiff.

599. Former Spring Hill College Conduct Officer Nathan McQuinn acknowledges on record the Athletic Department suspended the Plaintiff on an "interim decision." The suspension was improper.

600.   In addition, Spring Hill breached its contract with the Plaintiff by violating its Freedom of Inquiry and Freedom of Speech Policy when Craig McVey messaged Plaintiff's teammate Claire Morgan stating, "I know it might be hard but do not discuss with -----" and that "he is going to be looking for moral support but not on this one."

601.   Spring Hill breached its contract with the Plaintiff when Craig McVey also violated their own Freedom of Inquiry and Freedom of Speech policies by forbidding the Plaintiff from discussing the improper suspension with anyone within the program.

602.   By Craig McVey attempting to isolate the Plaintiff from teammates and restrict his access to the GroupMe messaging threads, this prevented Plaintiff from gathering evidence to defend the false allegations and wrongful suspension.

603.   On March 20, 2023, Craig McVey also sent a libelous email to the entire team insinuating that the Plaintiff was under investigation for assault and held Plaintiff in a false light and implied guilt on his behalf.

604.   The actions of Defendant Spring Hill College as described in this Amended Complaint show Defendant Spring Hill's breach of its Title IX policy.

605.   These breaches were material and affected the contract's core purpose and the Plaintiff's ability to receive the agreed upon benefits and affected the Plaintiff's ability to receive a safe learning and educational environment and participate in athletic activities.

606. As a result of these breaches of contract, Plaintiff suffered damages including but not limited to mental anguish, emotional distress, physical manifestations of emotional distress, which were foreseeable, and for which recovery is now requested.

**WHEREFORE the above premises considered**, the Plaintiff hereby seeks all available damages including but not limited to compensatory damages, consequential damages, punitive damages, treble damages, attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest.

## COUNT VIII: NEGLIGENT AND/OR WANTON HIRING, TRAINING, SUPERVISION & RETENTION (against Defendant Spring Hill College)

607. Plaintiff realleges paragraphs 9, 57-287 of this Complaint as if alleged herein.

608. Plaintiff was harassed by his teammates, including Defendant Tate, as described in this Amended Complaint.

609. Plaintiff complained on multiple occasions to Defendant Spring Hill and Defendant McVey about the harassment.

610. Defendant Spring Hill witnessed through employers and/or was on notice or aware of the actions of Defendant William Robert Tate and his teammate as alleged in the Factual Allegations of this Complaint.

611. Defendant Spring Hill took no action to remedy the harassing behavior by Tate and another teammate despite Plaintiff's repeated complaints.

612. The harassment perpetrated by Tate and another teammate was ongoing despite Plaintiff's complaints.

613.   Defendant Spring Hill negligently and/or wantonly hired, trained, supervised, and retained employees which triggered the Plaintiff enduring sexual harassment, mistreatment and retaliation from Spring Hill as alleged in this Complaint, and which triggered the Plaintiff not being provided any of the benefits its own policies provided the Plaintiff the right to as alleged in this Complaint, and which triggered a breach of Defendant Spring Hill's duties of care to the Plaintiff.

614.   Defendant Spring Hill negligently hired, trained, supervised, and retained Defendant McVey and other employees on how to conduct investigations and suspensions and to not hold an individual in a false light and make statements making it appear the individual was in violation of a code of conduct policy and state an individual violated a code of conduct policy when they had not been found in violation of anything.

615.   Defendant Spring Hill has a duty to exercise reasonable care in the hiring, training, supervision, and retention of employees, particularly those who will interact with students or others on campus.

616.   Defendant Spring Hill failed to exercise reasonable care in the hiring of its employees who were unsuitable for the positions and their unsuitableness was obvious had the Defendant exercised reasonable care.

617.   Defendant Spring Hill failed to exercise reasonable care in the training, supervision, and retention of employees with respect to its own anti-discrimination and

harassment policies in the events alleged in this Complaint because they did not care to do such in part due to the Plaintiff being an African American with a perceived homosexuality.

618. Defendant Spring Hill failed to exercise reasonable care in the hiring, training, and supervision, and retention of its employees including but not limited to Kevin Abel, Craig McVey, Chad LeBlanc, Joe Niland, who were unsuitable for the positions and their unsuitableness was obvious especially considering these employees were notified of the sexual harassment and bullying, the Plaintiff was enduring and failed to conduct any investigation, much less a proper investigation, failed to remedy the harassment, and the Plaintiff was forced to continue to endure harassment, bullying and assault from William Tate and their teammate.

619. Defendant Spring Hill failed to conduct adequate background checks, ignored warning signs, and negligently hired or retained employees including but not limited to Kevin Abel, Craig McVey, Chad LeBlanc, Joe Niland, who had a history or indicators of unfitness that posed a risk to students or others on campus.

620. There was a direct connection between the college's negligent and/or wantonly hiring, training, supervision, and retention of employees including but not limited to Craig McVey, Kevin Abel, Chad LeBlanc, Joe Niland, and the Plaintiff would not have endured further pain and suffering, embarrassment, grief, emotional distress, and mental anguish he endured had Defendant Spring Hill exercised reasonable care in the hiring, training, supervision and retention of its employees and ensured they were able and

qualified to handle reports by students of sexual harassment and bullying and had they been suitable to handle sexual harassment investigations.

621. Defendant Spring Hill's failure to train and supervise its employees in the handling of sexually charged harassment and bullying led to Plaintiff having to endure continued harassment and to suffer pain and suffering, mental anguish, embarrassment, self-harm, grief, and emotional distress.

622. Defendant Spring Hill's failure to train and supervise its employees in the handling of complaints of racial discrimination and retaliation endured due to previously reporting sexual harassment and bullying and racial discrimination led to Plaintiff having to endure continued harassment and to suffer pain and suffering, mental anguish, embarrassment, self-harm, grief, and emotional distress.

623. Defendant Spring Hill's failure to train and supervise its employees and to ensure they properly and appropriately discharged their duties pursuant to policies for handling of sexual harassment and bullying investigations causing Plaintiff to endure further harassment, assault, and bullying, to endure mental anguish, worry, grief, emotional distress, pain and suffering, self-harm, and other damages.

624. Defendant Spring Hill also failed to supervise and train its employees on how and when to perform an investigation, when suspensions on Athletic teams are available, and what rights students have during an investigation, and that athletes such as the Plaintiff

could not be suspended on an "interim decision," but rather only after a finding on a violation of the Student-Athlete Handbook.

625.   Defendant Spring Hill is also liable because President Mary Van Brunt was included on many of the emails to Then Title IX Coordinator Kevin Abel explaining why the Plaintiff was entitled to certain materials in accordance with FERPA and other valid concerns raised in emails she was included on, however, she failed to take corrective action in cases such as when Kevin Abel failed to provide the Plaintiff copies of documents requested in accordance with FERPA even once the Plaintiff provided the relevant provisions and details showing why he was entitled to such materials. President Van Brunt had authority and supervision over Then Title IX Coordinator Kevin Abel as President of Spring Hill College and negligently failed to properly train, supervise, and correct the matters for the Plaintiff and continued to retain Then Title IX Coordinator Kevin Abel for a period after this occurred.

626.   Defendant Spring Hill also continued to retain Then Title IX Coordinator Kevin Abel after he was previously sued along with Spring Hill College and other employees of Spring Hill College for not correcting security failures of buildings resulting in Spring Hill College finding in their own Title IX Investigation that a Former Spring Hill College student had committed rape and sodomy against another Spring Hill College student which was litigated and settled by Spring Hill College. Despite this, Defendant Spring Hill retained an employee placing the Plaintiff and other students at risk and allowed

the opportunity for the intentional and retaliatory acts included in this Complaint which Then Title IX Coordinator Kevin Abel committed against the Plaintiff after he filed a Title IX and Title VI Complaint.

627.　Defendant Spring Hill failed to supervise and train employees to ensure racial discrimination did not occur and ensure the Plaintiff was not suspended improperly and in retaliation of reporting sexual harassment and due to racial discrimination.

628.　As a proximate result of Defendant's actions as herein described, Plaintiff suffered mental anguish, reputational damage, anxiety, worry, physical injury, financial loss, and other damages.

**WHEREFORE, the above premises considered**, Plaintiff seeks all available damages, including but not limited to compensatory damages, consequential damages, punitive damages, treble damages, attorney's fees, costs, prejudgment interest, and post judgment interest.

## COUNT IX: INVASION OF PRIVACY: FALSE LIGHT
### (against Defendant Spring Hill and Craig McVey)

629.　Plaintiff adopts 9, 57-287 of this Complaint as if alleged herein.

630.　Defendants Spring Hill and McVey placed Plaintiff in a false light when McVey immediately and against policy and procedure suspended Plaintiff by an "interim decision" when an action such as suspension could only occur after a finding of a Violation of the Student-Athlete Handbook.

631. Defendants Spring Hill and McVey placed Plaintiff in a false light when McVey further instructed team members to not communicate or support Plaintiff implying guilt on the part of Plaintiff and when he sent an email to the entire team implying guilt on the part of the Plaintiff. It is clear Defendant McVey held the Plaintiff in a false light and that Defendant McVey did not know whether or not the Plaintiff hit Defendant William Robert Tate as shown by Defendant McVey in his email stating to the entire team, "the safety of all parties is important" and "the athletic department will be gathering information from the appropriate authorities both on and off campus in determining next steps." Defendant McVey also held the Plaintiff in a false light when stating "I know it might be hard but do not discuss with … he is going to be looking for moral support but not on this one." Defendant McVey's communication made it appear as though the Plaintiff was violent and that he violated conduct policies despite the fact Defendant McVey admitted that Plaintiff had not been found to have violated any conduct policies. Moreover, Defendant McVey and Defendant Spring Hill never investigated the false allegations and had not confirmed Plaintiff assaulted anyone.

632. Defendants Spring Hill and McVey placed Plaintiff in a false light when McVey further instructed Claire Morgan to not communicate or support Plaintiff implying guilt on the part of the Plaintiff when he had been suspended on an "interim decision" and not been found in violation of any provision of the Student-Athlete Handbook. Especially

since Defendant McVey had sent an email to the Plaintiff stating the Plaintiff had not been found in violation of any code of conduct.

633. Specifically, Defendants Spring Hill and McVey placed Plaintiff in a false light when McVey went further and pinpointed Claire Morgan, Plaintiff's close friend, and specifically stated to her that "I know it might be hard but do not discuss with -------." He is going to be looking for moral support but not on this one" when Plaintiff had not been found in violation of the Student Athlete Handbook and had been suspended on an "interim decision" which the Student-Athlete Handbook does not allow. By the use of the words "but not on this one" to Claire Morgan, Craig McVey held the Plaintiff in a false light given he had never and was never found in violation of a Code of Conduct.

634. Defendant Spring Hill and Defendant Craig McVey held the Plaintiff in a false light by the actions herein especially when Defendant Spring Hill and Defendant Craig McVey was not present to witness what actually occurred between the Plaintiff and Defendant William Robert Tate.

635. Defendant Spring Hill and Defendant Craig McVey held the Plaintiff in a false light by the actions herein especially since Defendant Craig McVey explicitly stated to the Plaintiff, he had not been found in violation of any conduct policies after holding the Plaintiff in a false light as explained herein.

636. Defendant Spring Hill and Defendant Craig McVey placed the Plaintiff in a false light by sending emails to the entire Cross Country and Track & Field teams stating

the Plaintiff was suspended and implying the Plaintiff was being investigated for assault. Such actions placed the Plaintiff in a false light given his suspension was done improperly and retaliatorily.

637. Defendant Spring Hill and Defendant Craig McVey sent these messages to Claire Morgan minutes after sending the Plaintiff messages and continued to go back and forth between sending the Plaintiff and Claire Morgan messages.

638. As a proximate result of Defendants Spring Hill and McVey's actions, Plaintiff was placed in a false light and Plaintiff suffered emotional distress, mental anguish, anxiety, depression, physical ailments, lost opportunities, costs, and other damages.

**WHEREFORE the above premises considered**, Plaintiff seeks all available remedies including but not limited compensatory damages, consequential damages, punitive damages, treble damages, attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest.

## COUNT X: NEGLIGENT AND WANTON MISREPRESENTATION
### (against Defendant Spring Hill College)

639. Plaintiff realleges paragraphs 9, 57-287 of this Complaint as if alleged herein.

640. Defendant Spring Hill witnessed through employees and/or was on notice or aware of the actions of Defendant William Robert Tate and teammate as alleged in the Factual Allegations of this Complaint.

641.    In July 2022, Defendant Spring Hill's Craig McVey promised Plaintiff that if Plaintiff received All- Conference Honors at the Cross-Country Conference Meet, then he would increase Plaintiff's scholarship by $1,000 to $2,000.

642.    Plaintiff earned the honors.

643.    Defendant Spring Hill failed to provide Plaintiff the additional scholarship. Defendant Spring Hill made a false statement and provided misleading information.

644.    Defendant Spring Hill's employee Craig McVey knew or should have known that he could not and/or was not going to award Plaintiff the additional funds. And the misrepresentation was made by Craig McVey either knowingly, recklessly without regard for the truth, or with intent to deceive.

645.    Plaintiff relied on the promises and representations of McVey.

646.    Defendant Spring Hill made misrepresentations of material fact to their students, including Plaintiff, including, without limitation, the following: Spring Hill is "committed to providing students with a safe environment that is conducive to personal growth and learning".

647.    Defendant Spring Hill made misrepresentations of material fact to their students, including Plaintiff, including, without limitation, the following: "Spring Hill College is committed to a workplace and educational environment that is free of sexual and other unlawful harassment and where the dignity and worth of each of its members is respected. Sexual harassment, including sexual misconduct, is a type of discrimination

prohibited by federal laws such as Title IX of the Education Amendments of 1972 and Title VII of the Civil Rights Act of 1964 and by Alabama law. As a matter of college policy, sexual or other unlawful harassment occurring in the course of any College activity is prohibited."

648.   Defendant Spring Hill made misrepresentations of material fact to their students, including Plaintiff, including, without limitation, the following: "Spring Hill College and any member of Spring Hill College's community are prohibited from taking materially adverse action by intimidating, threatening, coercing, harassing, or discriminating against any individual for the purpose of interfering with any right or privilege secured by law or policy, or because the individual has made a report or Complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this policy and procedure."

649.   Defendant Spring Hill made misrepresentations of material fact to their students, including Plaintiff, including, without limitation, the following: "Spring Hill College does not discriminate on the basis of race, color, national origin, sex, sexual orientation, gender identity, disability, religion, age, veteran status, genetic information or any other applicable legally protected basis in its educational programs and activities, admissions, or employment practices. This policy is in compliance with applicable laws prohibiting discrimination, including applicable provisions of and amendments to Title IX of the Education Amendments of 1972, the Americans with Disabilities Act of 1990,

Section 504 of the Rehabilitation Act of 1973, Titles VI and VII of the Civil Rights Act of 1964, other applicable laws, and College policies."

650. Defendant Spring Hill made misrepresentations of material fact to their students, including Plaintiff, including, without limitation, the following: "All members of the Spring Hill College academic community enjoy the privilege of freedom of speech and expression. This includes the ability to express points of view on the widest range of public and private concerns, and to engage in the robust expression of ideas. The College expects a balanced approach in all communications and the inclusion of contrary points of view. As is true with society at large, free speech and expression are always subject to reasonable restrictions of time, place, and manner, and do not include unlawful activity. Obviously, and in all events, the use of the College forum shall not imply acceptance or endorsement by the College of the views expressed. The College reserves sole authority to decide any reasonable restrictions of time, place, and manner."

651. Defendant Spring Hill made misrepresentations of material fact to their students, including Plaintiff, including, without limitation, the following: "Code of Conduct violations of the College's rules are reported to the Associate Athletic Director for Internal Affairs and Compliance or Director of Athletics. Code of Conduct violations of the Athletic Department's rules are reported to members of Student Affairs staff. Violations of departmental, conference, and NCAA conduct rules are reported to the student-athlete's head coach, Associate Athletic Director for Internal Affairs and Compliance, the Director

of Athletics, and the NCAA, as appropriate. If a student athlete is found to be in violation of a department, College, conference, or NCAA policy, the penalty imposed depends upon the severity of the offense and may include the following: Ineligibility, Suspension, Dismissal from the squad, Cancellation or change in the student-athlete's grant-in-aid, Dismissal from the College."

652. Defendant Spring Hill made misrepresentations of material fact to their students, including Plaintiff, including, without limitation, the following: "5.9 BIAS BASED HARASSMENT Harassing, or other offensive words or conduct directed at

individuals because of their race, sex, national origin, gender, sexual orientation, religion, disability, pregnancy, age, or military status is prohibited. This conduct includes Verbal harassment, such as comments, jokes, or references, and offensive personal or protected class references; Demeaning, insulting, or intimidating comments about an individual or a protected class; The display in the College community of demeaning, insulting, intimidating objects, pictures, or photographs, demeaning, insulting, or intimidating written, recorded, or electronically transmitted messages (such as e-mail, instant messaging, or Internet materials); Harassing or other disruptive misconduct in the classroom or during the course of academic or physical instruction is prohibited. The faculty member has the ultimate control over such behavior and is authorized to eject from the classroom or field of instruction any student engaged in disruptive, harassing, or violent conduct. This conduct includes, but is not limited to, conduct that: interferes with normal

classroom or athletic procedure or instruction, or interferes with the presentation by the faculty member and/or other students, or interferes with the rights of other students to have a learning environment free of disruption, harassment and violence, or interferes with academic evaluation of students or their work, or constitutes physical or mental abuse, threat of physical or mental abuse, or poses a danger to the health, safety, or well-being of the faculty member or other students, regardless of whether such conduct is on or off campus."

653.   Defendant Spring Hill made misrepresentations of material fact to their students, including Plaintiff, including, without limitation, the following: "5.10 SEXUAL HARASSMENT AND VIOLENCE Sexually harassing or offensive conduct in the College community, whether committed by supervisors, managers, non- supervisory employees, students, or non-employees, is prohibited. This conduct includes Unwanted or unwelcome physical contact or conduct of any kind, including sexual flirtations, touching, advances, or propositions. "Unwanted, unwelcome" words or actions mean the person(s) affected regards it as undesirable and did not solicit or incite it. Whether conduct is unwanted or unwelcome depends upon whether a reasonable person under the same circumstances would consider the conduct unwanted; Verbal harassment of a sexual nature, such as lewd comments, sexual jokes or references, and offensive personal references; Demeaning, insulting, intimidating, or sexually suggestive comments about an individual; The display in the College community of demeaning, insulting, intimidating, or sexually suggestive

objects, pictures, or photographs; Demeaning, insulting, intimidating, or sexually suggestive written, recorded, or electronically transmitted messages (such as e-mail, instant messaging, or Internet materials)."

654.    Defendant Spring Hill owed a duty of care to provide accurate information or guidance to its students including the Plaintiff.

655.    Defendant Spring Hill provided false information and failed to follow these representations as alleged in this Cause of Action and within this Complaint, leading the Plaintiff to rely on such representations.

656.    Plaintiff relied on the representations of Defendant Spring Hill to his detriment.

657.    Defendant Spring Hill's misrepresentations resulted in the Plaintiff enduring sexual harassment from teammates, mistreatment, and retaliation from Spring Hill, and not being provided any of the benefits its own policies provided as alleged in this Complaint and resulted in duties of care being breached.

658.     Defendant Spring Hill failed to follow the representations explained in this Cause of Action and Complaint forcing Plaintiff into an unlawful and improper suspension and causing him to miss an athletic season and loose NCAA eligibility which cannot be restored.

659.    As explained within this Complaint and this Cause of Action Defendant's false representations were made negligently, and they failed to exercise reasonable care or

competence in providing employees the correct information that suspending the Plaintiff from athletic activities based on an "interim decision" was not allowed and that such can only occur after a finding of a violation of the Student-Athlete Handbook.

660. Plaintiff relied on the representations of Defendant Spring Hill to his detriment and Defendant Spring Hill failed to follow the representations forcing Plaintiff into an unlawful suspension causing him to miss a scholarship opportunity and participation in athletic activities and the loss of NCAA eligibility.

661. Plaintiff relied on the representations of Defendant Spring Hill to his detriment and Defendant Spring Hill failed to follow the representations forcing Plaintiff to worry, have embarrassment, anxiety, physical injury, loss of sleep, mental anguish, and was forced to retain counsel.

**WHEREFORE the above premises considered** Plaintiff seeks all available damages including but not limited to compensatory damages, consequential damages, punitive damages, treble damages, attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest.

## COUNT XI: PROMISSORY ESTOPPEL
### (against Defendant Spring Hill College)

662. Plaintiff adopts paragraphs 9, 57-287 of this Complaint as if fully set forth herein.

663. Defendant Spring Hill made a clear and unambiguous promise to the Plaintiff. Specifically, in July 2022, Defendant Spring Hill's Craig McVey promised Plaintiff that if

Plaintiff received All-Conference Honors at the Cross-Country Conference Meet, he would increase Plaintiff's scholarship by $1,000 to $2,000 and that such increase would reflect in his scholarship amount for 2 school years.

664. Plaintiff acted in reliance on Defendant Spring Hill's promise which was reasonable and foreseeable.

665. Plaintiff earned All-Conference Honors at the Cross-Country Conference Meet.

666. Plaintiff suffered an injury due to the reliance on Defendant Spring Hill's promise as Defendant Spring Hill failed to provide Plaintiff the additional scholarship.

667. Defendant Spring Hill's employee Craig McVey knew or should have known that he could not and/or was not going to award Plaintiff the additional funds.

668. Defendant Spring Hill's employee Craig McVey has made claims that he controls the amount of scholarship funds individuals on the Track & Field and Cross-Country teams receive.

669. Defendant Spring Hill failed to provide the Plaintiff the additionally promised scholarship in retaliation after the Plaintiff made Defendant McVey and Defendant Spring Hill aware of the sexual misconduct, he suffered from Defendant William Robert Tate and his teammate.

670. Plaintiff relied on the promises and representations of McVey and has not received the promised amount.

671. Defendant Craig McVey remained silent and did not refute this clear and unambiguous promise made to the Plaintiff when the Plaintiff raised such during a recorded conversation with Defendant Craig McVey.

**WHEREFORE, the above premises considered**, Plaintiff seeks any and all damages available including but not limited to compensatory damages, consequential damages, punitive damages, treble damages, attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest.

## COUNT XII: LIBEL (against Defendant William Robert Tate)

672. Plaintiff paragraphs 9, 10, 14, 17, 18, 21, 31, 40, 41, 43, 46, 54, 57, 287 of this Complaint as if alleged herein.

673. Defendant William Robert Tate made false comments to others, including but not limited to Spring Hill College's track and field team and cross-country teams in GroupMe forums including but not limited to the comment made by Defendant William Robert Tate in reference to the Plaintiff when he stated, "he is not a man."

674. Defendant William Robert Tate filed a false police report and falsely stated in person with the Mobile Police Department and in an affidavit to the Mobile Police Department that Plaintiff struck Tate resulting in a warrant being issued for Plaintiff's false arrest and imprisonment. Prior to this litigation when an Investigator contacted Defendant Tate about his conduct as alleged in this Complaint and his false allegation that the Plaintiff assaulted him, he refused to be questioned.

675. Defendant William Robert Tate referred to Plaintiff as "fag", "gay boy" and "faggot" and not "a real man." Defendant William Robert Tate also falsely claimed that Plaintiff hit him.

676. The statements and publications by Defendant William Robert Tate were false.

677. These false statements specifically referred to the Plaintiff and were reasonably understood to refer to the Plaintiff.

678. These false statements harmed the reputation of the Plaintiff, exposed him to ridicule, or contempt, and lowered his estimation of others in the community.

679. The conduct of Defendant William Robert Tate described above was willful, wanton, reckless, and malicious. At all relevant times, Defendant William Robert Tate acted with conscious disregard of Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and suffering to Plaintiff. Moreover, Defendant William Robert Tate refused to be questioned when an investigator contacted him. By virtue of all of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Defendant William Robert Tate according to proof at trial.

680. The comments made by Defendant William Robert Tate damaged Plaintiff's reputation and further caused Plaintiff anxiety, worry, depression, loss of enjoyment of life,

embarrassment, among other damages. These comments by Defendant William Robert Tate led to Plaintiff's improper suspension from Spring Hill athletic activities.

**WHEREFORE, the above premises considered**, Plaintiff seeks all available damages including but not limited to compensatory damages, consequential damages, punitive damages, treble damages, attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest.

## COUNT XIII: ASSAULT and BATTERY (against Defendant William Robert Tate)

681.   In February 2022, at St. Paul's Episcopal Church, Defendant William Robert Tate assaulted and battered the Plaintiff stating to the Plaintiff, "I should beat your ass right not" while pushing him down to the ground as hard as he could in front of the Plaintiff's friend, Mary Shelton.

682.   Following Defendant William Robert Tate first assaulting the Plaintiff in February 2022 the Plaintiff told him he would press charges and Defendant William Robert Tate coerced the Plaintiff into not doing such by stating he came from a family of means and with a lot of money that Defendant William Robert Tate was inherited by his grandfather that "lived in Florida" and that he would "get out of it."

683.   Defendant William Robert Tate assaulted and battered the Plaintiff in February 2022 in front of Mary Shelton given the Plaintiff would not tell him who he had ran with and Defendant William Robert Tate thought the Plaintiff was romantically involved with someone else.

684. On October 24, 2022, Defendant William Robert Tate inappropriately and violently touched Plaintiff on his anus without his consent and such was offensive physical contact.

685. On March 20, 2023, Defendant William Robert Tate assaulted and battered the Plaintiff moving as if he was going to spit on the Plaintiff and then ultimately spitting on him which constituted reasonable fear of immediate harmful or offensive contact. This also constituted assault and battery because the Plaintiff encountered intentional and offensive physical contact without the Plaintiff's consent.

686. In addition, on March 20, 2023, Defendant Tate threatened to run Plaintiff over and proceeded to move his vehicle in an aggressive way appearing Defendant Tate was in fact going to run him over constituting assault and bringing Plaintiff reasonable fear.

687. Defendant William Robert Tate forced the Plaintiff to engage in homosexual acts against his will.

688. Defendant William Robert Tate violated the Plaintiff's person multiple times by touching the Plaintiff in the area of his genitalia.

689. There were multiple times Defendant William Robert Tate positioned himself over the Plaintiff while putting his hand on the Plaintiff's head and placing his private area in front of the Plaintiff's face without his consent.

690.   Defendant William Robert Tate intended to cause harm or create a reasonable apprehension of harm in each of the events included under this Cause of Action and in this Complaint.

691.   The conduct of Defendant William Robert Tate described above was willful, wanton, reckless, and malicious. It was extremely objectively offensive to the Plaintiff. At all relevant times, Defendant William Robert Tate acted with conscious disregard of Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and suffering to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Defendant William Robert Tate according to proof at trial.

692.   Each of the assaults and batteries caused Plaintiff physical injury as well as emotional stress, mental anguish, embarrassment, anxiety, and depression.

**WHEREFORE the above premises considered** Plaintiff seeks all available damages including but not limited to compensatory damages, consequential damages, punitive damages, treble damages, attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest.

## COUNT XIV: SLANDER (against Defendant William Robert Tate)

693.   Plaintiff adopts paragraphs 9, 10, 14, 17, 18, 19, 21, 31, 40, 41, 43, 46, 54, 57, 287 of this Complaint as if alleged herein.

694. In front of fellow teammates Defendant William Robert Tate repeatedly falsely called Plaintiff "faggot", "gay boy", "fag" and made other negative slurs directed to and about Plaintiff.

695. Defendant William Robert Tate falsely told McVey, and other school officials such as Nathan McQuinn that Plaintiff hit him in March 2023, which Defendant William Robert Tate knew to be false. In fact, prior to this litigation when an Investigator contacted Defendant Tate about his sickening conduct as alleged in this Complaint and his false allegation that the Plaintiff assaulted him he refused to be questioned.

696. Defendant William Robert Tate filed a false police report and falsely stated in person with the Mobile Police Department and in an affidavit to the Mobile Police Department that Plaintiff struck Tate resulting in a warrant being issued for Plaintiff's false arrest and imprisonment.

697. Defendant McVey believed the false accusation made by Defendant William Robert Tate that Plaintiff struck him across the face resulting in Plaintiff's suspension from the athletic team and related activities.

698. All the false statements made by Defendant William Robert Tate were communicated to third parties. Each of the statements specifically identified or are reasonably understood to refer to the Plaintiff.

699. Each of these statements were untrue and caused damage to the reputation, embarrassment to the Plaintiff.

700. The conduct of Defendant William Robert Tate described above was willful, wanton, reckless, and malicious. At all relevant times, Defendant William Robert Tate acted with conscious disregard of Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and suffering to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Defendant William Robert Tate according to proof at trial.

701. The constant slander, bullying and harassment engaged in by Defendant William Robert Tate caused Plaintiff great anxiety, worry, stress, depression, damage to reputation, embarrassment, and physical injuries.

**WHEREFORE, the above premises considered** Plaintiff seeks all available damages including but not limited to compensatory damages, consequential damages, punitive damages, treble damages, attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest.

## COUNT XV: TORT OF OUTRAGE (against Defendant William Robert Tate)

702. Plaintiff adopts paragraphs 9-57, 287 of this Complaint as if fully set forth herein.

703. Defendant William Robert Tate repeatedly bullied and threatened the Plaintiff.

704. Defendants William Robert Tate repeatedly sexually harassed and bullied Plaintiff on a constant and frequent basis almost every encounter based on his perceived sexual orientation and gender.

705. For instance, on November 6, 2021, Defendant William Robert Tate breached the Plaintiff's right to solitude and privacy and went in the bathroom when he was taking a shower and attempted to get in the shower with Plaintiff against his will and attempted to force the Plaintiff into sexual acts.

706. Defendant William Robert Tate circulated unwanted videos sexual in nature in or around January 27, 2022.

707. Defendant William Robert Tate frequently in person and in text communications made sexual innuendoes and/or references to the Plaintiff such as "suck my dick" "r u f*cking me" and other horrific remarks.

708. Defendant William Robert Tate frequently bullied the Plaintiff in relation to his weight.

709. Defendants William Robert Tate repeatedly called Plaintiff "gay" "gay boy" "faggot" and other derogatory comments in front of others and in front of only the Plaintiff.

710. Defendant William Robert Tate inappropriately and violently touched Plaintiff on his anus.

711. Defendant Tate forced the Plaintiff to remain in his hotel room during track & field and/or cross country meets including but not limited to meet(s) in March 2022.

712.     There were multiple times Defendant William Robert Tate positioned himself over the Plaintiff while putting his hand on the Plaintiff's head and placing his private area in front of the Plaintiff's face without his consent.

713.     Defendant William Robert Tate frequently stated to the Plaintiff that he would get "high" and masturbate with his friends. Defendant William Robert Tate stated he participated in this with his childhood friend and attempted to have the Plaintiff participate in such activities.

714.     Defendant William Robert Tate frequently explained to the Plaintiff the sexual fetishes he participated in with high school friends to get the Plaintiff to participate in such.

715.     Defendant William Robert Tate pleasured himself in front of Plaintiff in a taunting and unwelcome manner.

716.     Defendant William Robert Tate violated the Plaintiff's person multiple times by touching the Plaintiff in the area of his genitalia.

717.     Following Defendant William Robert Tate pleasuring himself in front of the Plaintiff in a taunting and unwelcome manner and when the Plaintiff referred to such incident on a bus during a Cross Country meet in front of teammates including but not limited to Claire Morgan, Curtis Laurent, Thomas Monier, Catherine Dulle. Shortly thereafter the trip Defendant William Robert Tate threatened the Plaintiff.

718.     Defendant William Robert Tate frequently stalked the Plaintiff on social media and frequently stalked who he was following.

719.   Defendant William Robert Tate's actions were extreme and outrageous.

720.   Defendant William Robert Tate's actions were intentional and reckless, and it caused emotional distress. Defendant William Robert Tate's actions were so severe that no reasonable person could be expected to endure it.

721.   Defendant William Robert Tate made false allegations of assault which led to Plaintiff's suspension from Spring Hill's Cross-Country and Track & Field teams and Plaintiff to endure worry, anxiety, mental anguish, and other damages. Further, prior to this litigation when an Investigator contacted Defendant Tate about his sickening conduct as alleged in this Complaint and his false allegation that the Plaintiff assaulted him he refused to be questioned.

722.   When committing the acts herein Defendant William Tate would express his family's financial status to the Plaintiff to persuade the Plaintiff to not take action against him.

723.   The conduct of Defendant William Robert Tate described above was willful, wanton, reckless and malicious. At all relevant times, Defendant William Robert Tate acted with conscious disregard of Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and suffering to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Defendant William Robert Tate according to proof at trial.

724.    As a proximate result of Defendant William Robert Tate's actions, Plaintiff has suffered emotional distress, mental anguish, anxiety, depression, physical ailments, lost opportunities, costs, and other damages.

**WHEREFORE the above premises considered** Plaintiff seeks all available damages including but not limited to compensatory damages, consequential damages, punitive damages, treble damages, attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest.

## COUNT XVI: TORTIOUS INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONS (against Defendant William Robert Tate)

725.    Plaintiff realleges paragraphs 9-57, 287 of this Complaint as if alleged herein.

726.    Plaintiff had a contractual relationship with Spring Hill College to attend Spring Hill College and participate as a scholarship athlete.

727.    Defendant was aware of this relationship as described in this Cause of Action and Complaint.

728.    Defendant William Robert Tate repeatedly bullied and threatened the Plaintiff on a constant and frequent basis.

729.    Defendants William Robert Tate repeatedly sexually harassed and bullied Plaintiff on a constant and frequent basis almost every encounter.

730.    Defendant William Robert Tate intentionally made derogatory and false comments about Plaintiff to others and repeatedly sexually harassed and bullied the

Plaintiff. Those comments included but were not limited to "fag", "faggot", "gay boy", "you are not a man" and "be a man".

731.   Defendant William Robert Tate violated the Plaintiff's person multiple times by touching the Plaintiff in the area of his genitalia.

732.   Defendant Tate forced the Plaintiff to remain in his hotel room during track & field and/or cross country meets including but not limited to meet(s) in March 2022.

733.   In addition, Defendant William Robert Tate falsely told Craig McVey that Plaintiff hit him – which was false.

734.   As a result of Defendant William Robert Tate falsely accusing Plaintiff of striking him across the face, Spring Hill College suspended Plaintiff from participating in any athletic activity.   Further, prior to this litigation when an Investigator contacted Defendant Tate about his sickening conduct as alleged in this Complaint and his false allegation that the Plaintiff assaulted him he refused to be questioned.

735.   As a result of Defendant William Robert Tate falsely accusing the Plaintiff of striking him across the face the Plaintiff lost NCAA eligibility that cannot be restored.

736.   When committing the acts herein Defendant William Tate would express his family's financial status to the Plaintiff to persuade the Plaintiff to not take action against him.

737.   The conduct of Defendant William Robert Tate described above was willful, wanton, reckless and malicious. At all relevant times, Defendant William Robert Tate acted

with conscious disregard of Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and suffering to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Defendant William Robert Tate according to proof at trial.

738.    Defendant William Robert Tate interfered with Plaintiff's relationship with Spring Hill College causing Plaintiff to incur damage to his reputation, anxiety, mental anguish, worry, loss of sleep, embarrassment, depression, and other damages.

**WHEREFORE the above premises considered** Plaintiff seeks all available damages including but not limited to compensatory damages, consequential damages, punitive damages, treble damages, attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest.

## COUNT XVII: INVASION OF PRIVACY: FALSE LIGHT
### (against Defendant William Robert Tate)

739.    Plaintiff adopts paragraphs 9-57, 287 of this Complaint as if alleged herein.

740.    Defendant William Robert Tate placed the Plaintiff in a false light when on March 20, 2023, he represented to Craig McVey, Nathan McQuinn, and other third parties that the Plaintiff struck him across the face which was false. In addition, prior to this litigation when an Investigator contacted Defendant Tate about his sickening conduct as alleged in this Complaint and his false allegation that the Plaintiff assaulted him he refused to be questioned.

741. Defendant William Robert Tate placed the Plaintiff in a false light including but not limited to "he is not a man" on October 24, 2022.

742. Defendant William Robert Tate held the Plaintiff in a false light by calling the Plaintiff "gay boy" "gay" "fagot" and other offensive and derogatory remarks about the Plaintiffs' gender and perceived sexual orientation in front of teammates, Craig McVey, and other individuals.

743. Defendant William Robert Tate invaded on the Plaintiff's right to privacy by continuously making remarks in front of others and pressuring the Plaintiff about his sexuality, sexually harassing him, and making comments and pressuring the Plaintiff about his relationship status in front of others and held the Plaintiff in a false light when making such statements.

744. Defendant William Robert Tate placed the Plaintiff in a false light by stating to Defendant Craig McVey, Defendant Spring Hill, Nathan McQuinn, and other third parties that the Plaintiff struck him across the face.

745. Defendant Tate filed a false police report and falsely stated in person with the Mobile Police Department and in an affidavit to the Mobile Police Department that Plaintiff struck Tate resulting in a warrant being issued for Plaintiff's false arrest and imprisonment.

746. When committing the acts herein Defendant William Tate would express his family's financial status to the Plaintiff in an attempt to persuade the Plaintiff to not taken action against him.

747. The conduct of Defendant William Robert Tate described above was willful, wanton, reckless and malicious. At all relevant times, Defendant William Robert Tate acted with conscious disregard of Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and suffering to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Defendant William Robert Tate according to proof at trial.

748. As a proximate result of Defendant William Robert Tate's actions, Plaintiff was placed in a false light and Plaintiff suffered emotional distress, mental anguish, anxiety, depression, physical ailments, lost opportunities, costs, and other damages.

**WHEREFORE the above premises considered**, Plaintiff seeks all available damages including but not limited to compensatory damages, consequential damages, punitive damages, treble damages, attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest.

## COUNT XVIII: INVASION OF PRIVACY
### (against Defendant William Robert Tate)

749. Defendant Tate forced the Plaintiff to remain in his hotel room during track & field and/or cross country meets including but not limited to meet(s) in March 2022.

750. In each of the acts alleged in the factual background of this Complaint, including but not limited to paragraphs 9-57 Defendant William Robert Tate invaded the Plaintiff's physical and/or emotional solitude in his tortious acts.

751.   Defendant William Robert Tate invaded on the Plaintiff's right to privacy and solitude by following the Plaintiff into the bathroom and attempting to get in the shower with the Plaintiff on November 6, 2021, during the Regionals Cross Country Meet. During this act Defendant William Robert Tate was attempting to force the Plaintiff into a sexual act.

752.   Defendant William Robert Tate violated the Plaintiff's person multiple times by touching the Plaintiff around his genitalia.

753.   Shortly before following the Plaintiff into the shower Defendant William Robert Tate made sexual innuendos towards the Plaintiff in front of Thomas Monier and Brian Pempel stating he wanted to get in the shower with the Plaintiff and that he would touch the Plaintiff's genitalia.

754.   Defendant William Robert Tate invaded the Plaintiff's right to privacy and solitude by inappropriately and violently touching the Plaintiff on his anus against his will and forcefully on October 24, 2022.

755.   Defendant William Robert Tate invaded on the Plaintiff's right to privacy in person and via text communications when asking the Plaintiff about his relationship status and/or insinuating the Plaintiff had a romantic interest in certain individuals.

756.   Each of the acts herein invaded on the Plaintiff's physical and emotional solitude and constituted an invasion of privacy.

757. When committing the acts herein Defendant William Tate would express his family's financial status to the Plaintiff to persuade the Plaintiff to not take action against him.

758. The conduct of Defendant William Robert Tate described above was willful, wanton, reckless and malicious. At all relevant times, Defendant William Robert Tate acted with conscious disregard of Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and suffering to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Defendant William Robert Tate according to proof at trial.

759. As a proximate result of Defendant William Robert Tate's actions, Plaintiff was placed in a false light and Plaintiff suffered emotional distress, mental anguish, anxiety, depression, physical ailments, lost opportunities, costs, and other damages.

**WHEREFORE the above premises considered**, Plaintiff seeks all available damages including but not limited to compensatory damages, consequential damages, punitive damages, treble damages, attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest.

## COUNT XIX: RECKLESSNESS/WANTONNESS
### (against Defendant William Robert Tate)

760. Plaintiff realleges paragraphs 9-57, 287 of this Complaint as if alleged herein.

761. Defendant William Robert Tate owed a duty to Plaintiff to act in a reasonably prudent manner while attending school at Spring Hill College and to act responsibly towards his fellow students. He further made false allegations about the Plaintiff yet prior to this litigation when an Investigator contacted Defendant Tate about his sickening conduct as alleged in this Complaint and his false allegation that the Plaintiff assaulted him he refused to be questioned.

762. Defendant William Robert Tate violated the Plaintiff's person multiple times by touching the Plaintiff around his genitalia.

763. Defendant Tate forced the Plaintiff to remain in his hotel room during track & field and/or cross country meets including but not limited to meet(s) in March 2022.

764. Defendant William Robert Tate recklessly and/or wantonly breached his duty to Plaintiff by continuously and repeatedly sexually harassing and assaulting him on a frequent basis from approximately November 2021 until March 2023.

765. When committing the acts herein Defendant William Tate would express his family's financial status to the Plaintiff to persuade the Plaintiff to not take action against him.

766. The conduct of Defendant William Robert Tate described above was willful, wanton, reckless and malicious. At all relevant times, Defendant William Robert Tate acted with conscious disregard of Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or

humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and suffering to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Defendant William Robert Tate according to proof at trial.

767. As a direct and proximate result of the actions of this Defendant, Plaintiff has sustained and continues to sustain physical injury, severe emotional distress, anguish, embarrassment, humiliation, anxiety, depression, frustrations, stress, trauma, and concern.

**WHEREFORE the above premises considered**, Plaintiff seeks all available damages including but not limited to compensatory damages, consequential damages, punitive damages, treble damages, attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest.

## COUNT XX-ABUSE OF PROCESS
### (Defendant William Robert Tate)

768. Defendant William Robert Tate swore out a warrant against the Plaintiff during settlement discussions for this matter.

769. Upon information and belief, Defendant did not swear out the warrant against the Plaintiff to pursue justice, but rather in a belief that it would force Plaintiff to resolve this case.

770. Upon information and belief, Defendant did so maliciously, using the criminal justice system improperly to influence civil litigation.

771. On March 20, 2023 Defendant Tate threatened the Plaintiff with criminal prosecution stating to the Plaintiff he would falsely state to the police the Plaintiff hit him

while knowing the Plaintiff had not done so, in a response to the Plaintiff notifying Defendant Tate he would report to Defendant Spring Hill Defendant Tate's mistreatment as alleged in this Complaint, and later Defendant Tate filed a false police report, and swore out a false warrant for the Plaintiff's arrest alleging such causing the Plaintiff's false arrest, false imprisonment, and constituting an abuse of process.

772. In addition, and as evidence of Defendant's malicious intent, Defendant Tate previously threatened to take malicious and non-probable action against the Plaintiff after the Plaintiff reported to him that he would report to Spring Hill his behavior towards the Plaintiff prior to and on March 20, 2023. With Defendant Tate saying to the Plaintiff, he would take action against the Plaintiff to ensure he was not able to report his conduct towards the Plaintiff after the Plaintiff advised Defendant Tate he would file a complaint with Spring Hill of his behavior towards the Plaintiff as included in this complaint.

773. Defendant Tate threatened to take malicious and non-probable action against the Plaintiff during such encounter on March 20, 2023, after the Plaintiff advised Defendant Tate he would report to Spring Hill his gender-based discriminatory behavior and other behavior as alleged in this Complaint towards the Plaintiff.

774. After the Plaintiff advised Defendant Tate he planned to advise and file a complaint with Spring Hill of his behavior as alleged in this Complaint towards the Plaintiff Defendant Tate falsely filed a police report against the Plaintiff and thereafter falsely alleged to Defendant Spring Hill that the Plaintiff struck him across the face when such

was not true in an attempt to get the Plaintiff in trouble with Defendant McVey and athletics, using the false police report to accomplish such goal which ultimately lead to the Plaintiff being improperly suspended from athletic teams by Spring Hill College. Therefore, using the process of a police report for something other than its intended result. Further, prior to this litigation when an Investigator contacted Defendant Tate about his sickening conduct as alleged in this Complaint and his false allegation that the Plaintiff assaulted him he refused to be questioned.

775.   Thereafter, during this pending litigation Defendant Tate swore out a warrant for the Plaintiff's arrest late February 2024 shortly after an unsuccessful mediation with the Plaintiff and during settlement discussions with the Plaintiff to pressure the Plaintiff into a settlement.

776.   Defendant Tate falsely accused the Plaintiff of striking him across the face and made a police report of such in order to use such police report to cause the Plaintiff harm on the athletic teams and to have him suffer consequences from school officials over the athletic teams given the Plaintiff had notified him he planned to report his behavior towards the Plaintiff as alleged in this Complaint to Spring Hill, therefore, establishing an ulterior purpose for filing a police report and the use of such police report against the Plaintiff.

777.   Defendant Tate additionally had an ulterior motive for swearing a warrant out for the Plaintiff's arrest forcing him to have to turn himself in, pay substantial criminal

defense attorney fees and other costs and fees, and suffer embarrassment, humiliation, and mental anguish and emotional distress.

778. Defendant Tate took all the actions herein knowing the Plaintiff did not strike him across the face on March 20, 2023 and as explained herein used a police report and criminal prosecution against the Plaintiff for an ulterior motive and with wrongful use of process and malice in order to suppress the Plaintiff when he placed Defendant Tate on notice he was going to report the conduct of Defendant Tate to Spring Hill and during settlement discussions in an attempt to strong-arm the Plaintiff into a settlement.

779. Defendant Tate filed a false police report against the Plaintiff and then used it to show to Spring Hill to suppress the Plaintiff's ability to properly file a report of the mistreatment the Plaintiff was enduring from Defendant Tate. He employed the process to achieve a benefit totally extraneous to or of a result not within its legitimate scope.

780. Also, Defendant Tate swore a warrant for the Plaintiff's arrest based on a false police report during settlement discussions of this civil litigation to cause the Plaintiff embarrassment, humiliation, emotional distress, and to induce the Plaintiff to settle this present action.

781. Defendant Tate acted outside the boundaries of legitimate procedure.

782. Defendant Tate had malice when committing the acts alleged herein because he employed these processes for an end not germane thereto, but rather for an achievement of a benefit totally extraneous to or of a result not within its legitimate scope.

783.   As a proximate result, the Plaintiff was caused to suffer damages, including, but not limited to, humiliation, embarrassment and emotional distress, damage to his reputation, worry, anxiety, and incur substantial attorney's fees in the defense of the criminal charges.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff demands judgment against Defendant William Robert Tate in such an amount as a jury may assess as just, including compensatory and punitive damages and the costs of this action. Plaintiff prays for such other, further, and different relief to which he may be entitled.

## COUNT XXI- FALSE ARREST
### (Defendant William Robert Tate)

784.   Defendant William Robert Tate swore out a warrant against the Plaintiff during settlement discussions for this matter.

785.   Upon information and belief, Defendant did not swear out the warrant against the Plaintiff to pursue justice, but rather in a belief that it would force Plaintiff to resolve this case.

786.   Upon information and belief, Defendant did so maliciously, using the criminal justice system improperly to influence civil litigation.

787.   On March 20, 2023 Defendant Tate threatened the Plaintiff with criminal prosecution stating to the Plaintiff he would falsely state to the police the Plaintiff hit him while knowing the Plaintiff had not done so, in a response to the Plaintiff notifying Defendant Tate he would report to Defendant Spring Hill Defendant Tate's mistreatment

as alleged in this Complaint, and later Defendant Tate filed a false police report, and swore out a false warrant for the Plaintiff's arrest alleging such causing the Plaintiff's false arrest, false imprisonment, and constituting an abuse of process.

788.   In addition, and as evidence of Defendant's malicious intent, Defendant Tate previously threatened to take malicious and non-probable action against the Plaintiff after the Plaintiff reported to him that he would report to Spring Hill his behavior towards the Plaintiff prior to and on March 20, 2023. With Defendant Tate saying to the Plaintiff, he would take action against the Plaintiff to ensure he was not able to report his conduct towards the Plaintiff after the Plaintiff advised Defendant Tate he would file a complaint with Spring Hill of his behavior towards the Plaintiff as included in this complaint.

789.   Defendant Tate threatened to take malicious and non-probable action against the Plaintiff during such encounter on March 20, 2023, after the Plaintiff advised Defendant Tate he would report to Spring Hill his gender-based discriminatory behavior and other behavior as alleged in this Complaint towards the Plaintiff.

790.   After the Plaintiff advised Defendant Tate he planned to advise and file a complaint with Spring Hill of his behavior as alleged in this Complaint towards the Plaintiff Defendant Tate falsely filed a police report against the Plaintiff and thereafter falsely alleged to Defendant Spring Hill that the Plaintiff struck him across the face when such was not true in an attempt to get the Plaintiff in trouble with Defendant McVey and athletics, using the false police report to accomplish such goal which ultimately lead to the

Plaintiff being improperly suspended from athletic teams by Spring Hill College. Therefore, using the process of a police report for something other than its intended result.

791.    Thereafter, during this pending litigation Defendant Tate swore out a warrant for the Plaintiff's arrest late February 2024 shortly after an unsuccessful mediation with the Plaintiff and during settlement discussions with the Plaintiff to pressure the Plaintiff into a settlement.

792.    Defendant Tate falsely accused the Plaintiff of striking him across the face and made a police report of such in order to use the police report to cause the Plaintiff harm on the athletic teams and to have him suffer consequences from school officials over the athletic teams given the Plaintiff had notified him he planned to report his behavior towards the Plaintiff as alleged in this Complaint to Spring Hill, therefore, establishing an ulterior purpose for filing a police report and the use of such police report against the Plaintiff.

793.    Defendant Tate additionally had an ulterior motive for swearing a warrant out for the Plaintiff's arrest forcing him to have to turn himself in, pay substantial criminal defense attorney fees and other costs and fees, and suffer embarrassment, humiliation, and mental anguish and emotional distress.

794.    Defendant Tate took all the actions herein knowing the Plaintiff did not strike him across the face on March 20, 2023 and as explained herein used a police report and criminal prosecution against the Plaintiff for an ulterior motive and with wrongful use of process and malice in order to suppress the Plaintiff when he placed Defendant Tate on

notice he was going to report the conduct of Defendant Tate to Spring Hill and during settlement discussions in an attempt to strong-arm the Plaintiff into a settlement.

795. Defendant Tate filed a false police report against the Plaintiff and then used it to show to Spring Hill to suppress the Plaintiff's ability to properly file a report of the mistreatment the Plaintiff was enduring from Defendant Tate. He employed the process to achieve a benefit totally extraneous to or of a result not within its legitimate scope.

796. Also, Defendant Tate swore a warrant for the Plaintiff's arrest based on a false police report during settlement discussions of this civil litigation to cause the Plaintiff embarrassment, humiliation, emotional distress, and to induce the Plaintiff to settle this present action.

797. Defendant Tate acted outside the boundaries of legitimate procedure.

798. Defendant Tate had malice when committing the acts alleged herein because he employed these processes for an end not germane thereto, but rather for an achievement of a benefit totally extraneous to or of a result not within its legitimate scope.

799. As a proximate result, the Plaintiff was falsely arrested causing him to suffer damages, including, but not limited to, humiliation, embarrassment and emotional distress, damage to his reputation, worry, anxiety, and incur substantial attorney's fees in the defense of the criminal charges.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff demands judgment against Defendant William Robert Tate in such an amount as a jury may assess as just, including

compensatory and punitive damages and the costs of this action. Plaintiff prays for such other, further, and different relief to which he may be entitled.

## COUNT XXII – FALSE IMPRISONMENT
### (Defendant William Robert Tate)

800.   Thereafter, during this pending litigation Defendant Tate swore out a warrant for the Plaintiff's arrest late February 2024 shortly after an unsuccessful mediation with the Plaintiff and during settlement discussions with the Plaintiff to pressure the Plaintiff into a settlement.

801.   On March 20, 2023 Defendant Tate threatened the Plaintiff with criminal prosecution stating to the Plaintiff he would falsely state to the police the Plaintiff hit him while knowing the Plaintiff had not done so, in a response to the Plaintiff notifying Defendant Tate he would report to Defendant Spring Hill Defendant Tate's mistreatment as alleged in this Complaint, and later Defendant Tate filed a false police report, and swore out a false warrant for the Plaintiff's arrest alleging such causing the Plaintiff's false arrest, false imprisonment, and constituting an abuse of process.

802.   Defendant Tate falsely accused the Plaintiff of striking him across the face and made a police report of such in order to use the police report to cause the Plaintiff harm on the athletic teams and to have him suffer consequences from school officials over the athletic teams given the Plaintiff had notified him he planned to report his behavior towards the Plaintiff as alleged in this Complaint to Spring Hill, therefore, establishing an ulterior purpose for filing a police report and the use of such police report against the Plaintiff.

161

803. Defendant Tate additionally had an ulterior motive for swearing a warrant out for the Plaintiff's arrest forcing him to have to turn himself in, pay substantial criminal defense attorney fees and other costs and fees, and suffer embarrassment, humiliation, and mental anguish and emotional distress.

804. Defendant Tate took all the actions herein knowing the Plaintiff did not strike him across the face on March 20, 2023 and as explained herein used a police report and criminal prosecution against the Plaintiff for an ulterior motive and with wrongful use of process and malice in order to suppress the Plaintiff when he placed Defendant Tate on notice he was going to report the conduct of Defendant Tate to Spring Hill and during settlement discussions in an attempt to strong-arm the Plaintiff into a settlement.

805. Defendant Tate filed a false police report against the Plaintiff and then used it to show to Spring Hill to suppress the Plaintiff's ability to properly file a report of the mistreatment the Plaintiff was enduring from Defendant Tate. He employed the process to achieve a benefit totally extraneous to or of a result not within its legitimate scope.

806. Plaintiff was unlawfully detained as a result of Defendant Tate's maliciously pursuing criminal charges against Plaintiff without probable cause thereby depriving Plaintiff of his personal liberty.

807. As a result of Defendant Tate's false imprisonment, Plaintiff was humiliated and suffered injuries, including embarrassment, humiliation, anxiety, worry, damage to his reputation, attorneys' fees, emotional distress, and grief.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff demands judgment against the Defendant William Robert Tate in such an amount as a jury may assess as just, including compensatory and punitive damages and the costs of this action. Plaintiff prays for such other, further, and different relief to which he may be entitled.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all causes of action.

*/s/ Jamie A. Johnston*

_____

JAMIE A. JOHNSTON (JOH164

**OF COUNSEL:**
Jamie A. Johnston PC
509 Cloverdale Road Suite 101
Montgomery, Alabama 36106
334.202.9228
334.265.8789 – facsimile
jamie@jjohnstonpc.com
MAILING ADDRESS:
PO Box 4663
Montgomery, Alabama 36103

## CERTIFICATE OF SERVICE

On April 1, 2024, a copy of the foregoing has been filed with the Court's electronic filing system which shall generate a copy to the following counsel of record:

Lana E. Bell
Lisha Graham
Curtis Hendrix Seal
White Arnold & Dowd, P.C.
2001 Park Place North
Suite 1400
Birmingham, Alabama 35203

lbell@whitearnolddowd.com
lgraham@whitearnolddowd.com
cseal@whitearnolddowd.com

Amy Glenos
James C. Pennington
Ogletree Deakins
420 20th Street North
Suite 1900
Birmingham, Alabama 35203
James.pennington@ogletreedeakins.com
Amy.Glenos@ogletreedeakins.com

*/s/ Jamie A. Johnston*

_____
OF COUNSEL